UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————

ADAM JABAUT,

                        Petitioner,

                                           9:17-CV-72
v.                                          (LEK/TWD)

CHRISTOPHER MILLER,

                        Respondent.
————————————————————————————

APPEARANCES:                      OF COUNSEL:

ADAM JABAUT
Petitioner, *pro se*
08-A-5007
Box 51
Comstock, New York 12821

HON. LETITIA A. JAMES           Priscilla I. Steward, Esq.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Respondent
28 Liberty Street
New York, New York 10005

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

      Adam Jabaut ("Jabaut" or "Petitioner") petitions this Court for a writ of habeas corpus,

under 28 U.S.C. § 2254, to vacate his conviction, in the County Court of the State of New York,

Clinton County (the "trial court"). On September 8, 2008, the trial court entered a judgment

after a jury found him guilty of the following crimes against his step-daughter ("KT") and her

friend ("LB"): course of sexual conduct against a child in the second degree, criminal sexual act

in the first degree, and rape in the third degree. For these crimes, the trial court imposed an

aggregate prison term of 83 1/3-years to life.  (SR at 9.[1])  Petitioner challenges his conviction on

the following grounds: (1) his trial counsel provided ineffective assistance; (2) he was denied a

fair trial; (3) his written and oral confession was improperly admitted into evidence; and (4) his

83 1/3-year sentence amounts to cruel and unusual punishment.  (Dkt. No. 1.)  Christopher

Miller, through the State of New York, (the "State") opposes Jabaut's petition.  (Dkt. No. 12-1.)

For the reasons set forth below, the Court recommends Petitioner's request for a writ of habeas

corpus be denied in its entirety.

## I.    BACKGROUND

### A.    Investigation and Arrest

On October 16, 2007, KT reported to her middle school guidance counselor that her step-

father, Jabaut, had sexually assaulted her.  State Trooper Karen Dufour ("Investigator Dufour" or

"Dufour") went to the school and spoke with KT regarding her allegations.  Dufour then

interviewed Jabaut at the Plattsburgh Police Station and he provided oral and written statements

confirming he sexually assaulted and raped KT.  Jabaut was arrested and processed at that time.

The State also learned Jabaut sexually assaulted KT's friend, LB.

Thereafter, the State obtained a 14-count indictment charging Jabaut with the following

crimes: five counts of predatory sexual assault against a child, N.Y. Penal Law § 130.96; five

counts of rape in the first degree, N.Y. Penal Law § 130.35; one count of course of sexual

conduct against a child in the second degree, N.Y. Penal Law § 130.80(1)(b); one count of sexual

---

[1]  To maintain consistency, the Court adopts Respondent's convention for citing to the record. To that end, "H" refers to the pre-trial suppression hearing; "T" refers to the trial transcript; and "S" refers to the sentencing minutes.  "H," "T," and "S" are found at Dkt. No. 14-1.  Furthermore, "SR" refers to the state court record, found at Dkt. No. 13-1; and "SSCR" refers to the supplemental state court record, found at Dkt. No 14.

abuse in the first degree, N.Y. Penal Law § 130.65; and two counts of rape in the third degree, N.Y. Penal Law § 130.25. (SSCR at 19-26.)

### B. The Suppression Hearing

As recounted above, the People obtained an oral and written confession from Jabaut during his interview on October 16, 2007. Jabaut moved to suppress his statements as offending the Fifth Amendment's right to counsel because, according to him, he was denied access to contact his wife during the interview. On May 2, 2008, the trial court held a *Huntley* hearing to consider whether to suppress Jabaut's oral and written statements.[2]

During the hearing, the People called Dufour and a case worker with Child Protective Services, Carrie Carpenter ("Carpenter"), to testify. Investigator Dufour testified that, on October 16, 2007, she went to Peru Middle School where she interviewed KT about the allegations that Petitioner sexually abused her. (H at 7.) During the interview, Petitioner arrived at the school and spoke with Investigator Dufour. (*Id*. at 7-8.) Dufour advised Jabaut about KT's allegations and asked him to go with a state trooper to the state police barracks in Plattsburgh, New York; Petitioner agreed. (*Id*. at 8-9.)

At the police barracks, Dufour and Carpenter went into an interview room where Jabaut was waiting. (*Id*. at 10.) Dufour "*Mirandized*" Jabaut using a police-provided *Miranda* card.[3] (*Id*. at 10, 12-13.)

----

[2] A pretrial hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), is held to determine the voluntariness of inculpatory statements made by a criminal defendant to law enforcement officers. *See Huntley*, 15 N.Y.2d at 77–78.

[3] *Miranda* refers to the seminal United States Supreme Court case, *Miranda v. Arizona*, 384 U.S. 436 (1966), wherein the Supreme Court established the appropriate procedure for law enforcement officials to follow when questioning individuals in custody.

Initially, Jabaut denied the allegations of sexually abusing his stepdaughter.  (*Id*. at 14.)
Indeed, during the first hour and a half Jabaut denied any wrong-doing "several times."  (*Id*. at
17.)  Dufour testified Jabaut never asked to speak with an attorney or indicated he wished to stop
the interview.  (*Id*.)  Jabaut did, however, ask to call his wife several times but Dufour refused to
allow him to do so.  (*Id*. at 17-18.)

At some point during the interview, Dufour asked Jabaut how things with KT got started
and he put his head down and said, "you'd have to ask [KT]."  (*Id*. at 20.)  Thereafter, Jabaut
admitted he would touch KT's breasts and buttocks and, once or twice a week, he would put his
fingers in her vagina and would put his mouth on her vagina about once a month.  (*Id*. at 21.)
Jabaut also admitted he tried to have sexual intercourse with KT on one occasion, but she did not
like it, so he stopped.  (*Id*. at 21-22.)  He further stated he had not had any sexual contact with
LB.  (*Id*. at 30.)

Dufour prepared a written statement for Jabaut to review and sign.  (*Id*. at 31.)  After
typing the statement, Dufour asked Petitioner to review the rights printed at the top of the
statement and he initialed each section.  (*Id*. at 32.)  Jabaut then read the statement and signed at
the end.  (*Id*. at 32-33.)  Dufour arrested Petitioner at the conclusion of the interview.  (*Id*. at
34.)[4]

The Court rendered an oral decision denying Petitioner's motion to suppress the
statements.  (*Id*. at 74-77.)  The Court found Jabaut knowingly and voluntarily waived his rights
to an attorney and volunteered his oral and written statements.  (*Id*. at 77.)

---

[4] Carpenter was the only other witness at the hearing.  Her testimony is generally consistent with
Dufour's testimony.  (H. at 52-72.)

**C.    The Trial**

Petitioner's stepdaughter, KT was born on August 9, 1994, and was 13 years old at the time of trial.  (T at 368, 374.)  Petitioner began touching KT in a sexual manner in 2006, when KT was 11 years old and the behavior did not stop until she was 13 years old.  (*Id*. at 389.)

The first time Jabaut touched KT was in March 2006, after everyone in the house had gone to sleep.  (*Id*. at 390.)  KT, who slept in a separate bedroom, woke up and saw Petitioner kneel next to her bed.  (*Id*. at 392-93.)  Petitioner put his hand under KT's pajamas and underwear and touched her vagina.  (*Id*. at 393-94.)  KT tried to pull Petitioner's hand off her, but he told her no.  (*Id*.)  She told him to stop, and he told her, "you know you like it."  (*Id*. at 394-95.)  Before Petitioner left KT's bedroom, he told her, "this is our little secret now."  (*Id*. at 394, 396.)

About a week later, Petitioner again entered KT's bedroom while she was sleeping, kneeled by KT's bed, and touched her vagina.  (*Id*. at 399-400.)  KT told him to stop and tried to pull his hand out of her pants and Petitioner stopped after about 30 seconds.  (*Id*. at 400.)  As he left KT's bedroom, Jabaut said to her: "This is our little secret." (*Id*. at 401.)  Jabaut entered KT's bedroom and touched her in this manner about one night per week.  (*Id*. at 401-02.)  KT testified Jabaut regularly subjected her to sexual abuse until she reported it to her school guidance assistants.  (*Id*. at 402-03.)

On October 16, 2007, KT reported the abuse to a school guidance assistant.  (*Id*. at 483-84.)  KT decided to tell someone because she wanted the abuse to stop and because she wanted to protect her sisters.  (*Id*. at 484.)  Petitioner had told her, because he had allowed her to breed her dog, she was going to have to "pay up," *i.e*., she was going to be on top during sex and he was going to go longer and harder.  (*Id*. at 484-85.)  KT further stated that, having observed

Jabaut touch LB before moving on to her, she feared at some point, he would stop abusing her and move on to her sisters.  (*Id*. at 484.)  The guidance assistant contacted KT's mother as well as the police and Child Protective Services.  (*Id*. at 489-90.)  Investigator Dufour and case worker Carpenter interviewed her at the school.  (*Id*. at 490.)  Either that night or the following night, KT went with her mother to the hospital and KT underwent an examination.  (*Id*. at 493-94).

Sexual Assault Nurse Examiner Gail Bjelko ("Bjelko") met with KT at the hospital.  (*Id*. at 920.)  KT told Bjelko that Petitioner had raped her more than one week earlier.  (*Id*. at 924-25.)  KT also reported Petitioner had penetrated her with his finger two or three days earlier.  (*Id*. at 926).  Bjelko examined KT and found no sign of trauma.  (*Id*. at 927-29.)  Dr. Jack Coyne examined the medical records and photographs taken of KT's vaginal area.  (*Id*. at 976-77.)  He saw no physical signs of abuse but said that up to 75 percent of child abuse victims show no objective signs of abuse because of the elasticity of the hymen and the rapid healing rate of child victims.  (*Id*. at 969-70, 972-75, 979-82, 984-85.)

LB was 17 years old at the time of trial.  (*Id*. at 639.)  She testified KT's mother, Jabaut's wife, babysat her and her younger brother from the ages of 10 to 13.  (*Id*. at 563.)  LB preferred to spend time at KT's house rather than her own because her parents would argue and sometimes get into physical fights.  (*Id*. at 563-69, 679.)  LB testified she liked going to the Jabaut's house because she got more attention there.  (*Id*. at 570.)  LB recalled she had a "crush" on Jabaut when she was 10 years old and believed he felt the same way about her.  (*Id*. at 578-80.)  Petitioner sexually abused LB from the ages of 10 to 15.  (*Id*. at 639.)

LB worried that if KT's mother, Jabaut's wife, found out, she would stop babysitting LB and her brother, which would force LB's mother to quit her job.  (*Id*. at 592.)  LB further thought

Jabaut's behavior was her fault because she had a crush on him. (*Id*. at 593.) LB's feelings for

Jabaut grew because she believed he liked her. (*Id*. at 594.) However, because she did not want

him to touch her, she tried to go wherever KT's mother went. (*Id*. at 594.)

LB first reported Jabaut's behavior after the police approached her and asked her about

KT's allegations. (*Id*. at 626.) LB admitted she had witnessed some incidents between Jabaut

and KT, but she did not reveal what he had done to her. (*Id*. at 633.) The following day, LB

went to the police station where she reported Jabaut's abuse of her to a detective and a case

worker from Child Protective Services. (*Id*. at 633-34.)

Dufour and Carpenter responded to KT's school on October 16, 2007, after KT reported

Petitioner's behavior to school officials. (*Id*. at 751-52, 754-55, 863.) While Dufour and

Carpenter were interviewing KT, Jabaut arrived at the school. (*Id*. at 761-62.) Petitioner agreed

to an interview with Dufour and another officer accompanied him to the police barracks. (*Id*. at

764-65.) After Dufour and Carpenter finished interviewing KT, they went to the police station to

interview Jabaut. (*Id*. at 764-65.) Petitioner was advised of, and waived, his *Miranda* rights.

(*Id*. at 776-78, 870-71.) Dufour told Petitioner that KT had alleged he sexually abused her, but

Petitioner initially denied the allegations and said he did not understand why KT would say such

things. (*Id*. at 779, 785, 787, 874-75.) During the interview, Jabaut asked to speak with his wife,

however, Dufour refused Jabaut's request because she was concerned it might disrupt the

interview. (*Id*. at 786-89, 791, 840-42, 876, 893.)

Petitioner was asked how everything got started with KT and he lowered his head and

said they would have to ask KT. (*Id*. at 794.) He then said KT would peek in the bathroom at

him, he had caught KT watching a pornographic video of petitioner and his wife, and he claimed

to have caught KT using a vibrator. (*Id*. at 795-97, 878-81.) When asked about specific acts,

Jabaut admitted he had put his finger and his tongue inside her vagina. (*Id*. at 799.) He also admitted he patted KT on her buttocks and grabbed her breasts. (*Id*. at 802-03.) He stated he tried to insert his penis in KT's vagina, but she did not like that, and, at her request, he stopped. (*Id*. at 882.) Petitioner further stated KT had put her hand on his penis, but she never put her mouth on his penis. (*Id*. at 799.) Petitioner said he first touched KT within the last year or one- and one-half years when KT asked him for permission to get a haircut and offered to let him touch her vagina if he agreed. (*Id*. at 800-02.) Petitioner accepted KT's offer and put his hand down KT's underwear and touched her vagina. (*Id*.) Petitioner said thereafter, as often as one or two times a week, whenever KT wanted something, he would touch her and then get her whatever she wanted. (*Id*.) He also said he had put his mouth on her vagina less frequently, only about once a month, because KT hated it. (*Id*. at 800-02.) Petitioner was asked about whether he had sexual contact with LB and he denied any sexual contact with her. (*Id*. at 803.) Dufour memorialized Jabaut's statement into a signed written statement. (*Id*. at 804-09, 811-13, 885-89.) Dufour then arrested Jabaut. (*Id*. at 820.)

On October 17, 2007, DuFour and Carpenter interviewed KT again and thereafter went to Jabaut's home and recovered pornographic videos from a gun cabinet. (*Id*. at 822-26.) On July 23, 2008, Trooper Kyle Kirby went to the state police barracks to photograph Petitioner's penis in the presence of his attorney. (*Id*. at 941-43.) The photographs were entered into evidence with no objection from the defense. (*Id*. at 945-48.) Dr. Jack Coyne examined one of the photographs of Petitioner's penis and testified there were reddish papules or lesions by the right urethra and on the head of the penis. (*Id*. at 986-88.)

Richard M. Hamill ("Dr. Hamill"), a clinical psychologist, testified as an expert on child sexual abuse accommodation syndrome ("CSAAS"). (*Id*. at 691, 701, 703-04, 706.) CSAAS is

a cluster of behaviors or problems a child who has been sexually abused might exhibit. CSAAS cannot be used to diagnose whether a child has been sexually abused; rather it is a tool for understanding the behaviors of sexually abused children to facilitate treatment. (*Id*. at 700-02, 742.) Dr. Hamill never met KT, LB or Jabaut. He testified he could offer no opinion as to whether the alleged crimes occurred. (*Id*. at 708.) Dr. Hamill testified there were five categories in CSAAS: secrecy, disclosure, retraction, powerlessness, and accommodation. (*Id*. at 709-11.)

For his defense, Petitioner called Manuel McCarthy ("McCarthy") and Carrie Jabaut ("Mrs. Jabaut") to highlight inconsistencies in KT's and LB's testimony. To wit, KT and LB each testified Jabaut raped LB at McCarthy's house and they each testified Jabaut raped LB and assaulted KT on Jabaut's boat.

McCarthy testified he hired Jabaut to perform electrical work at his house in 2005 and at some point Petitioner came to McCarthy's house with KT and her friend. (*Id*. at 995-96.) McCarthy was at the house most of the day because he was insulating the garage and portions of the second floor. (*Id*. at 997.) Although McCarthy was present when Petitioner arrived, he did not remember if he stayed at the house the entire day, *i.e*., it was possible there was a period when Petitioner was at McCarthy's house alone with the two girls. (*Id*. at 999-1000.)

Petitioner's wife testified she had been married to him for nine years and had two children with him. (*Id*. at 1003.) Mrs. Jabaut stated Petitioner's boat was in the driveway and it was locked so no one can get inside without a key. (*Id*. at 1008-09.) Mrs. Jabaut did not know if KT knew the location of the key. (*Id*.)

Mrs. Jabaut identified five photographs of Petitioner's penis. Mrs. Jabaut said she recognized the penis to be that of her husband because it had a "dark ring" around it and very little hair and she recognized Petitioner's hand holding his penis because there was a scar on his

9

hand where he had a wart removed. (*Id.* at 1009-15, 1017.)  Mrs. Jabaut also identified

photographs of Petitioner's left leg from a scar on his thigh as well as pictures of his left

kneecap. (*Id.* at 1015-17.)  Mrs. Jabaut stated she did not believe her daughter's allegations. (*Id.*

at 1029-30.)

At the close of the State's case, the court granted Petitioner's motion to dismiss one of

the first degree rape counts. (*Id.* at 991.)  At the close of all the testimony, the court reduced the

first degree sexual abuse count to second degree sexual abuse and also reduced one of the first

degree rape counts to third degree rape. (*Id.* at 1057-59.)  The jury acquitted petitioner of one

count of first degree rape, one count of predatory sexual assault against a child, one count of

second degree sexual abuse, and two counts of third degree rape. (*Id.* at 1243-45.)  He was

convicted of second degree course of sexual conduct against a child, first degree criminal sexual

act, three counts of predatory sexual assault against a child, two counts of first degree rape, and

one count of third degree rape. (*Id.*)

Petitioner was sentenced to a determinate prison term of 7 years, plus 10 years of post-

release supervision for the second degree course of sexual conduct against a child count  (count

one), 25 years, plus 20 years of post-release supervision for the first degree criminal sexual act

and the first degree rape counts (counts two, four, and eight), indeterminate prison terms of 25

years to life for both counts of predatory sexual assault against a child (counts three, five, and

nine), and an indeterminate prison term of 1 1/3 to 4 years for the third degree rape count (count

fourteen).  The court ordered the sentence for count one to run consecutive to all other counts;

counts two and three to run concurrent with each other, but consecutive to all other counts;

counts four and five to run concurrent with each other, but consecutive to all other counts, counts

eight and nine to run concurrent with each other, but consecutive to all other counts; and count

fourteen to run consecutive to all other counts.  Thus, the court imposed an aggregate sentence of 83 1/3 years to life.  (S at 26-28.)

### D.    Post-Trial Motions

#### 1.    First C.P.L. § 440.10 Motion

On January 27, 2012, Hon. Timothy J. Lawless denied Petitioner's first C.P.L. § 440.10 motion.  (SR at 1-8.)  Petitioner's motion primarily concerned alleged *Brady* violations related to the identity of an individual who purportedly overheard a conversation between LB and Jeanie Joy wherein LB asked if Ms. Joy would help her get Jabaut in trouble by falsely claiming he raped her.  (*Id*. at 4.)  Petitioner asserted LB told investigators about this conversation, but it was never disclosed to his attorney.  (*Id*.)  However, the State produced an affidavit from LB recanting her story and from Petitioner's trial counsel admitting he had received the investigator's notes regarding her conversation with LB.  Thus, the Court concluded this so-called new evidence was not new at all and could have been produced at trial with due diligence.  (*Id*. at 8.)  Accordingly, the Court denied Petitioner's motion.

#### 2.    Direct Appeal and Appeal from First C.P.L. § 440.10 Motion

Petitioner filed a counseled brief and appendix in the Appellate Division, Third Department, ("AD") arguing: (1) trial counsel was ineffective for introducing photographs of his penis, for failing to seek limiting instructions, and for failing to object to the prosecutor's summation remarks; (2) he was denied a fair trial because the verdict was against the weight of the evidence, the trial court failed to issue limiting instructions concerning the use of Dr. Hamill's testimony, and the prosecutor improperly argued Dr. Hamill's testimony was affirmative evidence he abused KT and LB; (3) he was denied his constitutional right to counsel because the police denied his requests to speak with his wife; (4) the trial court improperly

denied his C.P.L. § 440.10 motion without a hearing; and (5) his sentence violated his federal constitutional rights against cruel and unusual punishment.  The AD consolidated and dismissed Petitioner's direct appeal and his appeal of his first C.P.L. § 440.10 motion on November 27, 2013.  (SR at 10-19.)

First, the AD concluded the trial court appropriately denied Petitioner's motion to suppress the evidence of his oral and written statements made to police.  (*Id*. at 11.)  The AD found Petitioner's statements were voluntary and his requests to speak with his wife did not invoke his right to counsel.  (*Id*. at 11-12.)

Next, the AD rejected Petitioner's claim that the convictions were against the weight of the evidence.  (*Id*. at 12.)  Petitioner argued KT and LB had inconsistent stories and lacked specificity or objective medical evidence.  (*Id*. at 14.)  The AD reviewed KT and LB's trial testimony and noted the jury was well within its purview to credit the victims' testimony and assess their credibility.  (*Id*. at 12-14.)  Notably, the AD found the "internal and comparative inconsistencies in the victims' testimony did not relate to whether the described sexual conduct was repeatedly committed by defendant against them."  (*Id*. at 14.)  Thus, the AD concluded the jury's verdict was reasonable. (*Id*. at 15.)

The AD considered Dr. Hamill's testimony regarding CSAAS.  (*Id*. at 16.)  To wit, the AD noted Dr. Hamill "was very clear that he had not met or examined the victims or defendant and could not express any opinion as to their credibility or whether the charged crimes occurred[.]"  (*Id*.)  However, the AD opined the "better practice" would have been for the trial court to include a limiting instruction clarifying that Dr. Hamill's testimony is not offered for proof of the crime charged.  (*Id*.)  Nonetheless, the AD found Petitioner's counsel failed to

request such an instruction—or object to the prosecutor's summation about Dr. Hamill's testimony—thus, the issue was not preserved for appellate review.  (*Id*.)

In the context of Petitioner's ineffective assistance of counsel claim, the AD found Jabaut was not denied effective assistance of counsel relative to counsel's failure to request a limiting instruction or to object to the prosecutor's summation.  (*Id*.)  The AD noted that, "[w]hile isolated prosecutorial summation remarks, taken out of context, may have been unclear or even arguably improper, the summation as a whole urged that [Dr.] Hamill's general testimony 'supplied explanations other than fabrications for the victims' post-molestation behavior,' thereby supporting their credibility, and did not impermissibly argue that [Dr.] Hamill had opined that these crimes occurred or that victims were credible[.]"  (*Id*. at 17 (citation and internal brackets omitted).)  The AD found the prosecutor's comments during summation were "fair comment" on the evidence and were not a basis for an ineffective assistance claim.  (*Id*.)  The AD also concluded the overwhelming amount of evidence in the case against Jabaut made any error "harmless," *i.e.*, non-prejudicial.  (*Id*.)

The AD then considered Jabaut's counsel's performance on the whole and noted he "made appropriate pretrial motions, effectively cross-examined witnesses, and delivered cogent opening and closing remarks in support of the defense theory . . . that the victims had fabricated the allegations and that defendant had not made admissions to police[.]"  (*Id*.)  Moreover, the AD noted Jabaut's counsel obtained a reduction of some counts, dismissal of another count, and acquittal of five counts.  (*Id*.)

Then, the AD determined Jabaut's counsel made a legitimate, strategic decision to admit a photograph of his erect penis into evidence.  (*Id*. at 18-19.)  To that end, the AD noted both victims had testified they had the opportunity to view Jabaut's legs and erect penis, however they

could not describe anything unusual or distinctive about it. (*Id.* at 19.) Jabaut's counsel also

used the picture to impeach the victim's testimony "by suggesting that repeated penetration by a

penis of this size on a young girl would have left medical evidence, which was not found." (*Id.*)

Accordingly, the AD did not characterize Jabaut's counsel's decision as ineffective assistance.

The AD found no error in the trial court's decision to deny Jabaut's C.P.L. § 440.10

motion without a hearing because there was no factual dispute regarding the alleged grounds for

a new trial. (*Id.*)

Finally, the AD concluded Jabaut's sentence should not be reduced. (*Id.* at 18-19.) The

AD pointed out Jabaut's sentence would be capped to a 50-year determinate term. (*Id.* at 19

(citing N.Y. Penal Law § 70.30(1)(e)(vii).) Moreover, the AD noted that, "[g]iven the protracted

and grievous nature of defendant's crimes against two young girls and the impact of these crimes

on their lives, [the AD found] no abuse of discretion or extraordinary circumstances warranting a

reduction of the sentence in the interest of justice." (*Id.*)

### 3.    Court of Appeals

The New York State Court of Appeals denied Jabaut's application for leave to appeal the

AD's decision on February 10, 2014. (SSCR at 20.)

### 4.    Second C.P.L. § 440.10 Motion

Petitioner filed a second motion to vacate the judgment pursuant to C.P.L. § 440.10,

arguing: (1) trial counsel was ineffective because he: (a) sabotaged Jabaut by submitting

contradictory statements in connection with the first C.P.L. § 440.10 proceeding; (b) failed to

locate and call a prospective defense witness; and (c) failed to investigate and consult an expert

witness on the psychology of child sexual abuse; (2) the trial court improperly denied his first

C.P.L. § 440.10 motion by giving undue weight to the People's documentary evidence; (3) the

prosecutor committed misconduct by bullying witnesses to obtain affidavits during the first C.P.L. § 440.10 proceeding; and (4) his trial counsel made a "back room deal" with the prosecutor in return for providing a perjurious affidavit.  (SR at 1217-49.)

On September 29, 2016, Hon. Timothy Lawliss denied Jabaut's second motion pursuant to C.P.L. § 440.10 in its entirety.  (SSCR at 21-27.)  Petitioner sought leave to appeal the denial of his motion to the AD.  (SR at 1283-96.)  However, on November 30, 2016, the AD denied leave to appeal.  (SSCR at 28.)

## II.     DISCUSSION

In his petition, Jabaut challenges his conviction on the following grounds: (1) his trial counsel provided ineffective assistance because he chose to admit prejudicial photos, failed to object to the prosecution's summation, failed to request limiting instructions, hampered his first C.P.L. § 440.10 motion, and failed to call an expert witness; (2) he was denied a fair trial because the admission of prejudicial evidence, the lack of limiting instructions, and the prosecutor's improper comments; (3) his written and oral confession was improperly admitted into evidence; and (4) his 83 1/3-year sentence amounts to cruel and unusual punishment.  (Dkt. No. 1.)

The State opposes Jabaut's petition.  First, according to the State, Jabaut's due process claims were never presented to the New York Court of Appeals and are thus unexhausted and incognizable on federal review.  The State further argues Petitioner's claim that his punishment is cruel and unusual is not cognizable because his sentence is statutorily correct.  The State

contends the remainder of Jabaut's claims lack merit and do not provide a basis for relief.[5]  (Dkt. No. 12-1.)

### A.    Exhaustion and Procedural Bar

Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief serving state sentences must first exhaust all state remedies.  *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991).  State remedies are deemed exhausted when a petitioner has: (1) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (2) informed that court (and lower courts) about both the factual and legal bases for the federal claim.  *See Picard v. Connor*, 404 U.S. 270, 276–77 (1971).

Nevertheless, even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.  *See Grey*, 933 F.2d at 120.  Review of a procedurally barred claim in a federal court will, however, be subject to the cause and prejudice standard before reaching the merits.  *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *St. Helen v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (citations omitted).

Here, a fair reading of Petitioner's argument to the New York Court of Appeals reveals he raised his ineffective assistance of counsel claims, his claim relative to his confession, and his

---

[5] Jabaut filed a Traverse, reminding the Court of his *pro se* status and reiterating his claims. (Dkt. No. 19.)

claim that his sentence is unduly harsh.  (SR at 1198-1212.)  Petitioner also properly addressed

the federal nature of those claims.  (*Id*.)  Thus, the Court finds Petitioner's ineffective assistance

of counsel claims, his claim the police improperly obtained—and the prosecutor improperly

admitted—his confession, and his claim his sentence is unduly harsh have been exhausted and

can be considered on the merits as discussed below.

　　　　However, each of Petitioner's alleged violations of his due process rights are

unexhausted, procedurally barred, and unable to satisfy the cause and prejudice standard; thus,

the Court declines to consider these claims on the merits.  To that end, a review of the papers in

the state court proceedings reveals Petitioner never raised a claim that his due process rights

were violated because the trial court admitted photos of his penis.  (*See* SR at 1198-1212.)

Furthermore, though Petitioner initially argued on appeal his due process rights were violated

because of the lack of limiting instructions and the prosecutor's summation, he did not raise

these grounds in his appeal to New York's highest court.  (*Id*.)  Given the passage of time,

Petitioner can no longer raise these claims in state court.  *See* C.P.L. § 440.10(2)(c).  As such,

Petitioner's claims are deemed exhausted but procedurally barred.  *See Ramirez v. Attorney

General*, 280 F.3d 87, 94 (2d Cir. 2001); *Spence v. Superintendent, Great Meadow Corr. Fac.*,

219 F.3d 162, 170 (2d Cir. 2000).

　　　　A petitioner may avoid the procedural bar if he "can demonstrate cause for the default

and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v.

Thompson*, 501 U.S. 722, 750 (1991); *Gutierrez v. Smith*, 702 F.3d 103, 110-11 (2d Cir. 2012)

(citations omitted); *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citations omitted).

"Cause" requires a showing that "some objective factor external to the defense impeded

counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel. *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995) (internal quotation marks and citations omitted). As for a miscarriage of justice, this necessarily involves a showing the petitioner is actually innocent. *Sweet v. Bennett*, 353 F.3d 135, 141-42 (2d Cir. 2003). A federal habeas court will reach the merits of a petitioner's procedurally barred claim only if he can establish cause and prejudice, or a miscarriage of justice. *Gutierrez*, 702 F.3d at 110-11.

Petitioner has failed to establish cause for overcoming the procedural bar. Liberally construed, his Traverse suggests the Court should forgive his procedural default because he relied on his counsel to raise his claims and it was counsel's fault he did not present his claims to the Court of Appeals. (Dkt. No. 19 at 6-7.) However, as Petitioner himself recognizes, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986). Notably, since cause is not established, the Court does not need to reach the inquiry on actual prejudice. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Horton v. Ercole*, 557 F. Supp. 2d 308, 323 (N.D.N.Y. 2008) (citations omitted).

As for a fundamental miscarriage of justice, "[t]o establish actual innocence, the petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks and citations omitted). Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal sufficiency." *Id*. Petitioner has not met this burden.

Based on the above, Petitioner's due process claims are unexhausted and procedurally defaulted. Accordingly, the Court recommends finding Petitioner's claims regarding denial of his due process rights are barred from habeas review.[6]

**B.    Standard of Review**

A federal court may not grant a habeas corpus application "with respect to any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). *See Knowles v. Mirzayance*, 556 U.S. 111, 114 (2009). "This is a 'difficult to meet[ ]' . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt . . . ." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (other internal quotation marks omitted)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision). Further, if the state court's decision rests on at least one permissible ground, it must not be rejected. *See, e.g., Parker v. Matthews*, 567 U.S. 37, 42 (2012) (where one "ground was sufficient to reject

---

[6] The Court further finds Plaintiff's claims related to limiting instructions and the prosecutor's summation are barred from review because the AD rejected these claims on an independent state law basis because they were not preserved at trial. *People v. Jabaut*, 111 A.D.3d 1140, 1145 (3rd Dep't. 2013). As the State recognizes, "[c]ourts in this Circuit have consistently recognized the contemporaneous objection rule to be an adequate and independent state law ground sufficient to bar habeas review." (Dkt. No. 12-1 at 39 (citing *Downs v. Lape*, 657 F.3d 97, 102, 104 (2d Cir. 2011); *Whitley v. Ercole*, 642 F.3d 278, 286-87 (2d Cir. 2011)).)

[petitioner's] claim . . . it is irrelevant that the court also invoked a ground of questionable validity").

## C.      Right to Counsel

Petitioner argues "police interrogators closed [him] off from his means in order to obtain counsel by refusing to allow him to call his wife."  (Dkt. No. 1 at 9.)

As noted above, the trial court held a *Huntley* hearing to consider whether to suppress Petitioner's written and oral statements to Investigator Dufour and CPS Carpenter.  During the hearing, Dufour and Carpenter noted Petitioner asked to call his wife numerous times. Investigator Dufour refused Petitioner's request because she opined such a call could interfere with the interview.

The AD rejected Petitioner's argument and found the evidence demonstrated Petitioner never asked for an attorney.  Specifically, the AD held the testimony at the *Huntley* hearing established that "[a]t no point during the three-hour questioning did [Jabaut] ask to speak with or call an attorney or to call family or friends to assist in contacting an attorney, so as to invoke his right to counsel[.]"  (SSCR at 11.)  The AD noted Petitioner's request to contact his wife was not specifically to seek her help in securing an attorney or legal advice and when Jabaut was asked what he would say to his wife, he said he "wasn't sure."  (*Id*. at 12.)  The AD found "[t]he police . . . did not foreclose [Jabaut's] opportunity to invoke his right to counsel and [Jabaut], despite being a competent adult who was capable of invoking that right at any time, failed to do so." (*Id*.)  Accordingly, the AD concluded that, "[i]n the absence of any threats, deception or trickery or any direct or indirect request for counsel, the People satisfied their burden of demonstrating that [Jabaut's] statements were voluntary and obtained in compliance with his constitutional rights."  (*Id*.)

The AD's reasoning is sound and comports with federal law.  To that end, to invoke the right to counsel, a suspect needs, at a minimum, to express a desire for an attorney's assistance. *Davis v. United States*, 512 U.S. 452, 459 (1994).  The standard is an objective one and is determined by what a reasonable officer in the circumstances would understand to be an unequivocal request for an attorney.  *See id.*  In the context of invoking the *Miranda* right to counsel, the Court in *Davis* held that a suspect must do so "unambiguously."  *Id.*  If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.  *Id.* at 459, 461–462.

Here, the uncontroverted evidence at the *Huntley* hearing demonstrated Petitioner never specifically asked for an attorney and could not articulate a reason to speak with his wife that would alert a reasonable officer to believe he needed help to obtain counsel.  Thus, this Court recommends finding the AD's decision is not contrary to federal law.

### D.      Length of Sentence

It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (explaining that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law"); *Gonzalez v. Travis*, 172 F. Supp. 2d 448, 457 (S.D.N.Y. 2001) (finding excessive sentence claim not cognizable for habeas review where sentence was within statutory range); *Herrera v. Artuz*, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) (holding the trial court's imposition of consecutive sentences was appropriate and did not provide ground for habeas relief); *Thomas v. Senkowski*, 968 F. Supp.

953, 956-57 (E.D.N.Y. 1997) (dismissing excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law).

Here, Petitioner was convicted, after a jury trial, of the following crimes: course of sexual conduct against a child in the second degree, a Class D violent felony; criminal sexual act in the first degree, a Class B violent felony; three counts of predatory sexual assault against a child, a Class A-II felony; two counts of rape in the first degree, a Class B violent felony; and, one count of rape in the third degree, a Class E felony.  The following chart provides the statutory penalty for each crime along with the relevant sentence:

| Crime | Classification | Statutory Sentence Range | Petitioner's Sentence |
|---|---|---|---|
| Course of Sexual Conduct Against a Child in the Second Degree, N.Y. Penal Law § 130.80. | Class D violent felony | Two to seven years, N.Y. Penal Law § 70.02(3)(c). | Count 1 - 7-years determinate. |
| Criminal Sexual Act in the First Degree, N.Y. Penal Law § 130.50. | Class B violent felony | Five to twenty-five years, N.Y. Penal Law § 70.02(3)(a). | Count 2 - 25-years determinate. |
| Predatory Sexual Assault Against a Child, N.Y. Penal Law § 130.96 (three counts) | Class A-II felony | Twenty-five years to life, N.Y. Penal Law § 70.00(2)(a); § 70.00(3)(a)(ii). | Count 3 - 25-years to life |
| | | | Count 5 - 25-years to life |
| | | | Count 9 - 25-years to life |
| Rape in the First Degree, N.Y. Penal Law § 130.35 (two counts) | Class B violent felony | Five to twenty-five years, N.Y. Penal Law § 70.02(3)(a). | Count 4 - 25-years determinate. |
| | | | Count 8 - 25-years determinate |
| Rape in the Third Degree, N.Y. Penal Law § 130.25 | Class E felony | One and one-third to four years, N.Y. Penal Law § 70.00(2)(e); § 70.00(3)(b) | Count 14 - 1 1/3 to 4 years. |

Pursuant to N.Y. Penal Law § 70.25, the trial court imposed the above-mentioned sentences in the following manner: Count 1 ran consecutive to all other counts; Counts 2 and 3 ran concurrently to each other but consecutive to all other counts; Counts 4 and 5 ran concurrently to each other but consecutive to all other counts; Counts 8 and 9 ran concurrently to each other but consecutive to all other counts; and Count 14 ran consecutive to all other counts.  (S at 1423-26.)

Therefore, Petitioner's total term of imprisonment was 83 1/3 years to life.  However, as noted in the AD's decision, Petitioner's term of imprisonment is capped to 50-years by operation of law. *Jabaut*, 111 A.D.3d at 1147-48 (citing N.Y. Penal Law § 70.30(1)(e)(vii)).

Given the above, the Court recommends finding Jabaut's sentence is within the range of permissible sentences according to New York law and, therefore, not a ground for habeas corpus relief.

### E.    Ineffective Assistance of Counsel

The standard applicable to ineffective assistance of counsel ("IAC") claims is "highly demanding," *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986), and "rigorous," *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).  To prevail on an IAC claim, a defendant must meet a two-pronged test: (1) he "must show that counsel's performance was deficient," *Strickland v. Washington*, 466 U.S. 668, 687 (1984), so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id*. at 690; and (2) he must show "that the deficient performance prejudiced the defense," *id*. at 687, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.  "[An] IAC claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

*Strickland* instructs a court to "indulge a strong presumption that counsels' conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michael v. Louisiana*, 350 U.S. 91, 100–01 (1955)). The Court recognized in *Strickland* that "there are countless ways to provide effective

assistance in any given case," and that even the "best criminal defense attorneys would not defend a particular client the same way." *Id*. Thus, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

Further, just as Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal habeas court to give deference to a state court's ruling on claims of insufficiency of the evidence, the AEDPA requires the federal habeas court to accord deference to the state court's ruling on claims of ineffective assistance of counsel. *See Richter*, 562 U.S. at 101 (noting, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."). Thus, when ineffective assistance claims are considered under the AEDPA the reviewing court affords a "doubly" deferential standard regarding the state court opinion. *Knowles*, 556 U.S. at 123. Accordingly, when § 2254(d) applies, "[t]he pivotal question" for the federal habeas court "is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Here, Jabaut contends his trial counsel was deficient for the following reasons: introducing a photo of his erect penis into evidence; failing to request a limiting instruction regarding Dr. Hamill's testimony; failing to object to the prosecution's summation comments about Dr. Hamill's testimony; making misrepresentations in his first pre-trial motion; and failing to call an expert witness. The Court will address each of these grounds in turn.

Petitioner's main strategy at trial was to discredit KT and LB and attempt to establish they fabricated their testimony regarding Jabaut. (*See, e.g.,* T. at 1076-77 (defense counsel's summation relative to inconsistencies in KT and LB's testimony).) As part of this strategy, Jabaut presented evidence that KT had an opportunity to view Jabaut's penis but was unable to

identify distinctive markings despite his wife testifying she could easily recognize Petitioner's penis due to the dark circle around the tip.  (*Id*. at 538-40 (KT's testimony); 1010, 1013, (Mrs. Jabaut's testimony).)  Furthermore, KT presented to sexual assault examiner Bjelko only a little more than one week after she testified she was last raped.  (T at 924-25.)  Thus, the photo was intended to show the size of Jabaut's penis so the jury could infer KT was lying about the rape because she would have had demonstrable trauma had the rape occurred as reported.

Here, like the AD, the Court finds Jabaut's attorney's decision to introduce evidence demonstrating the size and distinctive features of his client's penis was trial strategy and not unreasonable.  In sum, Jabaut's trial counsel had a tactically valid reason to admit the photo into evidence and thus it does not constitute ineffective assistance of counsel.  *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir. 1983) (complaints concerning matters of trial strategy "do not form the basis for a finding of ineffective assistance").

Petitioner has likewise failed to demonstrate his counsel's failure to object to the prosecutor's summation was ineffective assistance.  As the Second Circuit has explained, "[a]s with trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so."  *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (citations and quotation marks omitted); *see also Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir.1997) (whether to object is a question of trial strategy).  The record indicates Petitioner's counsel adequately addressed Dr. Hamill's testimony during his own summation, rather than objecting and perhaps calling attention to the offending remarks during the prosecution's summation.  Jabaut's counsel asserted in his summation, with respect to Dr. Hamil's testimony:

> Excellent presentation.  But what did it prove in the end?  He gave you a lot of generalities as you heard and he testified.  He met neither of these alleged victims.  He spoke to no one concerning these allegations.  He spoke to you in general terms for a myriad of reasons as to why young adults, young adolescents don't disclose immediately, or disclose later on, or only disclose partially.  But when it was all said and done, with all the five different principles and dynamics of Child Sexual Abuse Accommodation Syndrome the bottom line is somebody could have those indicia and not have been abused at all.  So where does that leave us?  Yes, it leaves us with a lot of nice information, but nothing specific as to this particular case and these particular victims.

(T at 1078.)  Thus, Petitioner's counsel was not ineffective for failing to object during the summation.  Moreover, though arguably the prosecution made several inappropriate statements,[7] she also was careful to note in summation that Dr. Hamill "didn't talk to anybody in this case . . . [h]e didn't know anything about this case[.]"  (*Id*. at 1097.)  Thus, even if Petitioner could establish it was error for his counsel not to object to the prosecution's summation, he is unable to show prejudice because he cannot plausibly argue the jury had not heard—*at multiple times*—Dr. Hamill's testimony was generalized information rather than evidence relevant to explain KT and LB's behavior.

Relatedly, Petitioner argues his counsel was ineffective for failing to seek a limiting instruction regarding Dr. Hamill's testimony.  However, Petitioner has not shown any actual error in the instructions themselves.  Absent actual error in trial court's instruction, and in light of the overwhelming evidence presented at trial that Jabaut was guilty, trial counsel's failure to object to the jury charge did not constitute ineffective assistance of counsel.  *See United States v. Frampton*, 382 F.3d 213, 222 n.8 (2d Cir. 2004) ("Having found no error in [the district court's]

---

[7]  For example, the prosecutor appeared to argue Dr. Hamill's testimony "explained" why LB was protective of Jabaut and why she wanted to be around him; she also stated that "[Dr. Hamill] described why they didn't tell," referring to KT and LB.  (T at 1092-93, 1096.)

instruction, we hold [defendant's] claim [of ineffective assistance] must fail."). Moreover, as recounted above, the jury heard, on multiple occasions, Dr. Hamill's testimony was not direct evidence of whether Jabaut committed the charged crimes.

Jabaut's additional grounds for ineffective assistance are equally unavailing. To that end, his claim regarding counsel's misleading statements in his C.P.L. § 440.10 motion do not establish ineffective assistance. Indeed, his trial counsel was not his attorney for his criminal appeal and was merely a fact witness. In any event, trial counsel's conflicting affidavits are easily explained as a harmless mistake and there is no evidence tending to show he purposely tried to mislead the Court or Petitioner.

Furthermore, to demonstrate that an attorney was ineffective because he failed to explore an issue or present certain evidence, a petitioner must demonstrate the absence of strategic or other legitimate explanations for defense counsel's failure. Petitioner argues his counsel was ineffective for failing to call a rebuttal expert regarding CSAAS. However, "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington v. Richter*, 562 U.S. 86, 111 (2011); *O'Halloran v. Gonyea*, No. 9:11-CV-0346, 2015 WL 93716, at *35 (N.D.N.Y. Jan. 7, 2015) (counsel not ineffective for failing to consult a child abuse expert where counsel effectively cross-examined the People's expert and elicited that the expert's testimony was not offered to prove that the alleged sexual abuse occurred). Here, trial counsel adequately challenged the prosecution's CSAAS expert on cross-examination and in his summation. To that end, he elicited testimony that CSAAS cannot be used to diagnose child sex abuse and it is possible to exhibit all the signs of CSAAS and not to have been a victim. (T. at 742.) He further explained in his summation that the CSAAS testimony did not represent affirmative evidence and Dr. Hamill did not meet either KT or LB. (*Id*. at 1078.)

Based on the foregoing, Jabaut failed to establish ineffective assistance of counsel regarding his counsel's failure to call a rebuttal expert witness.

In any event, as the AD explained, a review of the record reveals Petitioner's trial counsel comported with constitutional standards and rendered effective assistance overall. *See Richter*, 562 U.S at 111 ("it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy"); *Jabaut*, 111 A.D.3d at 1146. Petitioner's trial counsel ably represented him in his trial and did his best against a mountain of evidence— including Petitioner's own admissions—conclusively establishing his guilt in the crimes for which he was ultimately convicted.

In light of the above, Petitioner's claim of ineffective assistance of counsel is without merit and the Court recommends denying this claim.

**WHEREFORE**, based on the foregoing, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of the claims set forth in the petition as Petitioner has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED** that the Clerk's Office provide Petitioner a copy of this Order and Report-Recommendation, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  October 31, 2019
          Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[8]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2015 WL 93716
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Eugene D. O'HALLORAN, Sr., Petitioner,

v.

Paul GONYEA, Respondent.

No. 9:11–CV–0346 (GTS/TWD).
|
Signed Jan. 7, 2015.

**Attorneys and Law Firms**

Eugene D. O'Halloran, Sr., Pine City, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of
New York, Paul B. Lyons, Esq., Assistant Attorney General,
of Counsel, New York, NY, for Respondent.

***DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this habeas corpus
proceeding filed pro se by Eugene D. O'Halloran
("Petitioner") against Paul Gonyea ("Respondent") pursuant
to 28 U.S.C. § 2254, is the Report–Recommendation of
United States Magistrate Judge Thérèse Wiley Dancks
recommending that the Petition be denied and dismissed
pursuant to 28 U.S.C. § 2253(c)(2), and that a certificate of
appealability not issue. (Dkt.Nos.1, 37.) After being granted
an extension of time in which to do so, Petitioner filed
an Objection to the Report–Recommendation and a motion
for a certificate of appealability. (Dkt.Nos.41, 42.) For the
reasons set forth below, Magistrate Judge Dancks' Report–
Recommendation is accepted and adopted in its entirety, the
Petition is denied and dismissed in its entirety, and Petitioner's
motion for certificate of appealability is denied.

**I. RELEVANT BACKGROUND**

Because this Decision and Order is intended primarily for the
review of the parties, the Court will not repeat the background
of Petitioner's state-court conviction for sodomy in the first
degree, sodomy in the second degree, and endangering the
welfare of a child, but will simply refer the parties to
the relevant portions of Magistrate Judge Dancks' Report–

Recommendation, which accurately recite that background.
(Dkt. No. 37, at Parts I and III.)

Liberally construed, Petitioner's Petition asserts five claims:
(1) that his conviction was wrongfully obtained because
the trial court unconstitutionally amended the indictment
after the evidence was submitted; (2) that his conviction
was wrongfully obtained because the prosecutor failed to
timely disclose favorable evidence to defense counsel prior
to trial as required by *Brady;* (3) that his conviction
was wrongfully obtained because his trial counsel was
ineffective by (a) allowing Petitioner to be arrested in
his presence, (b) failing to object to a comment by the
prosecutor during the grand jury proceeding, (c) failing
to move to dismiss the endangering-the-welfare-of-a-child
count as barred by the applicable statute of limitations, (d)
accepting *Brady* materials as *Rosario* materials, (e) failing
to demand evidence regarding the "true perpetrator," (f) failing
to effectively impeach witnesses, (g) failing to move for a
mistrial after Ms. Brimberg–Clark's testimony, (h) failing
to enter evidence into the record, (i) failing to "know the
law" regarding corroboration, (j) failing to object to the
amendment of the indictment, and (k) failing to object to
the prosecutor's comments during summation; (4) that his
conviction was wrongfully obtained because his appellate
counsel was ineffective by failing to ensure that the amended
indictment issue was properly exhausted; and (5) that his
conviction was wrongfully obtained because he received
ineffective assistance of counsel during the state court
collateral proceedings in that his counsel failed to argue that
his trial counsel rendered ineffective assistance by failing to
object to the amended indictment and failing to challenge the
entire indictment as time-barred. (*See generally* Dkt. No. 1.)

**\*2** Generally, in her Report–Recommendation, Magistrate
Judge Dancks recommends that Petitioner's claims be
dismissed for the following reasons: (1) with respect to
Petitioner's claim that the amendment to the indictment was
unconstitutional, the claim is unexhausted and, in any event,
plainly meritless; (2) with respect to Petitioner's claim that the
prosecution failed to disclose favorable evidence as required
by *Brady,* the Appellate Division's denial of Petitioner's *Brady*
claim was neither contrary to, nor an unreasonable application
of, Supreme Court law; (3) with respect to Petitioner's claim
that his trial counsel was ineffective, each of Petitioner's
eleven assignments of error is meritless; (4) with respect to
Petitioner's claim that his appellate counsel was ineffective,
the claim is unexhausted; and (5) with respect to Petitioner's
claim that he received ineffective assistance of counsel during

the state collateral proceedings, the claim is unexhausted and, in any event, plainly meritless. (Dkt. No. 37.)

Generally, in his Objection, Petitioner asserts four arguments: (1) that his claim regarding the amendment to the indictment has merit because the amended petition was not considered by the grand jury and was thus a violation of his right to due process and equal protection of the laws; (2) that his ineffective-assistance-of-appellate-counsel claim was exhausted by a writ of error *coram nobis;* (3) that his ineffective-assistance-of-trial-counsel claim has merit because his trial counsel failed to argue that the revised indictment was unconstitutional; and (4) that, with regard to his *Brady* claim, the notes of the prosecutors and police officers should have been disclosed to defense counsel before trial as required by *Brady.* (Dkt. No. 41.)

Generally, in his motion for a certificate of appealability, Petitioner argues that reconsideration is warranted of Magistrate Judge Dancks' finding that no certificate of appealability should issue, because his rights have been violated under the Sixth and Fourteenth Amendments (for the reasons stated in his Petition). (Dkt. No. 42.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard Governing Review of a Report–Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.,* 04–CV–0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug.15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the

magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley,* 752 F.Supp.2d 311, 312–13 (W.D.N.Y.2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

**\*3** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

### B. Standard Governing Review of Petitioner's Habeas Petition Pursuant to 28 U.S.C. § 2244(d)(1)

Again, because this Decision and Order is intended primarily for the review of the parties, the Court will not repeat the legal standard governing Petitioner's habeas petition pursuant to 28 U.S.C. § 2244(d)(1), but will simply refer the parties to the relevant portion of Magistrate Judge Dancks' Report–Recommendation, which accurately recites that legal standard. (Dkt. No. 37, at Part IV.A.)

### III. ANALYSIS

After carefully reviewing all of the papers in this action, the Court agrees with each of the recommendations made

2015 WL 93716

by Magistrate Judge Dancks in her thorough Report–Recommendation. Magistrate Judge Dancks employed the correct legal standards, accurately recited the facts, and properly applied the law to those facts. (Dkt. No. 37, Parts I–IV.) As a result, the Court accepts and adopts Magistrate Judge Dancks' Report–Recommendation in its entirety for the reasons stated therein. (*Id.*)

The Court would add only one point. Even when construed with the utmost of liberality, Petitioner's Objection fails to assert any arguments different from those asserted in his Petition and Traverse. (Compare Dkt. No. 41 [Objection] with Dkt. No. 1 [Petition] and Dkt. No. 19 [Traverse].) As a result, he is entitled to only a clear-error review of Magistrate Judge Dancks' Report–Recommendation (which level of review the Report–Recommendation easily survives). However, even if the Court were to subject the entirety of the Report–Recommendation to a *de novo* review, the Report–Recommendation would survive that review. For example, Petitioner's first assignment of error in his Objection overlooks the fact that a lack of merit was merely an alternative ground for the recommended dismissal of Petitioner's first claim, the primary ground being the fact that the claim was unexhausted. The remaining errors asserted in Petitioner's Objection are so lacking in merit as to not require further discussion. The same is true with regard to Petitioner's motion for a certificate of appealability, which is premised conclusorily on the merit (or lack of merit) of his claims.

**\*4  ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 37) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Petitioner's Petition (Dkt. No. 1) is *DENIED* and *DISMISSED;* and it is further

**ORDERED** that Petitioner's motion for a certificate of appealability (Dkt. No. 42) is *DENIED;* and it is further

**ORDERED** that a certificate of appealability shall not issue with respect to any of the claims set forth in the Petition, because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

## *REPORT–RECOMMENDATION and ORDER*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This action has been referred to the undersigned by United States District Judge Glenn T. Suddaby for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c). Petitioner Eugene D. O'Halloran, a New York state prison inmate, has commenced this habeas corpus proceeding, pursuant to 28 U.S.C. § 2254, challenging his conviction. For the following reasons, I recommend that the Court deny and dismiss the petition.

### I. *THE HABEAS PETITION*

On March 29, 2011, Petitioner filed a petition for a writ of habeas corpus. (Dkt. No. 1.) Petitioner challenges the judgment entered on September 13, 2006, in Broome County Court convicting him, after a jury trial, of sodomy in the first degree, sodomy in the second degree, and endangering the welfare of a child. *Id.* at 2. Plaintiff was sentenced to concurrent prison terms of five to fifteen years for sodomy in the first degree, two to six years for sodomy in the second degree, and one year for endangering the welfare of a child. *Id.* Petitioner's conviction was affirmed by the Appellate Division, Third Department, and leave to appeal to the Court of Appeals was denied. *People v. O'Halloran,* 48 A.D.3d 978, 852 N.Y.S.2d 471 (N.Y.App. Div.3d Dep't 2008); *leave denied* 10 N.Y.3d 868, 860 N.Y.S.2d 494, 890 N.E.2d 257 (May 13, 2008). Petitioner filed a petition for a writ of error *coram nobis* and the appellate division reinstated his appeal. (Dkt. No. 33 at 12.) On October 28, 2010, after a reconstruction hearing, the appellate division again affirmed the judgment of conviction. *People v. O'Halloran,* 77 A.D.3d 1169, 910 N.Y.S.2d 569 (N.Y.App. Div.3d Dep't 2010); *leave denied* 15 N.Y.3d 954, 917 N.Y.S.2d 114, 942 N.E.2d 325 (Dec. 15, 2010).

### II. *THE CLAIMS*

Petitioner seeks relief on the following grounds:

1. The conviction was obtained by an unconstitutional amendment to the indictment by the trial court after the evidence was submitted;

2. The conviction was obtained because the prosecutor failed to disclose favorable evidence;

3. The conviction was obtained as a result of the ineffective assistance of trial counsel;

4. The conviction was obtained as the result of the ineffective assistance of appellate counsel;

**\*5** 5. The conviction was obtained as the result of the ineffective assistance of counsel in state court collateral proceedings.

(Dkt. No. 1; Text Order May 9, 2013.)

### III. *FACTUAL AND PROCEDURAL BACKGROUND*

**A. The Underlying Incident and Pretrial Proceedings**
On November 18, 2004, the New York State Police arrested E.D., an eighteen year old male. (Ex. A at 577.) E.D. was transported to the New York State Police Barracks in Binghamton, New York. *Id.* E.D. was read his *Miranda* rights and agreed to be interviewed by Investigator Franz and Investigator Mastronardi. *Id.*

In both a videotaped interview and a written statement, E.D. admitted that he had engaged in oral sexual conduct with L.D., his younger female cousin, on approximately October 25, 2004. (Ex. A at 577, 585–86.) E.D. also admitted to having had an ongoing sexual relationship with L.D. when they were younger. *Id.*

During the videotaped interview, E.D. also disclosed that he had been sexually molested by Petitioner for several years. (Ex. A at 71–72.) E.D. stated that on thirty to forty occasions, when E.D. was six years old, and again, when he was between eleven and fourteen years old, Petitioner had subjected him to oral sexual conduct. *Id.* E.D. also disclosed that Petitioner had provided him with alcohol and shown him pornography while he was visiting Petitioner's residence. *Id.*

On January 4, 2005, Petitioner voluntarily accompanied investigators to the New York State Police Barracks in Binghamton for questioning. (Ex. A at 69.) Petitioner was read his *Miranda* rights and agreed to speak voluntarily with Investigator Franz. *Id.* The interview was videotaped. *Id.* Investigator Franz questioned Petitioner regarding the allegations made by E.D. *Id.* Petitioner denied having had sexual contact with E.D. and denied providing E.D. with alcohol. *Id.* After the interview, Petitioner was arrested and charged with sodomy in the second degree. *Id.* He was arraigned later that day. *Id.*

On March 4, 2005, a grand jury indicted Petitioner on four counts. (Ex. A at 26–29.) The first count charged Petitioner with violating New York Penal Law § 130.50(3), Criminal Sexual Act in the First Degree, for subjecting "a six year old male child (d.o.b.10/2/86) to oral sexual conduct" in the summer of 1993. *Id.* at 26. The second count charged Petitioner with violating Penal Law § 130.50(2), Criminal Sexual Act in the First Degree, for engaging "in deviate sexual intercourse with a ten year old male (d .o.b.10/2/86) who was incapable of consent by reason of being physically helpless" in the summer of 1997. *Id.* at 27. The third count charged Petitioner with violating Penal Law § 130.50(4) for subjecting "a ten year old male (d.o.b.10/2/86) to oral sexual conduct" in the Summer of 1997. *Id.* at 28. The fourth count charged Petitioner with violating Penal Law § 260.10, Endangering the Welfare of a Child, for conduct "between the Summer of 1993 and the end of 1999." *Id.* at 29.

**\*6** The grand jury issued a superseding indictment on January 25, 2006. (Ex. A at 87–98.) The new indictment added counts involving C.B. and N.D, both males under the age of eighteen. *Id.* The new indictment did not change the charges as to E.D. *Id.* The counts involving C.B. and N.D. were dismissed before trial for lack of jurisdiction because the conduct was not alleged to have occurred in Broome County. *Id.* at 15–18.

The prosecution brought a pretrial motion to admit evidence regarding C.B. and N.D. during their case-in-chief to show "a clear and recurring modus operandi." (Ex. A at 83.) The county court ruled that the evidence was inadmissible because the alleged modus operandi was insufficiently unique, the prosecution was not required to prove intent in order to obtain a conviction, and the alleged events occurred too long after the conduct for which Petitioner was indicted. *Id.* at 22–24.

**B. Trial**
The trial began on September 11, 2006. (Ex. A at 158.) Petitioner was represented by James Barber. *Id.* at 167:12–13.

Before opening statements, the People produced *Rosario* [1] material. *Id.* at 253:13–17. These documents included, among other things: Investigator Franz's handwritten notes of his November 18, 2004, interview of E.D. (*id.* at 580–84); E.D.'s written statement to the police on November 18, 2004, in which E.D. admitted to sexually abusing L.D. (*id.* at 585–86); a "short form" police report incident report updating the case, dated December 9, 2005 (*id.* at 588–91); Investigator Franz's

handwritten notes of his November 15, 2004, interviews with N.D., C.B., E.D., Sr. (E.D.'s father), and E.D. (*id.* at 593–604); N.D.'s grand jury testimony (*id.* at 606–614), C.B.'s grand jury testimony (*id.* at 616–625), E.D., Sr.'s grand jury testimony (*id.* at 627–640), and E.D.'s grand jury testimony (*id.* at 642–657). Defense counsel had not received Investigator Franz's notes or E.D.'s written statement before they were produced as *Rosario* material. *Id.* at 525 ¶ 10, 213 N.Y.S.2d 448, 173 N.E.2d 881. These documents did not include two tapes of Investigator Franz's interview with L.D. (*id.* at 527 ¶ 16, 213 N.Y.S.2d 448, 173 N.E.2d 881) or audio and video recordings of E.D., Sr., and E.D. (*id.* at 528 ¶ 19, 534 ¶ 46, 213 N.Y.S.2d 448, 173 N.E.2d 881). Defense counsel was granted an adjournment until the next morning to review the material. *Id.* at 253:19–22, 254:12–16, 268:3–10, 213 N.Y.S.2d 448, 173 N.E.2d 881.

In his opening statement, delivered the next morning, defense counsel spoke about the burden of proof, questioned whether E.D.'s assertion that Petitioner molested him made any sense given the lack of privacy at either of the homes where the conduct allegedly occurred, and reminded the jury that Petitioner was not required to take the stand. (Ex. A at 279–85.) Defense counsel also spoke about credibility issues:

> Other witnesses are going to testify, I'm not sure as to exactly what they're going to say, you'll hear them, I'll be able to cross-examine them to test their voracity, test their truthfulness to see if perhaps they have a motive for testifying in the manner in which they're testifying.

**\*7** *Id.* at 280:22–281:4, 213 N.Y.S.2d 448, 173 N.E.2d 881.

The prosecution called four witnesses: E.D., Investigator Franz, Ronee Brimberg–Clark, and E.D., Sr. (Ex. A at 128:21–368:4.) E.D. testified that Petitioner was a "[g]ood friend of the family." *Id.* at 287:6–10, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. stated that he knew Petitioner as "Uncle Dave." *Id.* at 288:19–23, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. testified that when he was six years old, he visited Petitioner at his residence on Conklin Road because he was friends with Petitioner's son, Geno. *Id.* at 290:2–24, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. recalled a day in the summer of 1993 when he slept at Petitioner's residence.

*Id.* at 291:21–23, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. and Geno slept on a pull-out sofa couch. *Id.* at 291:24–292:6, 292:15–293:2, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. recalled he "woke up to [Petitioner] sucking on [his] penis." *Id.* at 292:6, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. stated that he opened his eyes briefly but closed them again because he did not want Petitioner to know he was awake. *Id.* at 293:10294:17, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. testified that Geno was sleeping right next to him when this happened. *Id.* at 294:21–22, 213 N.Y.S.2d 448, 173 N.E.2d 881.

E.D. further testified that, in 1997, when he was approximately ten-and-a-half years old, he performed construction with Geno and Petitioner on their house on Dunbar Road. (Ex. A at 297:3–298:3.) E.D. testified that approximately fifteen to twenty times, Petitioner provided E.D. and Geno with alcohol. *Id.* at 302:22–24, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. testified that the alcohol included "40s, Smirnoff's, Mike's Hard Lemonade, that kind of stuff, basically whatever me and Geno asked for." *Id.* at 301:3–5, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. recalled a specific night in the summer of 1997 when Petitioner provided both E.D. and Geno with 40–ounce bottles of Old English. *Id.* at 301:1–23, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. recalled drinking approximately three-quarters of a bottle, which made him drunk. *Id.* at 301:24302:3, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. testified that he and Geno went to sleep on the pull-out sofa. *Id.* at 305:18–306:5, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. testified that when he woke up, he "felt someone on there, sucking on my penis." *Id* . at 304:17–18, 213 N.Y.S.2d 448, 173 N.E.2d 881. The person kept asking E.D. if he was done yet. *Id.* at 306:13–16, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. recognized Petitioner's voice. *Id.* at 306:17–18, 213 N.Y.S.2d 448, 173 N.E.2d 881.

E.D. further testified that Petitioner showed him and Geno pornographic movies three times in the living room at the house on Dunbar Road. (Ex. A at 312:22–313:24.)

E.D. testified that, inclusive of those two specific incidents, Petitioner molested him between thirty and forty times. (Ex. A at 311:8–17.) About fifteen of those incidents, he testified, involved alcohol. *Id.* at 312:14–17, 213 N.Y.S.2d 448, 173 N.E.2d 881.

E.D. admitted during direct examination that he had been arrested in November 2004. (Ex. A at 317:8–14.) He testified that he was charged with sexual criminal act in the second

degree for having oral sex with his fifteen year old cousin when he was eighteen years old. *Id.* at 318:14–319:3, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. testified that he pleaded guilty. *Id.* at 319:4–21, 213 N.Y.S.2d 448, 173 N.E.2d 881.

On cross-examination, defense counsel established that E.D. received only probation as a result of his conviction. (Ex. A at 320:17–23.) Defense counsel asked E.D. if he expected to receive leniency regarding his own conduct by telling Investigator Franz about Petitioner. *Id.* at 324:9–23, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. testified that he did not. *Id.* at 324:14–325:1, 213 N.Y.S.2d 448, 173 N.E.2d 881. Defense counsel asked E.D. why he never told Geno that Petitioner was molesting him. *Id.* at 329:23–330:8, 213 N.Y.S.2d 448, 173 N.E.2d 881. E.D. testified that he "didn't want to hurt his feelings like that." *Id.* at 330:9–10, 213 N.Y.S.2d 448, 173 N.E.2d 881.

**\*8** Investigator Franz testified. (Ex. A at 333:1–349:2.) He described his January 4, 2005, interview of Petitioner in detail. *Id.* at 335:9–347:7, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that Petitioner was the first one to bring up the topic of giving alcoholic beverages to E.D. *Id* . at 343:16–21, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that Petitioner stated that he had never given E.D. alcoholic beverages, just soft drinks. *Id.* at 343:2123, 213 N.Y.S.2d 448, 173 N.E.2d 881.

On cross-examination, Investigator Franz testified that he never applied for a search warrant for Petitioner's home, that Petitioner insisted "over and over and over" during the course of the two-hour interview that he had not done anything wrong, that Petitioner was cooperative during the interview, and that Petitioner never stated that he had had sexual relations with E.D. (Ex. A at 347:12–348:7.)

Ronee Brimberg–Clark testified. (Ex. A at 351:1–362:4.) Ms. Brimberg–Clark is a clinical social worker. *Id.* at 351:9–19, 213 N.Y.S.2d 448, 173 N.E.2d 881. Before testifying, she had not met any of the participants in the case, reviewed any documentation in the case, or reviewed any grand jury or other testimony from the case. *Id.* at 354:14–22, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified about child abuse accommodation syndrome, which is the clinical explanation for why victims of childhood sexual abuse sometimes delay reporting the abuse. *Id.* at 355:6–359:19, 213 N.Y.S.2d 448, 173 N.E.2d 881.

On cross-examination, defense counsel had Ms. Brimberg–Clark reiterate that she had never spoken to E.D. and did not know anything about him. (Ex. A at 361:3–15.) He then moved to strike her entire testimony as irrelevant. *Id.* at 361:16–18, 213 N.Y.S.2d 448, 173 N.E.2d 881. The court denied the motion. *Id.* at 361:21–22, 213 N.Y.S.2d 448, 173 N.E.2d 881.

E.D.'s father, E.D., Sr., testified. (Ex. A at 362:8–368:2.) He testified that E.D. spent the night at Petitioner's house on many occasions when he was six years old and then again when he was ten or eleven years old. *Id.* at 364:2–5, 366:11–19, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that the first time he learned about the sexual abuse was in November 2004, when E.D. was arrested. *Id.* at 367:11–18, 213 N.Y.S.2d 448, 173 N.E.2d 881.

Defense counsel did not cross-examine E.D., Sr. (Ex. A at 367:21–23.)

The People rested at the conclusion of E.D., Sr.'s testimony. (Ex. A at 368:4.) Defense counsel moved to dismiss the charges against Petitioner for lack of evidence. *Id.* at 368:21–23, 213 N.Y.S.2d 448, 173 N.E.2d 881. The court denied the motion. *Id.* at 369:15, 213 N.Y.S.2d 448, 173 N.E.2d 881.

Defense counsel called four witnesses: Geno (Ex. A at 375:1–397:6), Petitioner's wife (*id.* at 397:10–408:2, 213 N.Y.S.2d 448, 173 N.E.2d 881), Petitioner's daughter (*id.* at 409:1–413:17, 213 N.Y.S.2d 448, 173 N.E.2d 881), and one of Geno's friends (*id.* at 414:1–418:1, 213 N.Y.S.2d 448, 173 N.E.2d 881).

Geno testified that E.D. only stayed over at his house on Dunbar Road a "couple times." (Ex. A at 377:3–11.) He testified that his father generally drank only one beer a day, before bed. *Id.* at 377:16–378:2, 213 N.Y.S.2d 448, 173 N.E.2d 881. The beer was Michelob and came in twelve ounce containers. *Id.* at 379:613, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that he never saw E.D. consume alcohol at his father's house. *Id.* at 378:24379:2, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that his father never gave him and E.D. alcohol to drink. *Id.* at 379:14–18, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that he was a light sleeper, but that if people were talking low and quiet it would not wake him up. *Id.* at 378:5–12, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that he never woke up on the nights that E.D. slept over to find anyone in the same room with them. *Id.* at 378:13–17, 213 N.Y.S.2d 448, 173 N.E.2d 881. He

testified that one of his sisters was still living at home when he and E.D. were ten and a half. *Id* . at 380:8–18, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that he never viewed pornography with his father or E.D. *Id.* at 381:4–6, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that there was no pornography stored on top of the television and that all of the videos stored in that spot were known to all of the members of his family, including his sisters and his mother. *Id.* at 385:11–23, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that his mother was always there at night. *Id.* at 381:15–17, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that when he and E.D. slept on the couch, they turned off the lights but kept the television on. *Id.* at 382:8–11, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that sometimes he heard his sister come downstairs to use the bathroom on the nights when E.D. slept over. *Id.* at 382:17–384:8, 213 N.Y.S.2d 448, 173 N.E.2d 881.

**\*9** On cross-examination, Geno admitted that he had been arrested for tampering with a witness after calling E.D., Sr., and threatening him. (Ex. A at 386:13–16, 388:9–18.) He reiterated that he never saw E.D. drink at his house. *Id.* at 389:8–23, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that E.D. had only come over to his house one time when they were six, and that he did not spend the night. *Id.* at 392:7–393:1, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that Investigator Franz had him call E.D. after Petitioner's arrest and that during that phone call, E.D. said "it only happened once." *Id.* at 395:7–22, 213 N.Y.S.2d 448, 173 N.E.2d 881.

Petitioner's wife testified that E.D. was at the house on Conklin Road only once, with his father. (Ex. A at 398:15–20.) She testified that E.D. was at the house on Dunbar Road a "couple of weekends out of the month." *Id.* at 399:2–15, 213 N.Y.S.2d 448, 173 N.E.2d 881. She also testified that E.D. slept over at the house "[e]very weekend." *Id.* at 400:17–21, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that there was Genny Cream Ale in the house occasionally, which she used for cooking. *Id.* at 401:6–9, 24, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that Petitioner drank one Michelob or perhaps two at a time, once or twice a month. *Id.* at 401:18–21, 402: 613, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that she usually went to bed earlier than Petitioner and the boys when E.D. slept over. *Id.* at 404:12–16, 213 N.Y.S.2d 448, 173 N.E.2d 881. Petitioner would usually come to bed between 10:30 p.m. and 11:00 p.m. *Id.* at 404:17–19, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that she would not wake up when he came to bed. *Id.* at 404:24405:2, 213 N.Y.S.2d 448, 173 N.E.2d 881. However, she characterized

herself as a very light sleeper. *Id.* at 405:3–5, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that she was never aware of Petitioner getting out of bed in the night. *Id.* at 405: 6–14, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that she did hear her daughters when they got up in the night. *Id.* at 405:15–17, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that when her nephew lived with them for a while, there were a couple of occasions when he, her son, and E.D. all slept together on the couch. *Id.* at 406:10–17, 213 N.Y.S.2d 448, 173 N.E.2d 881.

On cross-examination, Petitioner's wife testified that the boys did not sleep upstairs in her son's room when E.D. slept over because they were quite loud and so she had them sleep downstairs. (Ex. A at 407:10–22.)

Petitioner's daughter testified that E.D. came to the house on Dunbar Road a lot on weekends beginning in 2001. (Ex. A at 410:7–11 .) After that, he visited "[m]ostly every weekend." *Id.* at 411:1–6, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that there was beer in the house, but never hard liquor. *Id.* at 411:7–16, 213 N.Y.S.2d 448, 173 N.E.2d 881. She testified that when E.D. spent the night, she and her parents always woke up before the boys did and she never smelled alcohol downstairs. *Id.* at 412:5–18, 213 N.Y.S.2d 448, 173 N.E.2d 881. She never saw E.D. or her brother drinking alcohol at the family home. *Id.* at 412:19–23, 213 N.Y.S.2d 448, 173 N.E.2d 881. She never saw any six-packs of beer or bottles of alcohol in the house. *Id.* at 413:6–11, 213 N.Y.S.2d 448, 173 N.E.2d 881.

The prosecutor did not cross-examine Petitioner's daughter. Ex. A at 413:13–14.

Geno's friend testified that he was never served alcohol at Petitioner's house. Ex. A at 414:23–415:1. He rarely saw alcohol in the house. *Id.* at 415:2–3, 213 N.Y.S.2d 448, 173 N.E.2d 881. He initially testified that he "never" saw Petitioner drink. *Id.* at 415:4–5, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that he regularly stayed at Petitioner's home beginning in sixth grade. *Id.* at 415:11–22, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that he stayed there three or four times a week, every week, if not more. *Id.* at 416:8–11, 213 N.Y.S.2d 448, 173 N.E.2d 881. He testified that he never spent the night when E.D. was there. *Id.* at 416:5–7, 213 N.Y.S.2d 448, 173 N.E.2d 881.

**\*10** On cross-examination, the friend testified that he had seen Petitioner drink a beer. (Ex. A at 417:5–11.) He denied

ever telling L.D. that he wanted to fight E.D. *Id.* at 418:11–19, 213 N.Y.S.2d 448, 173 N.E.2d 881.

The defense rested after the friend's testimony. (Ex. A at 419:2–3.)

Before closing arguments, the court advised counsel that it intended to sua sponte amend the indictment. As to Count Three, the court stated:

> [C]ount three of the indictment is entitled ... criminal sexual act, first degree, formerly sodomy, first degree, in violation of Section 130.50, subdivision 4.

> The law and its allegations, to make the record complete, that count alleges that the conduct occurred in the Town of Windsor during the summer of 1997 and specifically alleges that during that period of time, the Defendant being 18 years old or more, date of birth 4/1/47, subjected a ten-year-old male, date of birth 10/2/86, to oral sexual conduct. The law in existence at the time of the commission of this alleged commission of this crime, summer of '97, makes that conduct sodomy in the second degree, not sodomy in the first degree, as charged in the indictment....

> Sodomy in the first degree, that section of the sex offense, Article 130 of the Penal Law, was amended by the laws of 2000, Chapter One, Section 37, and it made sodomy in the first degree apply to a situation where the defendant, being 18 years old or more, engages in deviate sexual intercourse with a person less than 13 years old. However, the law that was in effect in 1997 made that conduct a D felony, sodomy in the second degree, Defendant being more than 18 years old engaged in deviate sexual intercourse with someone less than 14.

> Had that been caught, if you will, by the Court on the motion to inspect the grand jury proceedings, evidence before the grand jury being sufficient to support a charge of sodomy, second degree, it would have been the Court's decision, it would have reduced it to sodomy in the second degree and we would have gone forward. That's what has occurred here ... so it's my intent at this juncture to submit to the jury count three, sodomy, second degree, not sodomy in the first degree.

(Ex. A at 427:19–429:8.) Defense counsel agreed to the amendment. *Id.* at 429:8–10, 213 N.Y.S.2d 448, 173 N.E.2d 881.

In his closing argument, defense counsel argued that E.D.'s testimony was not believable because there was no alcohol in Petitioner's house and because the open floor plan and presence of other people, particularly that of Geno sleeping next to him, made what E.D. alleged to have occurred highly improbable. (Ex. A at 431:13–436:2.) He further argued that E.D. lied so that he could escape severe punishment for raping his cousin. *Id.* at 436:3–437:4, 213 N.Y.S.2d 448, 173 N.E.2d 881. He noted that the evidence showed that Petitioner had denied the charges against him. *Id.* at 438:1–20, 213 N.Y.S.2d 448, 173 N.E.2d 881. He noted that because E.D. had never alleged any specific dates on which conduct occurred, it was difficult for Petitioner to provide an alibi that he was elsewhere at the time. *Id.* at 438:21–439:11, 213 N.Y.S.2d 448, 173 N.E.2d 881.

**\*11** In his closing argument, the prosecutor argued that E.D. was telling the truth, stated that he had not gotten any sort of deal in his own criminal case for implicating Petitioner, noted inconsistencies between the testimony of Geno and Petitioner's wife about how often E.D. was at the house, and asked the jury to remember Investigator Franz's testimony that Petitioner was the one who initially raised the subject of E.D. and alcohol. (Ex. A at 449:1–471:18.)

During deliberations, the jury asked for a reread of E.D.'s testimony "from 1997 on." (Ex. A at 509:21–22.) The jury also asked for a reread of the definition of physical helplessness from the second count and further explanation of the term if possible. *Id.* at 509:23–510:2, 213 N.Y.S.2d 448, 173 N.E.2d 881.

The jury found Petitioner not guilty of the second count and guilty on all other counts. (Ex. A at 514:7–515:10.)

### C. Post–Trial Motion to Vacate the Verdict

Petitioner moved, through attorney Ronald R. Benjamin, to vacate the verdict pursuant to New York Criminal Procedure Law § 330.30. (Ex. A at 522.) Petitioner argued that (1) new evidence showed that E.D. fabricated the charges against Petitioner; and (2) the prosecution had failed to turn over a variety of exculpatory or impeaching materials pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Id.* at 523–697.

The new evidence was comprised of affidavits from three individuals. (Ex. A at 541557.) Matthew Rolles declared that he was a friend of both E.D. and Geno and was in the courtroom when the testimony requested by the jury was read

back. *Id.* at 542 ¶¶ 6, 11, 15, 543 ¶ 15. That was the first time he heard any details about what E.D. alleged Petitioner had done. *Id.* at 543–544 ¶¶ 16, 19–20. The testimony greatly upset him because the details seemed very similar to his own history of childhood sexual abuse, which he had confided to E.D. over the course of their friendship. *Id.* at 542–543 ¶¶ 7–10, 12–13. E.D. had never mentioned anything to Mr. Rolles about being molested, despite the confidences that Mr. Rolles shared with him. *Id.* at 543 ¶ 17. Mr. Rolles approached defense counsel after the verdict was entered and told him he had information that might show that E.D. fabricated his claims against Petitioner. *Id.* at 544 ¶ 21.

Mr. Rolles' mother, Connie Sue Terrell, declared that E.D. told her in November 2004 that he intended to lie and say Petitioner had molested him in order to obtain leniency for his own crime. (Ex. A at 551 ¶ 20. [2]) According to Ms. Terrell, E.D., Sr., N.D., and C.B. were present for the conversation. *Id.* at 529 ¶ 24. Ms. Terrell also declared that E.D. married a fourteen-year-old when he was only sixteen and then abused his wife and children. *Id.* at 551–52 ¶¶ 23–29.

Mr. Rolles' fourteen year old sister declared that she was present for the same conversation as her mother and that she remembered E.D. "telling my Mom he was going to use what happened to my brother Matt when he was young, because he ... was in trouble for what he did to his cousin ... and he talked about getting leniency by getting Geno's dad in trouble." (Ex. A at 556 ¶ 10.)

**\*12**  The motion also asserted that Mike's Hard Lemonade and Smirnoff Ice, which E.D. testified were among the beverages that Petitioner gave him, were first distributed in the United States in 2000 and 2001, respectively. (Ex. A at 535–36 ¶¶ 51–53.) Counsel argued that this evidence conflicted with testimony that Petitioner provided E.D. with those beverages in 1997, and would have provided further evidence that E.D. was fabricating his claims. *Id.*

Petitioner argued that the prosecution failed to turn over (1) two tapes of Investigator Franz's interview with L.D. (Ex. A at 527 ¶ 16); (2) audio and video recordings of E.D.'s father, E.D., and C.B. (A. at 528 ¶ 19); and (3) video recordings of Investigator Franz's interview of E.D. (A. at 534 ¶ 46).

The prosecution argued that the taped interview of E.D. was not relevant to Petitioner's case because it involved E.D.'s conduct toward L.D. (Ex. A at 699.) The prosecution argued that, even if it was relevant, Investigator Franz's report

included the relevant information and had been provided to defense counsel. *Id.* The prosecution provided the tape to the court and noted that a "careful review of the brief mentions of O'Halloran on the video tape clearly indicates that Investigator Franz captured the substance of those references in his report and that they contain nothing even remotely exculpatory." *Id.* The prosecution argued that tapes of controlled calls to E.D. by C.B. were likewise not relevant. *Id.* Further, the prosecution argued that those tapes showed that E.D. and C.B. were not friendly enough to socialize or help fabricate a story, as Petitioner's new witnesses alleged. *Id.* The prosecution argued that the three new witnesses were not credible. *Id.* at 701–06. The prosecution also argued that the new evidence was factually inaccurate. *Id.* at 706–08.

The county court denied the motion to vacate the verdict, stating that:

> A review of the record, the pleadings, pre-trial disclosure, as well as the arguments the defense makes in the instant motion, all support the conclusion that the defense has failed to meet its burden in establishing any *Brady* violation has occurred. Specifically, as argued by the prosecution, the information pointed to by the defense was either known to the defense prior to trial, and/or is not *Brady* material.

(Ex. A at 14.)

### D. Direct Appeal

On direct appeal, Petitioner, represented by Mr. Benjamin, argued that he was entitled to a new trial because of *Brady* violations. (Ex. D at 24–30.) He further argued that trial counsel rendered ineffective assistance by (1) failing to use the police records turned over at trial to impeach E.D. and Investigator Franz regarding E.D.'s own history of bad acts and incentive to lie to reduce his own punishment; (2) failing to discover or call exculpatory witnesses; (3) failing to seek dismissal of the endangering count on statute of limitations grounds; and (4) failing to object that the prosecutor's closing arguments misstated or relied on untimely disclosure of *Brady* material. *Id.* at 31–33.

**\*13** Regarding Petitioner's *Brady* argument, the appellate court stated that:

> [T]here is no dispute that the People withheld statements made by the victim about the charges against him, including one recorded on videotape. The withholding of those statements would constitute a *Brady* violation if they could have assisted the defense in impeaching the victim's credibility. If so, we would then consider whether the violation was material. Since defendant made only a generalized demand for disclosure, the materiality of the violation would depend upon whether there is a reasonable probability that the result at trial would have been different if the statements had been disclosed. The withheld recorded statements, however, are not included in the record before us despite their having been reviewed by County Court. As a result, we cannot review the court's finding that the information contained therein was known to the defense before trial or would not have aided the defense. Since it was defendant's obligation to prepare a complete record for appeal and there is no evidence that he sought to have the withheld statements included in the record, his failure to do so renders the record insufficient for meaningful appellate review.

*People v. O'Halloran,* 48 A.D.3d 978, 852 N.Y.S.2d 471, 472 (N.Y.App. Div.3d Dep't 2008) (citations omitted).

The appellate court also rejected Petitioner's ineffective assistance of counsel claims. *People v. O'Halloran,* 48 A.D.3d 978, 852 N.Y.S.2d 471, 472 (N.Y.App. Div.3d Dep't 2008). Specifically, the court stated that because "counsel did call the jury's attention to the victim's prior bad acts, his potential motive to fabricate and his having received no jail time for his sexual offense, we are persuaded that the defendant received meaningful representation under all the circumstances." *Id.*

Petitioner sought leave to appeal to the New York Court of Appeals. (Ex. H.) That court denied leave to appeal on May 13, 2008. *People v. O'Halloran,* 10 N.Y.3d 868, 860 N.Y.S.2d 494, 890 N.E.2d 257 (2008).

### E. First *Coram Nobis* Proceeding

Petitioner, proceeding pro se, sought a writ of error *coram nobis* in the Appellate Division, Third Department. (Ex. M.) Petitioner argued that appellate counsel rendered ineffective assistance by (1) failing to properly investigate, recognize, identify, and raise *Brady* and *Rosario* violations; (2) failing to properly investigate, recognize, identify, and raise the inconsistencies in E.D.'s testimony; (3) failing to properly investigate, recognize, identify, and raise the ineffective assistance of trial counsel; and (4) failing to pursue "the speedy trial violation and show the prejudice that the defendant incurred." *Id.*

The appellate division granted the motion, stating that:

> Defendant contends on this motion that he was denied the effective assistance of appellate counsel on appeal from his judgment of conviction. More specifically, defendant argues that his CPL 330.30 motion to set aside the verdict should have been granted on the ground that the People withheld statements made by the victim about the charges against him, including one recorded on videotape, and that the withholding of those statements constituted a *Rosario* and/or material *Brady* violation. We agree that this issue may have merit, and although it was raised by appellate counsel on appeal, counsel failed to include the materials at issue in the record on appeal, rendering the record insufficient for meaningful review by this Court. Accordingly, the instant motion for coram nobis relief should be granted ... and defendant's appeal reinstated. Upon the reinstated appeal,

defendant may raise only the issue of whether the People's withholding of statements of the victim constituted a *Rosario* and/or material *Brady* violation.

*14  (Ex. P, citations omitted.)

Petitioner moved to renew or reargue his *coram nobis* motion. (Ex. Q.) Essentially, he requested that he be allowed to appeal issues other than the *Rosario* and *Brady* issues. *Id.* The appellate division denied the motion to renew or reargue on November 12, 2009. (Ex. T.) Petitioner moved for leave to appeal the Appellate Department's denial of the motion to renew or reargue. (Ex. U.) The Court of Appeals dismissed the application "because the order sought to be appealed is not appealable under Criminal Procedure Law, section 450.90(1)." (Ex. W.) Petitioner moved for reargument and reconsideration. (Ex. V.) The Court of Appeals denied the application on February 18, 2010. (Ex. X.) Petitioner never sought leave to appeal the underlying decision by the appellate division granting his motion in part and denying it in part.

### F. Reconstruction Hearing

The videotape of the interview with E.D. was destroyed on October 3, 2008, pursuant to New York State Police policies and procedures. (Ex. Y.) Petitioner filed a motion in the appellate division, requesting an order enlarging the record on appeal and extending the time to perfect the appeal. (Ex. Z.) The appellate division denied the motion to enlarge the record. (Ex. BB.) The appellate division, however, granted the motion for an extension of time to perfect the appeal and directed Petitioner to apply to the county court for a reconstruction hearing "as to the contents of the recorded statements at issue." *Id.*

The reconstruction hearing was conducted on February 11, 2010. (Ex. DD.) At the reconstruction hearing, Investigator Franz testified that the videotape did, in fact, reflect that when E.D. raised the subject of Petitioner while admitting to his own conduct regarding L.D., Franz said something to the effect of "you're going to jail ... but I am already thinking of making this less. I do want to hear what you've got, but later." *Id.* at 36:13–37:24. Investigator Franz testified that the videotape did not show that he "made any promises or commitment to him for his—any sort of sentence that

he would get in connection with his own criminal charge if he were able to cooperate against Mr. O'Halloran." *Id.* at 43:9–16. Indeed, Investigator Franz testified that "[n]o promises or any consideration were ever offered." *Id.* at 43:17–18. Investigator Franz also testified that the videotape, but not his written statement, showed E.D. admitting to using crack cocaine "during relevant time periods." *Id.* at 38:21–25. Investigator Franz testified that the videotape showed that these time periods were just "a sliver of his life" compared to the long period of time over which he alleged that Petitioner abused him. *Id.* at 39:12–13.

Regarding the audiotapes, Investigator Franz testified that one was a controlled call from C.B. (L.D.'s boyfriend) to E.D. (Ex. DD at 15:14–22.) E.D. said that he did not want to talk about it but that he would meet with C.B. *Id.* at 15:23–16:5. C.B. wore a wire to the meeting. *Id.* at 16:6–10. At that meeting, E.D. admitted to being involved in a sexual relationship with L.D. and apologized to C.B. for that involvement. *Id.* at 16:21–17:1. E.D. stated that he was aware of the consequences if his illegal sexual conduct with L.D. was discovered, including jail time. (A. at 577.)

*15  The trial judge placed his own recollection of the E.D. videotape on the record:

> The thrust of the taped interview was that [E.D.] was a defendant. And ... he was the one who brought it up, the matter of Mr. O'Halloran, he was told on the tape no. We'll get to that later. And it was never covered. There were no details made. And also my recollection is there was absolutely no promises whatsoever being the police officer Investigator Franz to [E.D.] on that tape not recorded. In that regard—and I could vividly recall this —the only thing that was ... the one thing that did stick out in my mind and does today was [E.D.] saying if—and in short and almost verbatim, if you want me to testify against my Uncle Dave I will. That's it.

(Ex. DD at 47:16–48:11.)

### G. Reinstated Direct Appeal

Petitioner, represented by attorney Mitch Kessler, pursued a reinstated direct appeal. (Ex. EE.) Petitioner argued that the prosecution's failure to timely disclose E.D.'s videotaped and written statements was a material *Brady* violation. *Id.*

The appellate division found that:

> The victim's written confession, along with the handwritten notes of the investigator who interviewed him, were disclosed ... as part of the ... material delivered after jury selection was completed. That, together with the open file disclosure that took place prior to [Petitioner's] request for *Brady* material, enabled trial counsel to question the victim about whether he expected leniency for revealing the allegations against [Petitioner], and to repeatedly refer in summation to the victim's alleged motive to fabricate the accusations against [Petitioner] .... We have considered [Petitioner's] remaining contentions and find them to be unavailing.

*People v. O'Halloran,* 77 A.D.3d 1169, 910 N.Y.S.2d 569, 570 (N.Y.App. Div.3d Dep't 2010).

### H. Motion to Vacate the Judgment Pursuant to CPL § 440.10

Petitioner, proceeding pro se, moved to vacate the judgment under Criminal Procedure Law § 440.10. (Ex. MM.) Petitioner argued that his due process rights were violated when (1) the prosecutor issued "office subpoenas" to two defense witnesses; (2) the prosecutor made a comment about Petitioner's "modus operandi" during grand jury instructions; (3) the prosecution concealed exculpatory evidence; and (4) he received ineffective assistance of trial and appellate counsel. *Id.*

The county court denied the motion. (Ex. PP.) The court found that only Petitioner's argument regarding the "office subpoenas" was both properly raised on a § 440.10 motion

and supported by factual allegations. *Id.* at 2, 910 N.Y.S.2d 569. The court found that Petitioner had "failed to establish that the people 'willfully and intentionally' issued any subpoena to defense witnesses or that they did 'abuse that subpoena by harassment and coercion and allegedly tried to get defendant's nephew to like and claim that he too was a victim of the defendant's.' " *Id.* at 3, 910 N.Y.S.2d 569. The court found that Petitioner had "provided no sworn or affirmed *facts* apart from what already is part of the record that had been available for appellate review" supporting his ineffective assistance of counsel claims. *Id.* (emphasis in original). The court noted, however, that were it to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* The Third Department denied leave to appeal. (Ex. TT.)

### I. Second Motion for Writ of Error *Coram Nobis*

**\*16** Petitioner, proceeding pro se, filed a second motion for writ of *coram nobis.* (Ex. UU.) He argued that appellate counsel was ineffective for failing to argue that the amendment to the indictment was impermissible. *Id.* The appellate division denied the motion without analysis. (Ex. XX.) The Court of Appeals denied leave to appeal. (Ex. BBB.)

## IV. *ANALYSIS*

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations applies to a petition for a writ of habeas corpus challenging the judgment of a state court. 28 U.S.C. § 2244(d) (2006). Before filing in federal court, a petitioner must generally exhaust state court remedies by 'fairly presenting' the issues in state court. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). If the petition is timely and the issues have been exhausted, the federal court turns to the merits of the petitioner's claims. *Id.*

Under AEDPA, a federal court may not grant habeas relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U .S.C. § 2254(d)(1) (2006).

O'Halloran v. Gonyea, Not Reported in F.Supp.3d (2015)

2015 WL 93716

A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds. *Sellan v. Kuhlman,* 261 F.3d 303, 311–12 (2d Cir.2001). To determine whether a state court has adjudicated a claim "on the merits," a federal habeas court must classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law. [3] *Jimenez v. Walker,* 458 F.3d 130, 145 (2d Cir.2006). Decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision "on the merits" is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citations omitted). Although "[s]ome increment of incorrectness beyond error is required" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (citations omitted); *see also Hawkins v. Costello,* 460 F.3d 238, 243 (2d Cir.2006). The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005), *cert. denied* 546 U.S. 884, 126 S.Ct. 225, 163 L.Ed.2d 189 (2005); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

### B. Amendment of the Indictment

**\*17** Petitioner claims that the amendment to the indictment violated his rights under New York Penal Law § 200.70 and the Fifth Amendment to the United States Constitution. (Dkt. No. 1 at 5; Dkt. No. 1–2 at 13–18.[4]) Respondent concedes that this claim is timely. (Dkt. No. 12 at 28.[5]) Respondent argues that the claim is (1) unexhausted; and (2) plainly meritless. *Id.* at 2930, 38–46. Respondent is correct.

#### 1. *Exhaustion*

In order to be eligible for federal habeas relief, a petitioner's federal constitutional claim must have been "fairly presented" to the state courts. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). This is to ensure that the state is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights ." *Id.* (citations omitted). In order to give state courts this opportunity:

> a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'

*Baldwin v. Reese,* 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). In order to satisfy this exhaustion requirement, state prisoners must present their claims to a state's highest court in a petition for discretionary review. *O'Sullivan v. Boerckel,* 526 U.S. 838, 839–40, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Habeas corpus petitioners bear the burden of demonstrating that they have exhausted available state remedies. *Colon v. Johnson,* 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998).

Here, Petitioner did not raise the issue of the indictment amendment in his first direct appeal, either to the appellate division (Ex. D) or in his application for leave to appeal to the New York Court of Appeals (Ex. H). Petitioner did not raise the issue of the indictment amendment in his reinstated direct appeal, either to the appellate division (Ex. EE) or in his application for leave to appeal to the New York Court of Appeals (Ex. JJ). Therefore, Petitioner did not exhaust the issue of the indictment amendment.

When a claim has not been fairly presented to the state courts, a federal court may nonetheless deem it exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001) (citing *Reyes v. Keane,* 188 F.3d 136, 139 (2d

2015 WL 93716

Cir.1997)); *Lurie v. Wittner,* 228 F.3d 113, 124 (2d Cir.2000), *cert. denied,* 532 U.S. 943, 121 S.Ct. 1404, 149 L.Ed.2d 347 (2001). "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio,* 269 F.3d at 91 (citing N.Y.Crim. Proc. Law § 440.10(2)(c)). Thus, because he did not raise the issue of the amendment to the indictment on direct appeal, Petitioner cannot now raise his claim in a motion to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10. *See Aparicio,* 269 F.3d at 91; *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). Therefore, the claim is "deemed exhausted" for purposes of Petitioner's habeas application. *See Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 170 (2d Cir.2000); *Senor v. Greiner,* Civ. No. 00–5673 JG, 2002 U.S. Dist. LEXIS 17710, at *21, 2002 WL 31102612, at *10 (E.D.N.Y. Sept.18, 2002). [6]

**\*18** "This apparent salve, however, proves to be cold comfort" to Petitioner, as it does to "most petitioners because it has been held that when 'the petitioner failed to exhaust state remedies in the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *Aparicio,* 269 F.3d at 90 (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause for the procedural bar and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review. *See St. Helen v. Senkowski,* 374 F.3d 181, 184 (2d Cir.2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)) (citations omitted); *see generally Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986).

To establish "cause," a petitioner must show that some objective external factor impeded his ability to fully exhaust his federal claims. *See Coleman,* 501 U.S. at 753; *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999); *Doleo v. Reynolds,*

Civ. No. 00–7927, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray,* 477 U.S. at 488 (citing *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) and quoting *Brown v. Allen,* 344 U.S. 443, 486, 73 S.Ct. 437, 97 L.Ed. 469 (1953)). *See also Bossett,* 41 F.3d at 829 (citing *Murray,* 477 U.S. at 488); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1993); *Lovacco v. Stinson,* Civ. No. 97–5307, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray,* 477 U.S. at 488).

Here, Petitioner argues that ineffective assistance of appellate counsel was the cause of his failure to exhaust the indictment amendment issue. (Dkt. No. 1 at 6.) A "petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred." *Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997). Here, Petitioner raised an ineffective assistance of appellate counsel claim regarding the amendment of the indictment *as to Count Three only* in his *coram nobis* petition. (Ex. UU.) He did not argue that appellate counsel was ineffective for failing to argue that the amendment of Counts One and Two was unconstitutional. *Id.* Therefore, Petitioner has not shown cause for failing to exhaust his indictment amendment claim regarding Counts One and Two.

**\*19** Regarding Count Three, Petitioner has not established ineffective assistance of appellate counsel as cause for the procedural default because, as discussed below, his ineffective assistance of appellate counsel claim is also procedurally barred.

As a result, this Court need not decide whether Petitioner suffered prejudice because, absent proof that the failure to consider the merits of the claims would result in a fundamental miscarriage of justice, federal habeas relief is unavailable as to procedurally barred claims unless both cause and prejudice are established. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985).

The undersigned can find no basis to conclude that the denial of Petitioner's procedurally barred claims would result in a fundamental miscarriage of justice, which exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more

likely than not that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 623 (internal quotation marks and citations omitted). Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal sufficiency." *Id.* Petitioner has not met this burden.

Although Petitioner failed to exhaust his claim regarding the amendment to the indictment, this Court may exercise its discretion to review and deny the claim on its merits if the claim is "plainly meritless." *Contant v. Sabol,* 987 F.Supp.2d 323, 348 (S.D.N.Y.2013) (citing *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005)). As discussed below, Petitioner's claim is plainly meritless. Therefore, it is recommended that the Court exercise its discretion to review and deny Petitioner's claim regarding the amendment to the indictment.

### 2. *Merits*

Respondent argues that Petitioner's claim regarding the amendment of the indictment is plainly meritless because (a) the claim regarding Count Two is moot; (b) violations of state law are not cognizable on habeas review; (c) the Fifth Amendment has not been incorporated to the states; (d) the indictment was sufficient; (e) Petitioner has not demonstrated any prejudice resulting from the amendment; and (f) the amendment was not erroneous even under state law. (Dkt. No. 12 at 38–46.)

#### a. *Mootness*

The jury acquitted Petitioner on Count Two, sodomy in the first degree, a count premised on the victim's physical incapability to consent. (Dkt. No. 1 at 2; A. at 88, 514:17–21.) Respondent argues that Petitioner's claim regarding the amendment to Count Two of the indictment is thus moot. (Dkt. No. 12 at 38.) Respondent is correct. *See Chambers v. Conway,* No. 09 Civ. 2175(JGK), 2011 U.S. Dist. LEXIS 61327, at *31, 2011 WL 2226956, at *11 (S.D.N.Y. June 8, 2011 [7] ); *Nickel v. Ercole,* No. 9:06–CV–390 (LEK/RFT), 2009 U.S. Dist. LEXIS 131759, at *22–23, 2009 WL 1606092, at *8 (N.D.N.Y. May 11, 2009). Therefore, Petitioner's claim regarding the amendment to Count Two is plainly meritless.

#### b. *Not cognizable*

**\*20** Petitioner claims that the amendment of the indictment violated New York Criminal Procedure Law § 200.70. (Dkt.

No. 1–2 at 16.) Respondent argues that this claim is plainly meritless because it is not cognizable on federal habeas review. (Dkt. No. 12 at 38–39.) Respondent is correct. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The amendment of indictments is generally a matter of state law and is not ordinarily cognizable on habeas corpus review. [8] *Cooper v. Fischer,* No. 9:04–CV–0633 (LEK/GHL), 2008 WL 1766740, at *8 (N.D.N.Y. Apr.14, 2008) [9] ; *Tirado v. Senkowski,* 367 F.Supp.2d 477, 491 (W.D.N.Y.2005). Therefore, Petitioner's claim regarding New York Criminal Procedure Law § 200.70 is plainly meritless.

#### c. *Fifth Amendment*

Petitioner claims that the amendment of the indictment violated his Fifth Amendment right "to be charged only by a Grand Jury." (Dkt. No. 1–2 at 16.) Respondent argues that this claim is plainly meritless because the Fifth Amendment right to a grand jury indictment has not been incorporated to the states through the Fourteenth Amendment. (Dkt. No. 12 at 39.) Respondent is correct. "[W]hile the Fifth Amendment's grand jury indictment clause imposes certain constraints on prosecutions in federal courts," the right to a grand jury indictment has not been incorporated to the states. *Lanfranco v. Murray,* 313 F.3d 112, 118 (2d Cir.2002). Therefore, Petitioner's Fifth Amendment claim is plainly meritless.

#### d. *Sufficiency of Amendment*

Petitioner claims that the amendment of the indictment violated his Sixth Amendment rights. (Dkt. No. 1–2 at 15.) Respondent argues that this claim is plainly meritless because Petitioner was not prejudiced by the amendment. (Dkt. No. 12 at 39–46.) Respondent is correct.

To avoid ex post facto issues, indictments should generally charge criminal defendants using the language of criminal statutes as they existed at the time the crime was allegedly committed. *See, e.g., People v. Foster,* 87 A.D.3d 299, 927 N.Y.S.2d 92, 97 (N.Y.App. Div.2d Dep't 2011); *White v. Conway,* No. 9:07–CV–1175 (FJS/GHL), 2011 U.S. Dist. LEXIS 35735, at *58 & n. 17, 2011 WL 1315592, at *20 & n. 17 (N.D.N.Y. Mar.31, 2011). An indictment passes constitutional muster if "it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of

events." *De Yonish v. Keane,* 19 F.3d 107, 108 (2d Cir.1994) (internal quotation marks and citation omitted); *see also Beverly v. Walker,* 899 F.Supp. 900, 909 (N.D.N.Y.1995) (quoting *De Yonish* ); *Carroll v. Hoke,* 695 F.Supp. 1435, 1438 (E.D.N.Y.1988) (noting that an indictment is constitutionally sufficient if it informs "the accused, in general terms, of the time, place and essential elements of the alleged crime") (citations omitted). "Courts within this Circuit have uniformly required petitioners to establish that they were prejudiced by an amendment to an indictment to prevail on a claim challenging such an amendment." *Cooper,* 2008 WL 1766740, at *8 (internal quotation marks and citation omitted).

**\*21** Regarding Count One, the indictment charged Petitioner with violating New York Penal Law § 130.50(3), Criminal Sexual Act in the First Degree, by engaging in oral sexual conduct or anal sexual conduct "with another person who was less than eleven years old." (A. at 26.) At the time of the conduct alleged, this crime was titled "sodomy in the first degree." It was defined as "deviate sexual intercourse" with a person (1) by forcible compulsion; or (2) who is incapable of consent by reason of being physically helpless; or (3) who is less than eleven years old. N.Y. Penal Law § 130.50 (McKinney 2000). After February 1, 2001, a new subsection was added defining sodomy in the first degree, additionally, as "deviate sexual intercourse" with a person "who is less than thirteen years old and the actor is eighteen years old or more." N .Y. Penal Law § 130.50 (McKinney 2001). In 2003, the crime was retitled as "Criminal Sexual Act in the First Degree" and the phrase "deviate sexual intercourse" was replaced with "oral sexual conduct or anal sexual conduct." N.Y. Penal Law § 130.50 (McKinney 2004). Thus, the indictment charged Petitioner with the crime as it was defined at the time of the trial rather than as it was defined at the time of the crime. The state trial court amended the indictment before charging the jury to correct this error. (A. at 429:13–23.) Count One charged Petitioner with conduct that was substantively identical to the pre–2001 and post–2003 versions of the statute. Thus, Petitioner was informed of the charges he was required to meet with enough detail that he could plead double jeopardy in a future prosecution based on the same set of events. Therefore, the amendment of Count One satisfied the Sixth Amendment and Petitioner's claim is plainly meritless.

Regarding Count Three, the indictment charged Petitioner with violating Penal Law § 130.50(4) by engaging in "oral sexual conduct or anal sexual conduct with another person

who was less than thirteen years old" in the summer of 1997, when he was over eighteen years old. (A. at 89.) That subsection and definition of criminal sexual act in the first degree did not exist in 1997. The subsection was added in 2001. At the time of the crime, "deviate sexual intercourse" with a person "less than fourteen years old" by a person over eighteen years old constituted sodomy in the second degree rather than sodomy in the first degree. N.Y. Penal Law § 130 .45 (McKinney 2000). Thus, the indictment charged Petitioner with the crime as it was defined at the time of trial rather than as it was defined at the time of the crime. The trial court amended the indictment before charging the jury to correct this error. (A. at 427:19–429:8.) The indictment as originally charged and the indictment as amended by the trial court charged Petitioner with substantively the same conduct: engaging in oral or anal sexual relations with a person under the age of thirteen. Thus, the count as amended informed Petitioner of the charges he was required to meet with enough detail that he could plead double jeopardy in a future prosecution based on the same set of events. Therefore, the amendment of Count Three satisfied the Sixth Amendment and Petitioner's claim is plainly meritless.

### C. *Brady*

**\*22** Petitioner claims that his conviction "was obtained by unconstitutional failure of prosecutor to disclose extremely favorable evidence." (Dkt. No. 1 at 6.) Petitioner states that "[p]olice purposely ... suppressed complainant's nefar[i]ous bad acts against a 8 year old girl for 6 long years, evidence proved he fabricated this crime against Petitioner for the leniency he received, that Police portrayed his crime as only consensual sex when it was by forc[i]ble compulsion, suppression of evidence gathered at reinterview, of the spoliation of all evidence in both cases prematurely." *Id.* Petitioner does not specify what pieces of evidence he contends should have been disclosed. Respondent, broadly construing the petition and Petitioner's memorandum of law, divides the evidence into two categories: evidence regarding statements by E.D. and evidence regarding statements by other individuals. (Dkt. No. 12 at 46–70.) In his traverse, Petitioner discusses three pieces of evidence: (1) videotapes of police interviews with E.D.; (2) statements by L.D. that E.D. raped her; and (3) Investigator Franz's handwritten notes of his interview with E.D. (Dkt. No. 19 at 7–8. [10] ) In the interest of completeness, the undersigned will address all of the evidence identified by Respondent.

Respondent concedes that Petitioner's *Brady* claims are timely and exhausted. (Dkt. No. 12 at 28–35.) Respondent argues that the appellate division's denial of Petitioner's *Brady* claims was neither contrary to nor an unreasonable application of Supreme Court law. *Id.* at 46–70. Respondent is correct.

1. *E.D.'s Statements*
Broadly construed, the petition alleges that Petitioner's due process rights were violated under *Brady* because the prosecution either delayed producing or failed to produce evidence of E.D.'s statements to the police and the grand jury. (Dkt. No. 1 at 6; Dkt. No. 12 at 50–63.) This evidence falls into three categories: (a) evidence that was not produced until the first day of the trial; (b) a videotape and audiotapes that were not produced to Petitioner and were ultimately destroyed; and (c) evidence of a police reinterview with E.D.

a. *Evidence Not Produced Until After Jury Selection*
Petitioner claims that his due process rights were violated under *Brady* because the prosecution did not provide his trial attorney with Investigator Franz's handwritten notes of his November 18, 2004, interview with E.D., E.D.'s November 18, 2004, written statement to police, or E.D.'s grand jury testimony until just before opening statements. (A. at 253:13–254:11; Dkt. No. 1 at 6; Dkt. No. 1–2 at 7.) Petitioner raised this claim in his § 330.30 motion. (A. at 534–37.) The county court denied the claim, stating that:

> A review of the record, the pleadings, pre-trial disclosure, as well as the arguments the defense makes in the instant motion, all support the conclusion that the defense has failed to meet its burden in establishing any *Brady* violation has occurred. Specifically, as argued by the prosecution, the information pointed to by the defense was either known to the defense prior to trial, and/or is not *Brady* material.

*23 (A. at 14)

The appellate division found that it could not review the county court's determination regarding the withholding of E.D.'s recorded statements because those statements were not included in the appellate record. *People v. O'Halloran, 48 A.D.3d 978, 852 N.Y.S.2d 471, 472 (N.Y.App. Div.3d Dep't 2008).* The court did not explicitly address the issue of Investigator Franz's handwritten notes, E.D.'s written statement, or E.D's grand jury testimony. *Id.* However, the court affirmed the county court's decision in its entirety. *Id.*

On the reinstated appeal, the appellate division found that:

> The victim's written confession, along with the handwritten notes of the investigator who interviewed him, were disclosed ... as part of the ... material delivered after jury selection was completed. That, together with the open file disclosure that took place prior to [Petitioner's] request for *Brady* material, enabled trial counsel to question the victim about whether he expected leniency for revealing the allegations against [Petitioner], and to repeatedly refer in summation to the victim's alleged motive to fabricate the accusations against [Petitioner].... We have considered [Petitioner's] remaining contentions and find them to be unavailing.

*People v. O'Halloran, 77 A.D.3d 1169, 910 N.Y.S.2d 569, 570 (N.Y.App. Div.3d Dep't 2010).*

Respondent argues that these decisions were neither contrary to nor involved an unreasonable application of clearly established federal law, as determined by the Supreme Court because (1) there is no clearly established Supreme Court law regarding belatedly produced *Brady* material (as opposed to material that was never produced at all); and (2) the state courts' decisions were reasonable even if the Court applies the Second Circuit's standard on belatedly produced *Brady* material. (Dkt. No. 12 at 50–54.)

Under the standard employed in the Second Circuit, there is no requirement that *Brady* evidence be disclosed well in advance of trial. However, the Second Circuit has found that

due process requires that a defendant receive potential *Brady* material before it is too late for him to make beneficial use of it at trial. *United States v. Rodriguez,* 496 F.3d 221, 226 (2d Cir.2007). Under this standard, delayed disclosure may under some circumstances violate due process. Respondent's argument that this standard does not constitute clearly established law is without merit for two reasons. First, the Second Circuit's analysis in delayed *Brady* production cases focuses on the "prejudice" prong of the *Brady* test, discussed in detail below, as set forth in Supreme Court cases and relies directly on quotes from those Supreme Court cases.[11] *See, e.g., Payne v. LeFevre,* 825 F.2d 702, 707 (2d Cir.1987) (quoting *United States v. Bagley,* 474 U.S. 667, 682 (1985) for proposition that "there must be a reasonable probability —one sufficient to undermine confidence in the outcome— that the jury would have resolved [the] case differently had the prosecution disclosed the [*Brady* material] on a timely basis."). Second, Respondent has not cited any cases rejecting a *Brady* delayed production claim on the ground that there was no clearly established federal law.[12]

**\*24** Respondent correctly argues that the state courts reasonably applied federal law by determining that Petitioner was not prejudiced by the delayed production of Investigator Franz's notes, E.D.'s written statement, and E.D.'s grand jury testimony. A prosecutor's failure to turn over evidence that is favorable to the defense may constitute a due process violation. *Giglio v. United States,* 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady,* 373 U.S. at 86–87. "However, not every failure to do so constitutes a 'true' *Brady* violation." *Thomas v. West,* No. 03 CIV. 1443, 2007 WL 541476, at \*13 (S.D.N.Y. Feb. 22, 2007) (citing *Strickler v. Greene,* 527 U.S. 263, 280–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) and *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). To establish a *Brady* violation, a petitioner must show that: (a) the evidence in question was favorable to him, either because it was exculpatory or impeaching; (b) the prosecutor suppressed the evidence, either willfully or inadvertently; and (c) prejudice ensued. *Strickler,* 527 U.S. at 281–82. Prejudice results when there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed. *Id.* at 281.

Here, the state courts reasonably found that Petitioner suffered no prejudice as a result of the belated disclosure. As the appellate division noted in its decision on reinstated appeal, the belated *Brady* disclosure was sufficient to "enable[ ] trial counsel to question the victim about whether

he expected leniency for revealing the allegations against [Petitioner], and to repeatedly refer in summation to the victim's alleged motive to fabricate the accusations against [Petitioner]." *O'Halloran,* 910 N.Y.S.2d at 570. To the extent that Petitioner claims, as he did in his § 330.30 motion (A. at 534–35), that earlier production of E.D.'s grand jury testimony would have allowed his attorney to investigate and determine that Mike's Hard Lemonade and Smirnoff Ice were not available in 1997 (Dkt. No. 1–2 at 9–10), the state courts reasonably applied clearly established federal law by rejecting this contention as "unavailing." E.D.'s written statement stated that Petitioner "used to buy [me] alcohol like Smirnoff's Ice, Mike's Hard Lemonade or 40 ounce beer, pretty much anything [I] wanted." (A. at 72.) That statement was provided to Petitioner's attorney eighteen months before trial. (A. at 64.) Petitioner's attorney could have investigated the availability of Smirnoff Ice and Mike's Hard Lemonade based on that evidence. "It is well settled that evidence 'is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence.' " *United States v. Torres,* 129 F.3d 710, 717 (2d Cir.1997) (quoting *United States v. Gonzalez,* 110 F.3d 936, 944 (2d Cir.1997)). Therefore, I recommend that the Court deny the habeas petition on this ground.

#### b. *Videotape and Audiotapes*

**\*25** Broadly construed, the petition claims that Petitioner's due process rights under *Brady* were violated when the prosecution failed to produce a videotape of Investigator Franz's November 18, 2004, interview with E.D. and audiotapes of E.D.'s conversations with C.B. (Dkt. No. 1–2 at 17–19, 25–27; Dkt. No. 19 at 7.) Petitioner raised this claim in his § 330.30 petition. (A. at 528 ¶ 19.) The county court rejected the claim. (A. at 11–14.) Regarding the videotape, that court noted that it had "reviewed the tape in question.... [T]here is absolutely no possibility that the non-disclosure of this videotape materially contributed to the result of the trial." (A. at 13–14.) The county court's decision did not mention the audiotapes specifically, but, as noted above, addressed the *Brady* claim in general terms:

> A review of the record, the pleadings, pre-trial disclosure, as well as the arguments the defense makes in the instant motion, all support

O'Halloran v. Gonyea, Not Reported in F.Supp.3d (2015)

2015 WL 93716

the conclusion that the defense has failed to meet its burden in establishing any *Brady* violation has occurred. Specifically, as argued by the prosecution, the information pointed to by the defense was either known to the defense prior to trial, and/or is not *Brady* material.

(A. at 14.)

The appellate division affirmed, finding that:

> [W]e cannot agree ... that the People's failure to turn over the video recording of the police interview of the victim ... constitutes a material *Brady* violation requiring reversal .... [W]e conclude that there is no reasonable possibility that disclosure of the video would have altered the outcome of the case.... The victim's written confession, along with the handwritten notes of the investigator who interviewed him, were disclosed ... as part of the ... material delivered after jury selection was completed. That, together with the open file disclosure that took place prior to [Petitioner's] request for *Brady* material, enabled trial counsel to question the victim about whether he expected leniency for revealing the allegations against [Petitioner], and to repeatedly refer in summation to the victim's alleged motive to fabricate the accusations against [Petitioner].... We have considered [Petitioner's] remaining contentions and find them to be unavailing.

*People v. O'Halloran,* 77 A.D.3d 1169, 910 N.Y.S.2d 569, 570 (N.Y.App. Div.3d Dep't 2010). The appellate division's decision did not explicitly mention the audiotapes, but stated that the court had "considered [Petitioner's] remaining contentions and find them to be unavailing." *Id.*

Respondent argues that the state courts' decisions were reasonable applications of established federal law because Petitioner was not prejudiced by the failure to turn over the videotape and audiotapes. (Dkt. No. 12 at 54–60.) Respondent is correct. Regarding the evidence in the videotape suggesting that E.D. had motive to falsely accuse Petitioner in exchange for leniency, as discussed above, Petitioner's attorney had sufficient information to raise the issue at trial. Regarding the evidence in the videotape about E.D.'s drug use, there was no evidence that the drug use coincided in time with E.D.'s accusations against Petitioner or impaired his ability to testify. At most, Petitioner's trial attorney may have been able to elicit information about the drug use on cross-examination to reflect poorly on E.D.'s character. Given the wealth of information that Petitioner's attorney already had regarding E.D.'s character—E.D.'s own crimes most importantly—it was not unreasonable for the state courts to conclude that the evidence would not have changed the outcome of the case. Regarding the information in the audiotapes, that information was available to Petitioner through other means and his attorney used it effectively in Petitioner's defense. Therefore, I recommend that the Court deny the habeas petition on this ground.

#### c. E.D.'s 2005 Statements

**\*26** Petitioner claims that his due process rights under *Brady* were violated because the prosecution suppressed evidence regarding a reinterview of E.D. conducted in 2005. (Dkt. No. 1 at 6; Dkt. No. 1–2 at 7.) Petitioner raised this claim in his § 440.40 motion. (Ex. MM at 9, 14, 18–19.) The county court denied the motion without explicitly mentioning the reinterview, but stating that Petitioner's "remaining claims are conclusory in nature, unsupported by *factual* allegations, belied by the record, or part of the record.... The ... motion is denied is its entirety." (Ex. PP at 3–4, emphasis in original.) Respondent argues that this decision was a reasonable application of clearly established federal law. (Dkt. No. 12 at 62–63.) Respondent is correct. There is no evidence in the record that the prosecution suppressed any evidence related to the reinterview. There is no indication that the interview was recorded or that there were written notes summarizing it. "Conclusory or speculative allegations that the Government failed to disclose evidence are insufficient to support a *Brady* violation." *Verdel v. Cunningham,* No. 07 Civ. 837(JGK), 2008 U.S. Dist. LEXIS 53358, at *11, 2008 WL 2755833, at *4 (S.D.N.Y. July 14, 2008). Therefore, I recommend that the Court dismiss the habeas petition on this ground.

### 2. *Other Statements*

Broadly construed, the petition asserts that Petitioner's due process rights under *Brady* were violated by the prosecution's delay in producing, or failure to produce, statements by individuals other than E.D. These individuals include (a) L.D.; (b) C.B. and N.D .; and (c) E.D., Sr.

#### a. *L.D.*

Petitioner claims that his due process rights under *Brady* were violated when the prosecution withheld videotapes and handwritten notes of Investigator Franz's interview with L.D. on November 15, 2004. (Dkt. No. 1 at 6; A. at 575–78.) Petitioner raised this claim in his § 330.30 motion and in his initial direct appeal. (A. at 527; Ex. D. at 13–14.) Neither court expressly addressed this claim. However, the county court broadly denied Petitioner's *Brady* claims, noting that "the information pointed to by defense counsel was either known to the defense prior to trial, and/or is not *Brady* material." (A. at 14.) The appellate court affirmed that decision. *People v. O'Halloran,* 852 N.Y.S.2d at 472. These decisions were on the merits of Petitioner's *Brady* claim because they rested on or were interwoven with federal law, as demonstrated by the explicit references to *Brady.* [13] Thus, Petitioner is entitled to habeas relief only if the state courts' decisions were contrary to clearly established federal law. They were not. Petitioner was not prejudiced by the failure to produce notes regarding Investigator Franz's interview with L.D. Petitioner's attorney was provided with E.D.'s own statement regarding his sexual relationship with L.D., which by his own admission lasted for many years. (A. at 585–86.) Petitioner's attorney was given this document before opening statements and granted an adjournment to review it, in time to use it for impeachment purposes at trial if E.D. testified that there had been only one incident with L.D. (A. at 253:13–254:11.) Therefore, I recommend that the Court deny the habeas petition on this ground.

#### b. *C.B. and N.D.*

**\*27** Broadly construed, the petition claims that Petitioner's due process rights under *Brady* were violated when the prosecution (1) belatedly produced C.B. and N.D.'s grand jury testimony at trial, before opening statements; (2) belatedly produced Investigator Franz's handwritten notes of his interviews with C.B. and N.D. at trial, before opening statements; (3) failed to produce videotapes of the November 15, 2004, interviews of C.B. and N.D.; and (4) failed to produce videotapes of reinterviews with C.B. and N .D. (Dkt.

No. 1–2 at 9–10.) Petitioner raised these claims in his § 330.30 motion (A. at 529–33 ¶¶ 24–29, 34–35, 39–43), on direct appeal (Ex. D. at 16–18), and in his § 440.10 motion (Ex. MM). In his § 330.30 motion, Petitioner argued through counsel that comparisons of the handwritten notes to the grand jury testimony showed a number of inconsistencies in C.B. and N.D.'s stories. (A. at 523–39.) These inconsistencies, he argued, showed that C.B. and N.D. fabricated their stories to buttress E.D.'s own fabricated story. *Id.* Petitioner also argued that he elected not to take the stand in his own defense because he feared that he could be cross-examined about C.B. and N.D.'s allegations as "prior bad acts ." *Id.* at 537.

As discussed above, the county court broadly denied Petitioner's *Brady* claims, noting that "the information pointed to by defense counsel was either known to the defense prior to trial, and/or is not *Brady* material." (A. at 14.) The appellate court affirmed that decision. *People v. O'Halloran,* 852 N.Y.S.2d at 472. These decisions were on the merits of Petitioner's *Brady* claim because they rested on or were interwoven with federal law, as demonstrated by the explicit references to *Brady.* Thus, Petitioner is entitled to habeas relief only if the state courts' decisions were contrary to clearly established federal law. They were not.

Petitioner did not suffer prejudice for two reasons. First, the evidence of C.B. and N.D.'s statements would not have been admissible at trial. As discussed above, the county court issued a pretrial ruling barring the prosecution from raising evidence regarding C.B. and N.D. in their case-in-chief. (A. at 21–24.) There is no indication that the court would have reconsidered that decision. Second, counsel did, in fact, have access to the content of C.B. and N.D.'s police interviews and opportunity to compare those allegations with the grand jury testimony. The record shows that tapes of C.B. and N.D.'s interviews were turned over to Petitioner's trial counsel on May 19, 2005—over a year before trial. (A. at 708; Ex. B.) Their grand jury testimony was turned over to counsel before opening statements, and counsel was granted an adjournment until the next morning to review it. (A. at 253:13–254:11.) Therefore, it is recommended that the Court deny the habeas petition on this ground.

#### c. *E.D., Sr.*

Broadly construed, the petition claims that Petitioner's due process rights under *Brady* were violated when the prosecution "concealed evidence of the true perpetrator of this case," who Petitioner contends was E.D., Sr. (Dkt. No. 1–2 at 7.) Petitioner does not expand on this allegation in his

habeas petition, but he explained it at more length in his brief regarding the reinstated appeal. (Ex. EE.) There, Petitioner argued through counsel that:

> **\*28** [E.D., Sr.] was the only other person present at the scene of both smelting trips in May 2004 when [C.B.] and [N.D.] alleged they were plied with alcohol and sodomized by defendant in much the same way [E.D.] claimed, when he was first interviewed, had happened to him on an alleged fishing trip in the Spring of 1997. [E.D., Sr.] self-exculpated himself when he was interviewed by Inv. Franz with respect to both incidents involving [C.B.] and [N.D.]. According to him he saw and heard nothing about either the alcohol or the molestation. It appears the only thing turned over to the defense prior to trial were the typed Incident Report and the signed statement [E.D., Sr.] made on November 18, 2004. In this regard, [E .D., Sr.] had been Mirandized by Inv. Franz, but never charged even though he was an adult present at both smelting trips involving [C.B .] and [N.D.]. No information was ever turned over to defense counsel concerning why the charges against [E.D., Sr.] were not pursued or were dropped early in this investigation.

(Ex. D.14–15.)

As discussed above, the county court broadly denied Petitioner's *Brady* claims, noting that "the information pointed to by defense counsel was either known to the defense prior to trial, and/or is not *Brady* material." (A. at 14.) The appellate court affirmed that decision. *People v. O'Halloran,* 852 N.Y.S.2d at 472. These decisions were on the merits of Petitioner's *Brady* claim because they rested on or were interwoven with federal law, as demonstrated by the explicit references to *Brady.* Thus, Petitioner is entitled to habeas relief only if the state courts' decisions were contrary to clearly established federal law. They were not.

Nothing in the record indicates that Petitioner established any of the three prongs of the *Brady* test regarding statements by E.D., Sr. First, it is not entirely clear what evidence Petitioner contends was withheld. Thus, it is impossible to determine whether that evidence was favorable to Petitioner. Second, it is not clear that the prosecutor actually suppressed the evidence. Third, there was no showing of prejudice to Petitioner. Even if, as he contended on direct appeal, there was some evidence showing that E.D., Sr. shared some culpability regarding the alleged crimes against C.B. and N.D., that evidence would not have been admissible at the trial regarding E.D.'s allegations because of the county court's pretrial ruling barring evidence regarding C.B. and N.D. Therefore, I recommend that the Court deny the habeas petition on this ground.

### D. Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel rendered unconstitutionally ineffective assistance in eleven ways: (1) by allowing Petitioner to be arrested in his presence; (2) by failing to object to a comment by the prosecutor during grand jury proceedings; (3) by failing to move the endangering the welfare of a child count as barred by the applicable statute of limitations; (4) by accepting *Brady* materials as *Rosario* materials; (5) by failing to demand evidence regarding the "true perpetrator"; (6) by failing to effectively impeach witnesses; (7) by failing to move for a mistrial after Ms. Brimberg–Clark's testimony; (8) by failing to enter evidence into the record; (9) by failing to "know the law" regarding corroboration; (10) by failing to object to the amendment of the indictment; and (11) by failing to object to the prosecutor's comments during summation.

**\*29** Respondent argues that three of these claims are unexhausted but should be deemed exhausted and procedurally defaulted: (1) the claim regarding Ms. Brimberg–Clark; (2) the corroboration claim; and (3) the indictment amendment claim. (Dkt. No. 12 at 30.) Respondent argues that all of the ineffective assistance of trial counsel claims are without merit. *Id.* at 71–93. Respondent is correct.

#### 1. Arrest in Trial Counsel's Presence

Petitioner claims that trial counsel rendered ineffective assistance because "Petitioner was arrested on a falsely created crime without corroboration in the presence of counsel." (Dkt. No. 1 at 5.) Respondent has not addressed

this claim. The undersigned has not been able to locate any reference to this claim in the state court record. Thus, it appears that the claim is unexhausted. I recommend, however, that the Court exercise its discretion to review and sua sponte deny the claim on its merits, as it is plainly meritless. *Contant,* 987 F.Supp.2d at 348. A petitioner "cannot prevail on an ineffective assistance of counsel claim when the constitutional right to counsel has not attached." *Claudio v. Scully,* 982 F.2d 798, 802 (2d Cir.1992). "The Sixth Amendment right to counsel 'attaches only at or after the time that adversary judicial proceedings have been initiated.' " *Id.* (quoting *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). An arrest does not constitute the initiation of adversary judicial proceedings. *United States v. Guido,* 704 F.2d 675, 676 (2d Cir.1983). Rather, the Sixth Amendment right to counsel attaches only after the filing of formal charges through arraignment and indictment. *Id.* Here, Petitioner claims that trial counsel rendered ineffective assistance by allowing Petitioner to be arrested in his presence. (Dkt. No. 1 at 5.) Petitioner was not arraigned until later in the day (A. at 69) and was not indicted until two months later (A. at 26–29). Thus, the Sixth Amendment right to counsel had not attached and Petitioner's claim is plainly meritless. Therefore, I recommend that the Court deny the habeas petition on this ground.

### 2. *Failure to Object to Prosecution Comment During Grand Jury Instructions*

During his grand jury testimony, E.D. stated that Petitioner was "always" kneeling down when he molested him. (A. at 655:16.) When E.D. was finished testifying, the prosecutor instructed the grand jury that:

> I believe that, if my memory is correct, the witness said something about that's the way he always did it. I would ask when you consider the counts that I'm going to present to you at the conclusion of the testimony that you disregard the fact that he alluded to other instances apart from the ones we've discussed, apart from the ones that were just testified to. In other words, when the witness says, that's the way he always did it, you can't speculate as to how many other times there may have been or what other

> conduct there may have been. You can't take that into account. I just want you to confine your analysis to the specific instances testified to by the witness.

**\*30** (A. at 657:3–21.)

Petitioner claims that trial counsel rendered ineffective assistance by failing "to object to the comment by ADA during grand jury instructions." (Dkt. No. 1 at 5.) Petitioner argues that the prosecutor's comment effectively made him a witness testifying to a modus operandi. (Dkt. No. 1–2 at 22– 23.) Trial counsel, Petitioner argues, should have "object[ed] to this comment and request [ed] that all charges be dismissed with prejudice." *Id.* at 23. Petitioner contends that counsel's failure to do so deprived Petitioner of his rights under the Confrontation Clause. *Id.*

Petitioner raised this claim in his § 440.10 motion. (Ex. MM.) The court found that Petitioner's claim was not properly raised on such a motion because the claim appeared in the record available for appellate review. (Ex. PP at 3.) The court noted, however, that were it to consider Petitioner's ineffective assistance of counsel claim, "it would find that [Petitioner] was provided with meaningful representation under both the New York and federal constitutional standards." *Id.* The Third Department denied leave to appeal. (Ex. TT.)

Respondent concedes that the claim is timely (Dkt. No. 12 at 28) and exhausted (*id.* at 85). Respondent argues that "the jury verdict ... rendered moot any claim relating to the grand jury procedure, including claims for the ineffectiveness of counsel." *Id.* Respondent is correct.

Claims regarding errors in grand jury procedure are not cognizable on federal habeas review where the petitioner was found guilty by a petit jury. *King v. Phillips,* No. 03–CV– 6045 (NGG) (RB), 2009 U.S. Dist. LEXIS 27356, at \*6–8, 2009 WL 891763, at \*3 (E .D.N.Y. Mar. 31, 2009) (citing, *inter alia, United States v. Eltayib,* 88 F.3d 157, 173 (2d Cir.1996) (holding that a claim of prosecutorial misconduct failed because "a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment"); *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral

attack brought in a federal court.")); *Smith v. Edwards,* No. 98 Civ. 7962(DLC), 2000 U.S. Dist. LEXIS 7414, at *12 n. 2, 2000 WL 709005, at *8 n. 2 (S.D.N.Y. May 31, 2000) (rejecting claim that trial counsel failed to object to grand jury testimony as noncognizable on federal habeas review where the petitioner was found guilty by a petit jury). Therefore, I recommend that the Court deny the habeas petition on this ground.

3. *Failure to Move to Dismiss the Endangering Count*
Petitioner was convicted of endangering the welfare of a child pursuant to New York Penal Law § 260.10(1), a Class A misdemeanor. (A. at 29, 513:3–7; N.Y. Penal Law § 260.10 (McKinney 2004).) Under New York law, a "prosecution for a misdemeanor must be commenced within two years after the commission thereof." N.Y.Crim. Proc. Law § 30.10(2)(c) (McKinney 2004). In contrast to the rules governing charges for sexual offenses against minors, the statute of limitations for charges of endangering the welfare of a child is not tolled until the child reaches the age of eighteen or reports the conduct to a law enforcement agency. *People v. Wildrick,* 83 A.D.3d 1455, 920 N.Y.S.2d 540, 542 (N.Y.App. Div. 4th Dep't 2011). This is true even if the charge for endangering the welfare of a child concerns the same conduct as a charge for a sexual offense. *Id.* Here, the indictment charged Petitioner with conduct occurring "between the Summer of 1993 and the end of 1999." (A. at 29.) The indictment was issued more than two years later, on March 4, 2005. (A. at 26–29.) The charge for endangering the welfare of a child was thus barred by the statute of limitations.

**\*31** Petitioner does not discuss this issue in the petition. (Dkt. No. 1.) However, he argues in his memorandum of law in support of the petition that "trial counsel failed to have Count IV dismissed as it was in violation with the Statute of Limitations of two (2) years for Misdemeanors." (Dkt. No. 1–2 at 22.) Petitioner raised this issue on direct appeal. (Ex. D. at 32.) The appellate court found that Petitioner "received meaningful representation under all the circumstances." (Ex. G. at 3.) Respondent argues that this decision was a reasonable application of clearly established federal law. (Dkt. No. 12 at 90–93.) Respondent is correct.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. " '[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation but

simply to ensure that criminal defendants receive a fair trial.' " *Cullen v. Pinholster,* ––– U.S. ––––, ––––, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (quoting *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (punctuation deleted). To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 688–90; *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*.). There is a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions constituted sound trial strategy under the circumstances. *Cuevas v. Henderson,* 801 F.2d 586, 589–90 (2d Cir.1986). Indeed, "the benchmark for judgment any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 689. Likewise, a "reasonable probability" that the outcome would have been different "is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. That requires a finding that there was a "substantial" rather than simply a "conceivable" likelihood of a different result. *Pinholster,* 131 S.Ct. at 1403 (citing *Harrington v. Richter,* 562 U.S. 86, ––––, 131 S.Ct. 770, 791, 178 L.Ed.2d 624 (2011)).

Because both the AEDPA standard and the *Strickland* standard are so deferential, the Supreme Court has referred to federal habeas review of ineffective assistance of counsel claims as "double deferential." *Pinholster,* 131 S.Ct. at 1403 (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).

**\*32** It was reasonable for the state court to conclude that counsel's failure to move to dismiss the endangering the welfare of a child count did not constitute ineffective assistance of counsel. Petitioner was not prejudiced by that failure. An error that neither impacts nor lengthens a petitioner's sentence is insufficient to show resulting prejudice. *See Figueroa v. Heath,* No. 10–CV–0121, 2011 U.S. Dist. LEXIS 51568, at *68–69, 2011 WL 1838781, at *24 (E.D.N.Y. May 13, 2011) (rejecting claim that counsel was ineffective for not objecting to multiplicitous indictment,

as error resulted only in an additional one-year concurrent sentence) (collecting cases). Here, Petitioner received a one-year concurrent sentence on the endangering the welfare of a child conviction, to be served concurrently with his other sentences. (Dkt. No. 1 at 2.) Therefore, I recommend that the Court deny the petition on this ground.

4. *Accepting Brady Material as Rosario Material*

As discussed above, the prosecution provided Petitioner's trial counsel with some documents at trial, prior to opening statements (A. at 253:13–17) and failed to turn over some evidence that Petitioner contends was exculpatory or impeaching. Petitioner argues that trial counsel rendered ineffective assistance by "accept[ing] BRADY material as ROSARIO." (Dkt. No. 1 at 5, emphasis in original.) In his memorandum of law, Petitioner argues that counsel rendered ineffective assistance by failing to demand the videotapes of reinterviews with E.D. and C.B. (Dkt. No. 1–2 at 22.) In his reply, Petitioner argues that trial counsel rendered ineffective assistance because he "did not pursue the *Brady/Rosario* violations relating to the videotaped statements made by the alleged victim. These prior inconsistent statements were valuable, in the sense that, had the jury had the opportunity to hear the videotapes, it would have rebutted and impeached his testimony and that of the character witness that testified for the prosecution." (Dkt. No. 19 at 16.)

Petitioner raised this issue in his § 440.10 motion. (Ex. MM at 8, 28–32.) The court found that the issue was not properly raised on a § 440.10 motion and supported by factual allegations. (Ex. PP at 2.) However, the court noted that if it were to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* at 3. Respondent argues that the state court's decision was a reasonable application of clearly established federal law. (Dkt. No. 12 at 76–77.) Respondent is correct.

Petitioner argues, essentially, that effective use of the belatedly produced or unproduced evidence would have shown that E.D. had a bad character and a motive to lie and that he did, in fact, lie. But, as discussed above, trial counsel made those very arguments. (A. at 431–439.) The jury was not persuaded. Under the doubly deferential standard of review applicable here, it was reasonable for the state court to conclude that trial counsel's conduct did not undermine the proper functioning of the adversarial process and that there was not a substantial likelihood of a different result if counsel

had taken the actions that Petitioner contends he should have. Therefore, it is recommended that the Court deny the petition on this ground.

5. *Failing to Demand Evidence Regarding the True Perpetrator*

**\*33** Petitioner contends that trial counsel was ineffective because he "failed to demand concealed evidence of the true perpetrator E.D. complainant's father." (Dkt. No. 1 at 5.) This evidence, Petitioner contends, appears in Investigator Franz's notes of his interviews with N.D. and C.B. (Ex. MM. at 30.) Petitioner contends that the notes of the interview with N.D. state that N.D. reported that E.D., Sr. "said I could have Smirnoff Bottle." *Id.* Petitioner contends that the notes of the interview with C.B. state that C.B. said something about what E.D., Sr. "done to him when he was little, his son Eugene Jr. (sic). [14] "

Petitioner raised this issue in his § 440.10 motion. (Ex. MM at 30.) As with Petitioner's other claims of ineffective assistance of trial counsel, the court found that the issue was not properly raised on a § 440.10 motion and supported by factual allegations. (Ex. PP at 2.) However, the court noted that if it were to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* at 3. Respondent argues that the state court's decision was a reasonable application of clearly established federal law. (Dkt. No. 12 at 79.) Respondent is correct.

The state court reasonably found that trial counsel's failure to raise this issue did not constitute ineffective assistance. "The conduct of examination and cross examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *Eze v. Senkowski,* 321 F.3d 110, 127 (2d Cir.2003) (citations and internal quotation marks omitted). Here, as discussed above, trial counsel had successfully defeated the prosecution's motion to introduce evidence about C.B. and N.D. during their case-in-chief. (A. at 21–24.) A decision not to introduce evidence about those individuals during the defense case was, at the very least, strategically and tactically justified by the desire keep evidence about very similar alleged incidents of sexual abuse perpetrated by Petitioner out of the hands of the jury. Therefore, I recommend that the Court deny the habeas petition on this ground.

### 6. Failing to Effectively Impeach Witnesses

Petitioner contends that trial counsel was ineffective because he "failed to use evidence given to him to support his strategy and to effectively impeach the witnesses." (Dkt. No. 1 at 5.) Specifically, he argues that trial counsel "failed to properly impeach [E.D.] using the Police Report and the complainant's confession" (Dkt. No. 1–2 at 19, citations omitted) and failed to effectively use evidence to establish that E.D. received leniency for his own crime in exchange for testifying against Petitioner (Dkt. No. 1–2 at 20). Petitioner raised this claim on direct appeal (Ex. D at 32) and in his § 440.10 motion (Ex. MM at 28–32).

**\*34** On direct appeal, the appellate court rejected Petitioner's ineffective assistance of counsel argument, finding that because "counsel did call the jury's attention to the victim's prior bad acts, his potential motive to fabricate and his having received no jail time for his sexual offense, we are persuaded that the defendant received meaningful representation under all the circumstances." (Ex. G at 3.) As with Petitioner's other claims of ineffective assistance of trial counsel, the county court found that the issue was not properly raised on a § 440.10 motion and supported by factual allegations. (Ex. PP at 2–4.) However, the court noted that if it were to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* at 3. Respondent argues that the state courts' decisions were a reasonable application of clearly established federal law. (Dkt. No. 12 at 77–79.) Respondent is correct.

The state courts reasonably concluded that trial counsel rendered effective assistance by impeaching E.D. The evidence showed that E.D. had been convicted of a criminal sexual act with his cousin. (A. at 317:8–319:3.) Counsel established on cross-examination that E.D. received only probation for his own crime. (A. at 320:17–23.) He used his closing argument to focus on E.D.'s crime and the light sentence he received, stating at one point that "as a result of what he did, he was placed on a term of probation. Not bad for rape ." (A. at 436:21–24.) The state courts reasonably found that counsel's representation did not fall below an objective standard of reasonableness. Therefore, I recommend that the Court deny the habeas petition on this ground.

### 7. Failing to Move for Mistrial After Ms. Brimberg–Clark's Testimony

Petitioner contends that trial counsel rendered ineffective assistance because he "failed to move for a mistrial for the irrelevant testimony of the People's self-proclaimed expert." (Dkt. No. 1 at 5.) Respondent argues that this claim should be denied and dismissed because it is unexhausted and plainly meritless. (Dkt. No. 12 at 30, 88–90.) Respondent is correct.

Each separate factual claim made in support of an ineffective assistance of counsel claim must be fairly presented to a state court before a federal habeas court may rule on it. *See, e.g., Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991). Petitioner did not raise the claim that trial counsel was ineffective for failing to move for a mistrial after Ms. Brimberg–Clark's testimony on direct appeal (Ex. D) or on his reinstated direct appeal (Ex. EE). The claim is therefore unexhausted. Petitioner has not demonstrated cause for his failure to exhaust because his ineffective assistance of appellate counsel claims are also unexhausted. I recommend, however, that the Court address the merits of the claim and deny it as plainly meritless.

**\*35** On the merits, Respondent argues that counsel did not render ineffective assistance by failing to move for a mistrial. (Dkt. No. 12 at 88–90.) Respondent is correct for two reasons. First, trial counsel cross-examined Ms. Brimberg–Clark, established that she knew absolutely nothing about the specifics of Petitioner's case, and moved to strike the testimony as irrelevant, and argued to the jury that her testimony added nothing to their understanding of the issues. (A. at 361:3–18, 437:7–20.) This conduct was objectively reasonable measured in light of prevailing professional norms. Second, under New York law, testimony on child sexual abuse accommodation syndrome is admissible to explain an alleged victim's delay in reporting childhood sexual abuse. *People v. Spicola,* 16 N.Y.3d 441, 460–67, 922 N.Y.S.2d 846, 947 N.E.2d 620 (2011). Although the Second Circuit has affirmed the granting of habeas relief to an individual convicted of sexual abuse in a case involving expert testimony regarding child sexual abuse accommodation syndrome, that case is distinguishable. There, the petitioner's attorney "failed to consult or call on expert on the psychology or child sexual abuse, or to educate himself sufficiently on the scientific issues." *Gersten v. Senkowski,* 426 F.3d 588, 611 (2d Cir.2005). This failure meant that counsel "was unable to mount an effective cross-examination, and missed an opportunity to rebut this attempt

at bolstering the victim's credibility." *Id.* Here, counsel mounted an effective cross-examination. In a case similar to that before the Court, another district court in this Circuit has held that the admission of expert testimony regarding child sexual abuse accommodation syndrome does not violate the Due Process Clause, and habeas relief is not warranted, where "[t]he testimony was not offered to prove that the acts of sodomy ... had, in fact, occurred" and "the jury [is] advised that it was not to be used for that purpose." *Miles v. Conway,* 739 F.Supp.2d 324, 336–37 (W.D.N.Y.2010). Here, the testimony was not offered to prove that the acts of sodomy had, in fact, occurred, and counsel stressed that point to the jury. Therefore, Petitioner's constitutional rights were not violated and I recommend that the Court deny habeas relief on this ground.

### 8. *Failing to Enter Evidence Into the Record*
Petitioner contends that trial counsel rendered ineffective assistance by "fail[ing] to enter ... evidence into the record." (Dkt. No. 1 at 5.) In his memorandum of law, he cites two specific examples: (1) counsel's failure to investigate and establish that Mike's Hard Lemonade and Smirnoff Ice were not available in the United States until 2000 and 2001 (Dkt. No. 1–2 at 2122); and (2) counsel's failure to search for alibi witnesses (Dkt. No. 1–2 at 24).

Petitioner raised these claims on direct appeal (Ex. D at 16–19, 32) and in his § 440.10 motion (Ex. MM at 28–29, 32, 35, 40–41). On direct appeal, the court determined that Petitioner "received meaningful representation under all the circumstances." (Ex. G at 3.) As with Petitioner's other claims of ineffective assistance of trial counsel, the county court found that the issue was not properly raised on a § 440.10 motion and supported by factual allegations. (Ex. PP at 2–4.) However, the court noted that if it were to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* at 3. Respondent argues that the state courts' decisions were a reasonable application of clearly established federal law. (Dkt. No. 12 at 80–84.) Respondent is correct.

**\*36** It was reasonable for the state courts to conclude that Petitioner was not prejudiced by trial counsel's failure to introduce evidence regarding the dates that Mike's Hard Lemonade and Smirnoff Ice were first distributed in the United States. E.D. testified that Petitioner molested him for "three and four years nonstop" after he was "around

twelve years old," and thus the molestation lasted until he was "around fifteen." (A. at 326:5–327:6.) E.D., who was born on October 2, 1986, turned fifteen on October 2, 2001. (A. at 26.) Petitioner asserts that Mike's Hard Lemonade and Smirnoff Ice were both distributed in the United States by 2001. (Dkt. No. 1–2 at 21–22.) Thus, the evidence regarding the beverages' distribution dates would not necessarily have contradicted E.D.'s testimony that Petitioner provided him with those and other alcoholic beverages. Accordingly, there is not a substantial likelihood that the evidence would have produced a different result.

Regarding the alibi witnesses, the state courts reasonably concluded that trial counsel's failure to call them was objectively reasonable. As Mr. Benjamin observed in his affirmation in support of Petitioner's § 330 motion to vacate the verdict, "these affidavits constitute new evidence that was not known to the defendant, or reasonably discoverable by his trial attorney during trial for the reasons explained in the three affidavits that caused these witnesses not to come forward and the defendant and his attorney not to know of their evidence." (A. at 524 ¶ 5.) Therefore, I recommend that the Court dismiss the habeas petition on this ground.

### 9. *Failing to "Know the Law" Regarding Corroboration*
Petitioner claims that trial counsel rendered ineffective assistance when failed to "know the law" that there is a "requirement of corroboration." (Dkt. No. 1–2 at 10; Dkt. No. 1 at 5.) Respondent argues that the claim is unexhausted and meritless. (Dkt. No. 12 at 30, 88.) Respondent is correct. Regarding exhaustion, this claim is unexhausted for the same reasons discussed above regarding trial counsel's failure to move for a mistrial after Ms. Brimberg–Clark's testimony. On the merits, until 1984, New York Penal Law § 130.16 required corroboration for sex crimes based on the victim's lack of capacity to consent due to age. *Roe v. Senkowski,* No. 9:98–CV–0656 (NAM/GLS), 2001 U.S. Dist. LEXIS 23754, at *7–8, 2001 WL 1860884, at *2–3 (N.D.N.Y. Feb.20, 2001). However, an amendment in 1984 eliminated the corroboration requirement. *Id.* As a result of that amendment, the testimony of child victims is sufficient to establish guilt beyond a reasonable doubt. *See Stewart v. Hunt,* No. 9:09–CV–712 (MAD/TWD), 2012 U.S. Dist. LEXIS 134715, at *30–31, 2012 WL 4107825, at *11 (N.D.N.Y. Sept.19, 2012); *Howard v. Potter,* No. 9:06–CV–0982 (GTS/GHL), 2009 U.S. Dist. LEXIS 93523, at *10, 2009 WL 3259080, at *6 (N.D.N.Y. Oct.7, 2009). Thus, trial counsel did not "fail to know" the law and I recommend that the Court deny the habeas petition on this ground as plainly meritless.

10. *Failing to Object to the Amendment of the Indictment*

**\*37** Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the amendment of the indictment. (Dkt. No. 1 at 5.) Respondent argues that this claim is unexhausted and plainly meritless. (Dkt. No. 12 at 30, 76–77.) Respondent is correct. Regarding exhaustion, this claim is unexhausted for the same reasons discussed above regarding trial counsel's failure to move for a mistrial after Ms. Brimberg–Clark's testimony. On the merits, as discussed above, Petitioner's arguments that the amendment to the indictment violated his rights are plainly meritless. An attorney's failure to object to the amendment of an indictment does not constitute ineffective assistance where the amendment itself is valid under New York law and the Due Process Clause. *See, e.g., LanFranco v. Murray,* 313 F.3d 112, 118–20 (2d Cir.2002). Therefore, I recommend that the Court deny the habeas petition on this ground as plainly meritless.

11. *Failing to Object to Prosecutor's Comments During Summation*

Petitioner contended on direct appeal that trial counsel rendered ineffective assistance by failing to object to the prosecutor's comments during summation that E.D. did not receive a deal for his testimony and that he was a good family man. (Ex. D at 32.) The state court found that Petitioner "received meaningful representation under all the circumstances." (Ex. G at 3.) Respondent argues that, to the extent that Petitioner has reasserted this claim, the state court reasonably applied clearly established federal law. (Dkt. No. 12 at 86–88.) Respondent is correct.

A petitioner may obtain habeas relief based on a claim of prosecutorial misconduct during summation only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). To meet his burden, Petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994). Three factors are considered by a habeas court in determining whether a prosecutor's summation created actual prejudice: " 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.' " *Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir.1998) (quoting *Floyd v. Meachum,* 907 F.2d

347, 355 (2d Cir.1990) (quoting *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1982) (per curiam)). The court "must evaluate the challenged remarks in the context of the trial as a whole, for the government is allowed to respond to argument that impugns its integrity or the integrity of its case." *United States v. Rivera,* 22 F.3d 430, 438 (2d Cir.1994). *See Darden v. Wainwright,* 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (finding no substantial prejudice, in part because "[m]uch of the objectionable content was invited by or was responsive to the opening summation of the defense") (citing *United States v. Young,* 470 U.S. 1, 13, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). *See Walker v. Cunningham,* No. 08–CV–2735, 2008 U.S. Dist. LEXIS 87064, at *13, 2008 WL 4737664, at *5 (E.D.N.Y. Oct.28, 2008) ("A prosecutor has broad latitude during summation, particularly when responding to defense counsel's summation.").

**\*38** Here, the record does not demonstrate prosecutorial misconduct. First, the prosecutor did not state that E.D. was a good family man. Rather, he referred to Investigator Franz's testimony that *Petitioner* initially referred to E.D. as "a good kid, you know, he's a hard worker, loves his family, solid guy." (A. at 463:14–16 .) Second, the prosecutor's assertion that E.D. did not receive leniency for bringing charges against Petitioner was based on E.D.'s testimony that he did expect to get a deal. (A. at 324:9–23.) These comments, based on evidence, were insufficient to "infect" the proceedings.

Further, even if the prosecutor had engaged in misconduct, the state court reasonably concluded that Petitioner was not prejudiced. There is not a substantial likelihood that the result would have been different if trial counsel had objected to the summation. Therefore, I recommend that the Court deny the habeas petition on this ground.

**E. Ineffective Assistance of Appellate Counsel**

Petitioner asserts a number of ways in which he contends his two appellate attorneys rendered ineffective assistance. (Dkt. No. 1 at 6–7; Dkt. No. 1–2 at 10–11.) Respondent argues that Petitioner's ineffective assistance of appellate counsel claims are unexhausted. (Dkt. No. 12 at 29–34.) Respondent is correct. As discussed above, Petitioner raised his ineffective assistance of appellate counsel claims in his first *coram nobis* motion. (Ex. M.) The appellate division granted the motion solely as to the *Brady* issues involving E.D.'s statements. (Ex. P.) Petitioner moved to renew or reargue the motion. (Ex. Q.) The Third Department denied the motion to reargue and the Court of Appeals dismissed Petitioner's application for leave to appeal "because the order sought to be appealed is

not appealable." (Exs.U–V.) Petitioner never sought to appeal the appellate division's substantive order granting coram nobis in part and denying it in part. Petitioner thus never "fairly presented" his substantive issues regarding ineffective assistance of appellate counsel to the Court of Appeals and his claims are unexhausted. *See Perez v. Perrott,* No. 9:04–CV–327 (DNH/GJD), 2008 U.S. Dist. LEXIS 117659, at \*15–16, 2008 WL 2323360, at \*5 (N.D.N.Y. June 2, 2008 [15] ). Therefore, I recommend that the Court deny the habeas petition as to these claims.

### F. Ineffective Assistance of Counsel in State Collateral Proceedings

Petitioner was granted leave to amend the petition to assert that his counsel in his CPL § 330 proceedings rendered ineffective assistance by (1) failing to object when the prosecutor submitted E.D.'s videotaped statement to the trial court ex parte; (2) failing to argue that trial counsel rendered ineffective assistance by failing to object to the amendment of the indictment; and (3) failing to argue that trial counsel rendered ineffective assistance by failing to challenge the entire indictment as time-barred. (Dkt. No. 30.) Respondent argues that these claims are unexhausted and plainly meritless. (Dkt. No. 32 at 15–24. [16] )

#### 1. Failure to Object to Ex Parte Review of E.D.'s Videotaped Statement

**\*39** Petitioner claims that Mr. Benjamin, who represented him in his CPL § 330 motion, rendered ineffective assistance by failing to object when the trial court reviewed E.D.'s videotaped statement. (Dkt. No. 33 at I, 3, 6, 9–10.) Petitioner argues that this violated the New York Code of Judicial Conduct and the Confrontation Clause. *Id.* Respondent argues that this claim is unexhausted and plainly meritless. (Dkt. No. 32 at 9–12, 18–20.) Respondent is correct.

This claim is unexhausted because Petitioner never raised it in any state forum. However, I recommend that the Court exercise its discretion and deny the claim on its merits, as it is plainly meritless.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67–68. The New York Code of Judicial Conduct authorizes judges to "consider any *ex parte* communications when authorized by law to do so." N.Y. Comp.Codes R. & Regs. tit. 22, § 100.3(B) (6)(e) (2014). New York law

authorizes judges to examine discovery materials *ex parte.* N.Y.Crim. Proc. Law § 240.90 (McKinney 2004). The trial judge exercised his authority under New York law to examine the videotape *ex parte,* and it is not the province of this court to reexamine that decision. Such a decision violates neither *Brady* nor the Confrontation Clause in situations such as the case at bar. *See, e.g., Dawkins v. New York,* No. 08–CV–2441(NGG), 2011 U.S. Dist. LEXIS 91150, 2011 WL 3625150 (E.D.N.Y. Aug.16, 2011). Therefore, I recommend that the Court deny and dismiss the habeas petition on this ground.

#### 2. Failure to Argue That Trial Counsel Was Ineffective

Petitioner asserts that Mr. Benjamin rendered ineffective assistance by failing to argue that trial counsel was ineffective (a) for failing to object to the amendment of the indictment; and (b) for failing to challenge the entire indictment as time-barred. (Dkt. No. 30 at 10.) Respondent argues that these claims are unexhausted and plainly meritless. (Dkt. No. 32 at 9–12, 20–24.) Respondent is correct.

##### a. Trial Counsel's Failure to Object to Indictment Amendment

Petitioner asserts that Mr. Benjamin rendered ineffective assistance by failing to argue that trial counsel was ineffective for failing to object to the amendment of the indictment. (Dkt. No. 30 at 10.) This claim is unexhausted because Petitioner never raised it in any state forum. However, I recommend that the Court exercise its discretion and deny the claim on its merits, as it is plainly meritless. As discussed above, Petitioner's claim that the amendment to the indictment violated his constitutional rights is itself without merit. Thus, trial counsel's failure to object and appellate counsel's failure to assert trial counsel's ineffectiveness on appeal did not constitute ineffective assistance of counsel. *See, e.g., LanFranco v. Murray,* 313 F.3d 112, 11820 (2d Cir.2002). Therefore, I recommend that the Court deny and dismiss the petition on this ground.

##### b. Trial Counsel's Failure to Challenge the Indictment as Time–Barred

**\*40** Petitioner asserts that Mr. Benjamin rendered ineffective assistance by failing to argue that trial counsel was ineffective for failing to challenge the entire indictment as time-barred. (Dkt. No. 30 at 10.) This claim in unexhausted because Petitioner never raised it in any state forum. However, I recommend that the Court exercise its discretion

and deny the claim on its merits, as it is plainly meritless. Petitioner argues that trial counsel rendered ineffective assistance by failing to argue that the entire indictment was time-barred. (Dkt. No. 31–2 at 6–7, 9.) Petitioner argues that his prosecution was time-barred and violated the Ex Post Facto Clause because the relevant statute of limitations was amended after the date he committed the two felonies for which he was convicted. *Id.* Petitioner is incorrect. The Supreme Court has held that "a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution." *Stogner v. California,* 539 U.S. 607, 632–33, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003). Petitioner was convicted of two felonies-one committed in 1993 and the other in 1997. (Ex. A at 87–98, 514:7–515:10.) Sodomy in the first degree is a Class B felony and sodomy in the second degree is a Class D felony. N.Y. Penal Law §§ 130.45, 130.50 (McKinney 2004). In 1993, the statute of limitations for Class B and Class D felonies was five years. N.Y.Crim. Proc. Law § 30.10(2)(b) (McKinney 2003). In 1996, before the statute of limitations ran on the offense Petitioner committed in 1993, the New York legislature enacted Criminal Procedure Law § 30.10(3)(f), which tolls the statute of limitations for sexual abuse prosecutions until the victim turns eighteen or reports the crime to authorities, whichever is earlier. *See People v. Quinto,* 18 N.Y.3d 409, 412–13, 941 N.Y.S.2d 8, 964 N.E.2d 379 (2012). E.D. turned eighteen on October 2, 2004. (Ex. A at 26.) The prosecution against Petitioner was commenced well within five years of that date. *Id.* at 87–98, 941 N.Y.S.2d 8, 964 N.E.2d 379. Thus, the indictment was not time-barred, trial counsel was not ineffective for failing to raise a meritless argument, and appellate counsel was not ineffective for failing to argue that trial counsel was ineffective. Therefore, I recommend that the Court deny and dismiss this claim as plainly meritless.

**WHEREFORE,** based upon the foregoing, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED;** and it is further

**RECOMMENDED** that the Court find that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) (2006) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000). Therefore, it

is recommended that no certificate of appealability issue with respect to any of Petitioner's claims; and it is further

**\*41 ORDERED** that the Clerk provide Petitioner with copies of *Senor v. Greiner,* Civ. No. 00–5673 JG, 2002 U.S. Dist. LEXIS 17710, 2002 WL 31102612 (E.D.N.Y. Sept.18, 2002); *Chambers v. Conway,* No. 09 Civ. 2175(JGK), 2011 U.S. Dist. LEXIS 61327, 2011 WL 2226956 (S.D.N.Y. June 8, 2011); *Nickel v. Ercole,* No. 9:06–CV–390 (LEK/RFT), 2009 U.S. Dist. LEXIS 131759, 2009 WL 1606092 (N.D.N.Y. May 11, 2009); *Cooper v. Fischer,* No. 9:04–CV–0633 (LEK/ GHL), 2008 WL 1766740 (N.D.N.Y. Apr.14, 2008); *White v. Conway,* No. 9:07–CV–1175 (FJS/GHL), 2011 U.S. Dist. LEXIS 35735, 2011 WL 1315592 (N.D.N.Y. Mar.31, 2011); *Verdel v. Cunningham,* No. 07 Civ. 837(JGK), 2008 U.S. Dist. LEXIS 53358, 2008 WL 2755833 (S.D.N.Y. July 14, 2008); *King v. Phillips,* No. 03–CV–6045 (NGG) (RB), 2009 U.S. Dist. LEXIS 27356, 2009 WL 891763 (E.D.N.Y. Mar. 31, 2009); *Smith v. Edwards,* No. 98 Civ. 7962(DLC), 2000 U.S. Dist. LEXIS 7414, 2000 WL 709005 (S.D.N.Y. May 31, 2000); *Figueroa v. Heath,* No. 10–CV–0121, 2011 U.S. Dist. LEXIS 51568, 2011 WL 1838781 (E.D.N.Y. May 13, 2011); *Roe v. Senkowski,* No. 9:98–CV–0656 (NAM/GLS), 2001 U.S. Dist. LEXIS 23754, 2001 WL 1860884 (N.D.N.Y. Feb.20, 2001); *Stewart v. Hunt,* No. 9:09–CV–712 (MAD/ TWD), 2012 U.S. Dist. LEXIS 134715, 2012 WL 4107825 (N.D.N.Y. Sept.19, 2012); *Howard v. Potter,* No. 9:06–CV– 0982 (GTS/GHL), 2009 U.S. Dist. LEXIS 93523, 2009 WL 3259080 (N.D.N.Y. Oct.7, 2009); *Walker v. Cunningham,* No. 08–CV–2735, 2008 U.S. Dist. LEXIS 87064, 2008 WL 4737664 (E.D.N.Y. Oct.28, 2008); and *Perez v. Perrott,* No. 9:04–CV–327 (DNH/GJD), 2008 U.S. Dist. LEXIS 117659, 2008 WL 2323360 (N.D.N.Y. June 2, 2008).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b) (1) (Supp.2013); Fed.R.Civ.P. 72, 6(a).

Dated: September 23, 2014.

2015 WL 93716

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 93716

Footnotes

1    *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2    *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); *Fed.R.Civ.P. 72(b),* Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

3    *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either *Fed.R.Civ.P. 72(b)* or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

4    *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

1    *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), holds that, under New York law, the prosecution must provide the defense with statements by any witnesses who will testify at trial. The rule is codified as New York Criminal Procedure Law §§ 240.44–240.45.

2    Page 550, which contains the beginning of the pertinent paragraph, is missing from the record. Instead the record contains two copies of page 549.

3    To make this determination, the court examines three "clues": (1) the face of the state-court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances. *Jimenez,* 458 F.3d at 145 n. 16.

4    Citations to page numbers in Petitioner's memorandum of law in support of the petition refer to the page numbers assigned by the Court's electronic filing system.

5    Citations to page numbers in Respondent's memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

6    The Court will provide Plaintiff with a copy of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

7    Lexis and Westlaw use different dates in citations for this decision. This Court has used the date listed by Westlaw, which was the date on which the magistrate judge's decision was adopted by the district court.

8    Such claims are cognizable if analyzed under the Sixth Amendment. The Sixth Amendment implications of Petitioner's claims are discussed below.

9    This decision is not available on Lexis.

10   Citations to page numbers in Petitioner's traverse refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

11   Respondent cites *Renico v. Lett,* 559 U.S. 766, 779, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) for the proposition that courts cannot apply a standard set forth in a court of appeals decision on the ground that the decision "illuminates" a Supreme Court decision. (Dkt. No. 12 at 52.) The undersigned is not suggesting that the Second Circuit cases "illuminate" Supreme Court decisions. Rather, the Second Circuit's method of dealing with delayed *Brady* production cases *applies* Supreme Court prejudice prong precedent. This case is distinguishable from *Renico.* There, the relevant court of appeals decision set forth a three-factor test that did not appear in the Supreme Court precedent it purported to "illuminate." *Renico,* 559 U.S. at 779. Here, the Second Circuit cases on delayed *Brady* production quote directly from Supreme Court decisions.

12   Respondent cites *White v. Carroll,* 416 F.Supp.2d 270, 277 (D.Del.2006) as supporting the proposition that "there does not appear to be clearly established Supreme Court law regarding the standard to be applied in cases of belated disclosure." (Dkt. No. 12 at 51.) That case, in turn, cites *United States v. Higgs,* 713 F.2d 39, 43–44 (3d Cir.1983) for the proposition that "the *Brady* rule does not generally apply to the delayed disclosure of exculpatory or impeachment evidence; rather it only applies to a complete failure to disclose." This Court is unable to find any support in *Higgs* for that proposition. *Higgs* held that the particular delayed production at issue in that case did not violate *Brady,* not that *Brady* does not apply to cases of delayed production.

13   "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 784–85, 178 L.Ed.2d 624 (2011). The burden is on Petitioner to show that this decision did not involve a determination on the merits of his claim and is thus not entitled to AEDPA deference. *Id.*

14   Eugene, Jr. is Petitioner's son. It is not clear whether the reference to him is a typographical error in Petitioner's paperwork, a typographical error in Investigator Franz's notes, or truly an indication that C.B. reported that E.D., Sr., did something to Petitioner's son.

15   Lexis and Westlaw lists different dates for this decision. The undersigned has used the date listed by Westlaw, which reflects the date that the district court judge adopted the magistrate judge's report and recommendation.

16   Citations to page numbers in Respondent's Memorandum of Law in Opposition to Petitioner's Motion to Amend His Petition for a Writ of Habeas Corpus refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

---

**End of Document**                                        © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---