UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ADAM JABAUT,

                              Petitioner,

        -against-                                    9:17-CV-0072 (LEK/TWD)

CHRISTOPHER MILLER,

                              Respondent.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

In 2008, Adam Jabaut was convicted of several crimes in Clinton County Court (the

"Trial Court"). Pursuant to 28 U.S.C. § 2254, Jabaut now asks this Court to issue a writ of

habeas corpus and vacate his conviction. Dkt. Nos. 1 ("Petition"); 1-1 ("Exhibits"); 19

("Traverse"). Respondent opposes the Petition. Dkt. Nos. 12 ("Affidavit of Counsel"); 12-1

("Opposition"); 13 & 13-1 ("Supplemental State Court Record" or "S.S.C.R."); 14 ("State Court

Record" or "S.R."); 14-1 ("Pre-Trial and Trial Transcripts" or "T.").[1]

Presently before the Court is a Report-Recommendation filed by the Honorable Thérèse

Wiley Dancks, United States Magistrate Judge, recommending dismissal of the Petition. Dkt.

No. 21 ("Report-Recommendation"). Petitioner has filed objections to the Report-

Recommendation. Dkt. No. 22 ("Objections"). For the reasons that follow, the Court adopts the

Report-Recommendation in part and modifies it in part, and the Court dismisses the Petition.

---

[1]  When citing to the Pre-Trial and Trial Transcripts, the Court refers to the pagination
generated by CM/ECF, the Court's electronic filing system. When citing to S.R. and S.S.C.R.,
the Court refers to those documents' original pagination.

## II.     BACKGROUND

### A.  State Court Proceedings

The Report-Recommendation details the factual and procedural background of this case. R. & R. at 2–15. For convenience, the Court summarizes the most relevant background here.

In 2007, Petitioner's stepdaughter, K.T., reported to her school guidance counselor that Petitioner had sexually assaulted her. R. & R. at 2; T. at 622–23. An investigation ensued, during which State Trooper Karen Dufour and Case Worker Carrie Carpenter interviewed Petitioner at the Plattsburgh Police Station.[2] R. & R. at 2, 7. During this interview, Petitioner confessed that he had sexually assaulted K.T. Id. He also asked several times for an opportunity to call his wife, but Dufour denied these requests. R. & R. at 7; T. at 37–38. Separately, the investigation also revealed that Petitioner had sexually assaulted K.T.'s friend, L.B. R. & R. at 2, 6–7.

Petitioner was indicted for four counts of predatory sexual assault against a child, N.Y. Penal Law § 130.96; five counts of rape in the first degree, N.Y. Penal Law § 130.35; one count of course of sexual conduct against a child in the second degree, N.Y. Penal Law § 130.80(1)(b); one count of criminal sexual act in the first degree, N.Y. Penal Law § 130.50; one count of sexual abuse in the first degree, N.Y. Penal Law § 130.65; and two counts of rape in the third degree, N.Y. Penal Law § 130.25. S.R. at 17–24; S.S.C.R. at 1.

Prior to trial, Petitioner's attorney moved to suppress Petitioner's confession. See T. at 21–94. After holding a Huntley hearing,[3] the Trial Court denied the motion. T. at 94–97.

---

[2]  Carpenter worked for the Clinton County Department of Social Services in the Child Protective Unit. T. at 72.

[3]  "In New York, a Huntley hearing is held if the prosecution intends to offer a defendant's confession. If the confession is challenged, a hearing is held in which the prosecution has the burden of proving, beyond a reasonable doubt, that a defendant's statement was voluntary." Thomas v. Lord, 396 F. Supp. 2d 327, 335–36 (E.D.N.Y. 2005) (citing People v. Huntley, 15 N.Y.2d 72 (1965)).

At trial, in addition to the testimony of K.T., L.B., and several other witnesses, the prosecution offered the testimony of an expert on Child Sexual Abuse Accommodation Syndrome ("CSAAS"), Dr. Richard Hamill. T. at 828–44. Dr. Hamill testified that he had never met K.T., L.B., or Petitioner, and could offer no opinion as to whether the alleged crimes had occurred. Id. at 845–46. Instead, Dr. Hamill testified more generally as to how CSAAS can help to explain the behaviors of sexually abused children. Id. at 839–40, 846–78.

At the close of trial, Petitioner was convicted of three counts of predatory sexual assault against a child, two counts of first degree rape, one count of second degree course of sexual conduct against a child, one count of first degree criminal sexual act, and one count of third degree rape. Id. at 1376–78. The Trial Court sentenced Petitioner to an aggregate 83 1/3 years to life. Id. at 1423–25.

Petitioner subsequently filed a motion to vacate his conviction under New York Criminal Procedure Law § 440.10 (the "First 440 Motion"), arguing that the prosecution had violated Brady by failing to disclose exculpatory evidence to the defense, and that this "new evidence" justified reversal of his conviction.[4] S.S.C.R. at 1–8; S.R. at 9–16, 171–203. Because the details of this motion are central to the Court's resolution of one of Petitioner's Objections, the Court describes them more thoroughly here.

Specifically, in support of his First 440 Motion, Petitioner submitted two affidavits signed by a girl named T.L. S.R. at 11–13. In the affidavits, T.L. stated that she had overheard a conversation involving L.B. and another girl named J.J., and that during this conversation L.B. had asked J.J. to help L.B. and K.T. get Petitioner into trouble by falsely accusing him of rape.

---

[4] Brady, of course, establishes the government's due process obligation to disclose all material, exculpatory evidence to a criminal defendant. See United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (citing Brady v. Maryland, 373 U.S. 83 (1963)).

Id. at 185–88. T.L. also stated in one affidavit that she had told Dufour about the overheard

conversation. Id. at 187–88. In addition to these affidavits from T.L., Petitioner also submitted an

affidavit from his trial counsel attesting that, since nothing in the materials disclosed to him by

the prosecution prior to trial identified T.L., he had no means to investigate T.L.'s story or call

her as a defense witness. Id. at 189–90.

In response to Petitioner's First 440 Motion, the government submitted several affidavits

of its own. First, it submitted a subsequent affidavit signed by Petitioner's trial counsel in which

counsel admitted that, upon another review of his case file, the government had turned over prior

to trial Dufour's notes from her interview with T.L. S.R. at 319; S.S.C.R. at 5–8. Second, it

submitted a subsequent affidavit from T.L. herself recanting her earlier affidavits. S.S.C.R. at 4–

5; S.R. at 393. In her recantation, T.L. explained:

> I saw [L.B.] and [J.J.] go into [J.J.'s] bedroom and I could hear only bits
> and pieces of the conversation. . . . I heard the word "rape." . . . I then heard
> [L.B.] say "will you help" and heard the word "trouble." I never heard
> [L.B.] or [J.J.] say Petitioner's name [n]or did I hear any further details of
> the conversation. . . . I never did hear [L.B.] ask [J.J.] make a
> plan to get [Petitioner] in trouble. I was spoken to by [Carpenter] and
> [Dufour] after this and I did tell them that I heard [L.B.] and [J.J.] having a
> conversation and [L.B.] asking for help. I never told [Carpenter] or [Dufour]
> that I overheard [L.B.] asking [J.J.] to help [K.T.] get [Petitioner] in trouble
> by saying she was raped. I did sign the affidavit given to me by [Petitioner's]
> attorney because I felt pressured to sign it. He was asking for specific details
> that I did not know and the lawyer told me what I was saying would not
> help [Petitioner].

S.R. at 393. Third, the government submitted an affidavit from Dufour in which she stated that,

while she had talked with T.L. in the course of her investigation, T.L. never mentioned anything

about overhearing L.B. attempting to enlist J.J.'s aid in framing Petitioner. S.S.C.R. at 5; S.R. at

282–84.

The Trial Court denied Petitioner's First 440 Motion. First, the Trial Court found that

there was no Brady violation because, per trial counsel's subsequent affidavit, the prosecution

had, in fact, timely turned over all Dufour's notes regarding her interview with T.L. S.S.C.R. at 4–5. Second, the Trial Court found that the information in T.L.'s initial affidavits did not constitute "newly discovered" evidence because, since trial counsel had received Dufour's notes, the "information . . . categorized by [Petitioner] as new evidence could have been produced at trial with due diligence." Id. at 5–8. Additionally, the Trial Court noted that "given the information contained in [T.L.'s] [recantation], the information [she] possesse[d] [would] not probably [have] change[d] the result if a new trial [had been] granted." Id. at 8. For these reasons, the trial court denied Petitioner's First 440 Motion. Id.

Petitioner then appealed both his conviction and the denial of his First 440 Motion. S.R. at 5–6. The Supreme Court, Appellate Division, Third Department (the "Appellate Division") denied both appeals. S.S.C.R. at 10–19. Petitioner sought leave to appeal to the New York Court of Appeals, S.R. at 1198–1212, which the Court of Appeals denied. S.S.C.R. at 20.

Finally, Petitioner filed another 440 motion (the "Second 440 Motion"), asking the Trial Court to vacate his conviction on new grounds. S.R. 1217–49. After the Trial Court denied this Second 440 Motion, Petitioner sought leave to appeal to the Appellate Division, S.R. at 1283–96, which the Appellate Division denied, S.S.C.R. at 28.

Petitioner then filed the Petition in this Court.

**B.  The Petition**

In the Petition, Petitioner raised the following challenges to his conviction: (1) trial counsel provided ineffective assistance because he introduced at trial prejudicial photos of Petitioner's erect penis, failed to request limiting instructions regarding the trial testimony of the prosecution's expert witness, failed to object to portions of the prosecutor's summation in which she discussed the expert testimony, failed to call a rebuttal expert at trial, and provided conflicting affidavits during the proceedings surrounding Petitioner's First 440 Motion; (2)

Petitioner was deprived of his due process right to a fair trial because of the introduction of the prejudicial photos of his erect penis, the lack of limiting instructions regarding the testimony of the prosecution's expert witness, and the prosecutor's improper comments during her summation about the expert testimony; (3) the trial court improperly admitted Petitioner's confession in evidence because the police obtained the confession in violation of Petitioner's Fifth Amendment right to counsel; and (4) Petitioner's 83 1/3-year sentence constituted cruel and unusual punishment. Pet.

### C. The Report-Recommendation

Judge Dancks recommended dismissing the Petition in its entirety. R. & R. at 1. She first considered whether Petitioner had exhausted his state court remedies as to each of his grounds for habeas relief. Id. at 16–19. Judge Dancks found that "Petitioner's ineffective assistance of counsel claims, his claim the police improperly obtained—and the prosecutor improperly admitted—his confession, and his claim his sentence is unduly harsh ha[d] been exhausted" and could be considered on the merits. Id. at 16–17. However, she also found that "Petitioner's alleged violations of his due process rights [were] unexhausted, procedurally barred, and unable to satisfy the cause and prejudice standard," and therefore she could not consider those claims on the merits. Id. at 17–19.

Turning to the merits of the Petition, Judge Dancks first addressed Petitioner's argument that the police obtained his confession in violation of his right to counsel. Id. at 20–21. She found that, because Petitioner had not "unambiguously" invoked his right to counsel during his interview with Dufour, the Appellate Division's decision rejecting this claim was not contrary to, nor an unreasonable application of, Supreme Court precedent. Id. at 21.

Next, Judge Dancks considered whether Petitioner's sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. Id. at 21–23. Because the sentence

fell within the statutory range under state law, however, Judge Dancks found that the sentence could not serve as a basis for habeas relief. Id.

Finally, Judge Dancks recommended denying Petitioner's ineffective assistance of counsel claim. Id. at 23–28. She found that several of the bases for Petitioner's claim—trial counsel's decision to introduce a photo of Petitioner's erect penis, trial counsel's failure to object during the prosecution's summation, and trial counsel's failure to call an expert witness—were within the bounds of reasonable trial strategy and did not amount to ineffective assistance. Id. Other bases, such as trial counsel's failure to request a limiting instruction regarding the prosecution's expert testimony, Judge Dancks found to be harmless. Id. Overall, Judge Dancks concluded that there was no indication the state courts had misapplied federal law in rejecting Petitioner's ineffective assistance claims. Id.

For these reasons, Judge Dancks recommended dismissing the Petition.

**D. Petitioner's Objections**

Petitioner lodges three objections to the Report-Recommendation. Objs. First, Petitioner reiterates that Dufour violated his Fifth Amendment right to counsel and that, for this reason, the trial court should have suppressed his confession. Id. at 1–2. Second, Petitioner reasserts his ineffective assistance of counsel claim, this time asserting that his trial counsel was ineffective for failing to call T.L. as a witness and failing to raise Dufour's Brady violations during the suppression hearing. Id. at 2–3. And, third, Petitioner argues that Judge Dancks was wrong not to consider his due process claims. Id. at 3.

## III.   STANDARD OF REVIEW

### A.  Review of the Report-Recommendation

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed

findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely

filed, a court "shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b).

However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a

mere reiteration of an argument made to the magistrate judge, a district court need review that

aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013

WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07

(N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange,

748 F.3d 471 (2d Cir. 2014); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL

3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a pro se party's objections to a Report and

Recommendation must be specific and clearly aimed at particular findings in the magistrate's

proposal . . . ."). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge." § 636(b).

### B.  Legal Standards for Habeas Relief

#### 1.  Exhaustion of State Court Remedies

An application for a writ of habeas corpus may not be granted until a petitioner has

exhausted all remedies available in state courts. See Grey v. Hoke, 933 F.2d 117, 119 (2d Cir.

1991) ("Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief must exhaust[] the

remedies available in the courts of the State.") (internal quotation marks omitted). "The

exhaustion requirement 'is principally designed to protect the state courts' role in the

enforcement of federal law and prevent disruption of state judicial proceedings." Jimenez v.

Walker, 458 F.3d 130, 149 (2d Cir. 2006) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).

Proper exhaustion has both a procedural and a substantive component. Trimm v.

Sheahan, No. 14-CV-905, 2014 WL 3670723, at *1 (N.D.N.Y. July 23, 2014). Procedural

exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. Rose, 455 U.S. at 520. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808 (2d Cir. 2000). In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Unexhausted claims are generally barred from habeas review by the rules concerning procedural default. Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

### 2.  *Procedural Default*

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and that actual prejudice results, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. House v. Bell, 547 U.S. 518, 536–39 (2006); Schlup v. Delo, 513 U.S. 298, 327 (1995). To meet the "cause" requirement, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. Maples v. Thomas, 565 U.S. 266, 280 (2012); Coleman, 501 U.S. at 753. Prejudice requires a petitioner to show "not merely that the errors at . . .  trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 154, 170 (1982)).

9

Additionally, there is an exception to the procedural bar in cases where a petitioner can prove actual innocence. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."). "[A]ctual innocence means factual innocence, not mere legal insufficiency." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324; see also Whitley v. Senkowski, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House, 547 U.S. at 536–37 (quoting Schlup, 513 U.S. at 327); see also Doe v. Menafee, 391 F.3d 147, 160–62 (2d Cir. 2004).

### 3. *Standard of Review of State Court Decisions*

Assuming a petitioner can successfully navigate her or his claims through the maze of rules governing exhaustion and procedural default, those claims are reviewed under the standard laid out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(d). Under AEDPA, a federal court may grant habeas relief with respect to a charge adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d)(1)–(2); see also Cullen v. Pinholster, 563 U.S. 170, 180–81, 185

10

(2011). This "highly deferential" standard "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)). In other words, "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" Nevada v. Jackson, 569 U.S. 505, 508–09 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).

Additionally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. 465, 473–74 (2007) (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." Lewis v. Conn. Comm'r of Corr., 790 F.3d 109, 121 (2d Cir. 2015).

## IV.   DISCUSSION

The Court first discusses the parts of the Report-Recommendation to which Petitioner objected, then addresses the remainder of the Report-Recommendation.

### A.  Right to Counsel and Suppression of Petitioner's Confession

Petitioner first argues that Dufour violated Petitioner's Fifth Amendment right to counsel during his interrogation when she denied his request to call his wife, and that the Trial Court should have suppressed his confession because of this violation. Objs. at 1–2. Petitioner objects to Judge Dancks' recommendation that the Court reject this basis for habeas relief. Id.

The Court notes that Judge Dancks considered this same argument in the Report-Recommendation. R. & R. at 20–21. Since Petitioner "merely reiterates the same arguments . . . submitted to the magistrate judge, the Court subjects [this] portion of the report-recommendation

. . . to only a clear error review." Monroe v. Kocienski, No. 17-CV-1050, 2019 WL 409412, at
*3 (N.D.N.Y. Feb. 1, 2019). The Court finds no clear error in the portion of Judge Dancks'
opinion addressing Plaintiff's right to counsel. Moreover, even considering this claim de novo,
the Court finds that the Trial Court's decision to admit Petitioner's conviction was not contrary
to, nor an unreasonable application of, clearly established Supreme Court precedent.

As Judge Dancks' described, "[i]n the context of invoking the Miranda right to
counsel, . . . a suspect must do so "unambiguously." R. & R. at 21 (citing Davis v. United States,
512 U.S. 452, 459 (1994) ("[T]he suspect must unambiguously request counsel.")). More
specifically, the suspect "must articulate his desire to have counsel present sufficiently clearly
that a reasonable police officer in the circumstances would understand the statement to be a
request for an attorney"; otherwise, the right is not invoked. Davis, 512 U.S. at 459; see also
Diaz v. Senkowski, 76 F.3d 61, 64 (2d Cir. 1996) ("Diaz asserts that he intended to invoke his
right to counsel. While that may well be the case, Diaz failed to express his intent reasonably
clearly. Had he done so, his intent would govern. In the absence of such a clear statement, the
Davis opinion, however, tells us that a suspect's intent is not the controlling factor.").

Here, based on the testimony at the suppression hearing and the record before the state
courts, there is no indication that Petitioner invoked his right to counsel, unambiguously or

otherwise. See T. at 37–38 (direct exam of Dufour);[5] 55 (direct exam of Dufour);[6] 59–61 (cross

exam of Dufour);[7] 71 (questions of Dufour by the Trial Court, after redirect);[8] 84–85 (direct

---

[5]  Q. Now, at any point before the defendant said that you should . . . talk[] to [his step-daughter] . . . did the defendant ask for an attorney?
A. No, he did not.
. . .
Q. At any point did he ask to make any phone calls?
A. Yes.
Q. Who did he ask to call?
A. He wanted to call his wife.
Q. And was he permitted to call his wife?
A. No."

[6]  Q. Now, you indicated that at one point the defendant asked for a break to call his wife, correct?
A. Yes, he asked to call her.
Q. All right. At any point did he ask to call a lawyer?
A. No.
Q. At any point did he ask to call someone else? A. No."

[7]  Q. Okay. With regard to a phone conversation, Adam at one point asked to call his wife, correct?
A. Correct.
Q. You wouldn't let him, right?
A. Correct.
Q. Why?
A. I didn't feel, one, I didn't need to let him. And two, I didn't feel it was appropriate at that time.
Q. He was upset at the time, was he?
A. Correct, he was.
Q. And he simply wanted to talk to his wife, but you wouldn't permit it?
A. That's correct.
. . .
Q. Did Adam say anything more? Was he frustrated by your refusal to let him talk to his wife?
A. Yes.
Q. But you had asked him if he wanted to talk or call someone, correct, before that?
A. No. He asked if he could call his wife. He asked several times. I told him no. . . . he asked probably three or four times. I don't know exactly how many times.

[8]  The Court: Investigator, at any of the times when Mr. Jabaut asked to call his wife, did he ever indicate to you why he wanted to call his wife?
The Witness: I can't remember for certain. I believe –
The Court: I don't want you to guess. If you don't know, you don't know.
The Witness: I don't remember for certain.

exam of social worker Carrie Carpenter).[9] The record indicates that Petitioner asked only to speak with his wife, and that he did not indicate that this request related to a desire to speak with an attorney. Such a request is not a sufficiently clear expression of a desire to have counsel present that a reasonable officer would understand the statement to be a request for an attorney. Cf. United States v. Davis, 687 F. App'x 75, 78–79 (2d Cir. 2017) (finding that defendant's repeated requests to telephone his mother were not unambiguous requests for counsel); Davis, 512 U.S. at 462 (defendant's statement "[m]aybe I should talk to a lawyer" was not a request for counsel). For this reason, the Court finds no error in Judge Dancks' recommendation that this portion of the Petition lacks merit.

### B. Ineffective Assistance of Counsel

In his Objections, Petitioner again presses his ineffective assistance claim, this time asserting that trial counsel was ineffective for: (1) failing to call T.L. as a defense witness; and (2) failing to raise at the suppression hearing that the state violated Brady by not disclosing T.L.'s evidence to the defense. Objs. at 2–3. Notably, Petitioner does not appear to have included these specific allegations of ineffective assistance in the Petition. See Pet. For this reason, the Court discerns no error, clear or otherwise, in the Report-Recommendation's failure to address

---

[9] Q. At any point during the interview did [Petitioner] ask for the aid of an attorney?
A. No. . . .
Q. At any point in the interview did he ask for a break to call an attorney?
A. No.
Q. Did he ask for a break to make a phone call at any point in the interview?
A. He asked at least once during the interview, he said that he wanted to talk to his wife.
Q. And was he permitted to talk to his wife?
A . . . Not at that point.
Q. Did the defendant indicate why he wished to speak with his wife?
A. We asked that if this was true. What was he worried about. He said losing his family. We asked him what he would say to his wife if he talked to her. He said he wasn't sure what he would say to her, and then he continued to speak with us.

these grounds for Petitioner's ineffective assistance claim, see Slater v. Herbert, No. 01-CV-928, 2006 WL 1007650, at *2 (N.D.N.Y. Apr. 17, 2006) (reviewing for clear error habeas claims first raised in the petitioner's objections to a report-recommendation), and adopts Judge Dancks' recommendation that Petitioner's ineffective assistance claim be dismissed, see Green v. City of New York, No. 05-CV-429, 2010 WL 148128, at *4 (E.D.N.Y. Jan. 14, 2010) ("[N]ew claims . . . presented in the form of, or along with, objections . . . should be dismissed."), aff'd, 403 F. App'x 626 (2d Cir. 2010). However, in an abundance of caution, and in light of Petitioner's pro se status, the Court here explains why Petitioner's ineffective assistance claim would fail even if he had raised these grounds in the Petition. See Slater, 2006 WL 1007650, at *2 (considering the merits of habeas claims raised for the first time in objections to a report-recommendation).

### 1.  Failure to Call T.L. as a Defense Witness at Trial

Turning first to the issue of exhaustion, Petitioner properly exhausted his claim that trial counsel was constitutionally defective because he failed to call T.L. to testify at trial. He raised this claim in the Second 440 Motion, S.R. at 1226–32, and "citing Strickland," as he did, was sufficient to "alert[] the [state court] to the federal nature of his claim." Eze v. Senkowski, 321 F.3d 110, 122 (2d Cir. 2003). After the Trial Court denied the Second 440 Motion, S.S.C.R. at 21–27, Petitioner sought leave to appeal the denial to the Appellate Division, in which he also fairly presented this claim, S.R. at 1285–87. When the Appellate Division denied leave to appeal, S.S.C.R. at 28, Petitioner had exhausted this claim, see Tueros v. Greiner, 343 F.3d 587, 590 (2d Cir. 2003) (stating that when "[l]eave to appeal the denial of the [petitioner's] § 440 motion was denied" by the appellate division, the petitioner had "exhausted his state-court remedies").

Next, it appears that the state courts adjudicated Petitioner's federal claim on the merits, rather than rejecting it on some independent and adequate state law procedural ground. While the

Trial Court engaged in no analysis of Petitioner's argument that his attorney was constitutionally

defective because he failed to call T.L. as a defense witness,[10] the Trial Court noted that there

was little indication that T.L.'s testimony would have changed the outcome at trial.[11] S.S.C.R. at

26. This statement appears to reject Petitioner's claim on the prejudice prong of the ineffective

assistance standard and constitutes a decision on the merits. Moreover, the Trial Court closed its

discussion of Petitioner's ineffective assistance claims by stating that "this Court finds no basis

to grant defendant's [Second 440 Motion]." S.S.C.R. at 27. Where there is no indication that the

Trial Court disposed of this particular ineffective assistance claim on some procedural ground,[12]

the Trial Court's terse statement, even without accompanying analysis, suffices to indicate a

ruling on the merits. See Eze, 321 F.3d at 122 (explaining that, in order to adjudicate a federal

claim on the merits for habeas purposes, the "state court need only dispose of the petitioner's

federal claim on substantive grounds, and reduce that disposition to judgment. No further

---

[10] Presumably, the Trial Court undertook no analysis of this particular claim because, while argued in the body of Petitioner's pro se brief, see S.R. at 1231–32 (arguing that trial counsel was ineffective because he "did not in his 'due diligence' call T.L. as a witness"), Petitioner did not include it in the introductory description of his claims, see S.R. at 1222–23 (explaining that Petitioner "was not afforded the Constitutional Right to the effective assistance of counsel" under "Const. Amends[.] VI & XIV" because "Defense Counsel submitted contradictory and blatantly false statements to the Defendant, Prosecution, and the Court" and "failed to investigate, to consult, or call an expert witness on the psychology of Child Sexual Abuse"). Because this briefing "informed the state court of both the factual and the legal premises of the claim [Petitioner] [now] asserts in federal court," it sufficed to exhaust the instant claim. Jones v. Keane, 329 F.3d 290, 295 (2d Cir. 2003).

[11] Since the Appellate Division denied leave to appeal in a summary order, the Court looks through the Appellate Division decision to the "last reasoned decision" by a state court—in this case, the Trial Court. See Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

[12] While the Trial Court did state that a portion of Petitioner's ineffective assistance claim was procedurally barred because he could have raised it in the First 440 Motion, this only applied to Petitioner's claim that trial counsel should have called a rebuttal expert witness. S.S.C.R at 27.

16

articulation of its rationale or elucidation of its reasoning process is required.") (internal citations and quotation marks omitted); Jimenez, 458 F.3d at 145 ("Absent a clear and express statement of reliance on a state procedural bar, [the habeas court should] deem[] [the state court decision] to rest on the merits of the federal claim."); Sellan v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001) (concluding that Appellate Division's statement that "[the petitioner's] 'ineffective assistance of counsel claim' was 'denied'" adjudicated that claim on the merits). For these reasons, the Court finds that the Trial Court rejected Petitioner's ineffective assistance claim on the merits, and Petitioner exhausted this claim.

Since Petitioner exhausted his claim and there appears to be no procedural bar, the Court evaluates whether the Trial Court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). On habeas, ineffective assistance claims are governed by Strickland v. Washington, 466 U.S. 668 (1984). See Williams v. Taylor, 529 U.S. 362, 390 (2000) (stating that federal habeas petitions alleging ineffective assistance are governed by Strickland). Under Strickland, a petitioner must show: (1) that counsel's representation "fell below an objective standard of reasonableness" determined according to "prevailing professional norms;" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688. This is a "highly deferential" standard that requires a petitioner to show "a probability sufficient to undermine confidence in the outcome." Id. at 689, 694. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687. In determining the impact of the alleged errors, the court "must consider the totality of the evidence before the judge or jury." Id. at 695. Overall, "Strickland

does not guarantee perfect representation, only a reasonably competent attorney," Harrington, 562 U.S. at 110, and there is a "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Meeting the Strickland burden is "never an easy task . . . [and] [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Premo v. Moore, 562 U.S. 115, 122 (2011) (citations and internal quotation marks omitted); see also Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (describing "the doubly deferential judicial review that applies to a Strickland claim evaluated under . . . § 2254(d)(1)"). When reviewing a state court's decision under § 2254, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Knowles, 556 U.S. at 123 (internal quotation marks and citation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." Harrington, 562 U.S. at 105. Instead, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Here, the Trial Court's denial of Petitioner's ineffective assistance claim was not contrary to, nor an unreasonable application of, Strickland.[13] Beginning with Strickland's performance prong, the Court recognizes "the importance of effective representation for defendants in child

---

[13]   Although the Trial Court did not specify whether it reviewed Petitioner's ineffective assistance claims under the New York standard or the Strickland standard, "the New York state standard for ineffective assistance of counsel is not contrary to Strickland." Rosario v. Ercole, 601 F.3d 118, 126 (2d Cir. 2010). "Thus, to obtain habeas relief, [Petitioner] must [still] demonstrate that the state court unreasonably applied Strickland." Schouenborg v. Superintendent Auburn Corr. Facility, 707 F. App'x 20, 22 (2d Cir. 2017).

sexual abuse prosecutions," including "defense counsel['s] . . . oblig[ation], wherever possible, to elucidate any inconsistencies in the complainant's testimony." Eze, 321 F.3d at 112. Indeed, the Second Circuit has noted that, where "certain omissions cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness," the "quality of representation" would be "sufficiently deficient to grant the writ." Id. Here, however, there is little indication that Trial Counsel's failure to call T.L. as a witness stemmed from oversight, carelessness, ineptitude, or laziness. Dufour's notes of her interview with T.L. nowhere reflect the conversation T.L. alleged in her first two affidavits that she had with Dufour, namely, that T.L. overheard L.B. planning to frame Petitioner. See S.R. at 228–34; see also id. at 232 (describing the overheard conversation between L.B. and J.J., in which, according to the notes, the girls discussed Petitioner raping them and making tape recordings of it); id. at 396 (in Petitioner's brief on direct appeal to the Appellate Division, acknowledging that "Dufour's notes . . . would not have alerted [Petitioner] that [T.L.] had information favorable to him"). Moreover, both T.L.'s recanting affidavit and Dufour's own affidavit confirm the account of T.L.'s interview found in Dufour's notes. Id. at 282–84, 393. In light of this record, there is little indication trial counsel should have inferred from Dufour's notes that T.L. had exculpatory evidence and that reasonably competent counsel would have called T.L. to offer that evidence at trial. Cf. Eze, 321 F.3d at 112 (describing how defense counsel's "inexplicabl[e] neglect[]" of certain "obvious pieces of evidence that would have cast doubt upon Eze's guilt" was problematic, in part, because "defense counsel was aware of them"). To hold otherwise would require the Court to credit the description of T.L.'s interview with Dufour found in T.L.'s first two affidavits over her subsequent recantation, Dufour's affidavit, and Dufour's notes, and then to find fault with Trial Counsel for failing to present evidence of that interview when he had no

notice it had occurred because Dufour's notes do not describe it as such. The Trial Court evidently rejected that theory, and the Court cannot say that such a rejection was unreasonable. See Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005) (counsel's duty to investigate "does not . . . compel defense counsel to investigate comprehensively every lead or possible defense . . . or to scour the globe on the off-chance something will turn up") (internal quotation marks omitted).

Having found that Petitioner's claim fails on Strickland's performance prong, the Court need not consider the prejudice prong. See Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) ("To prevail, a defendant must establish both of Strickland's prongs . . . ."); Whitley v. Ercole, 965 F. Supp. 2d 344, 353 (S.D.N.Y. 2013) (declining to consider second prong where the petitioner's ineffective assistance claim had already foundered on the first prong). Nevertheless, the Trial Court's conclusion that "the information [T.L.] possesses will not probably change the result if a new trial were to be granted," S.S.C.R. at 26, was not "objectively unreasonable." In light of T.L.'s subsequent recantation of her original affidavits, it is unlikely T.L. would have testified in conformity with her prior affidavits, as Petitioner had hoped. Additionally, the record establishes that the prosecution overall presented a strong case, anchored by Petitioner's own confession and reinforced by testimony from the victims, the police investigators, and an independent expert. See T.; see also Hamilton v. Lee, 707 F. App'x 12, 16 (2d Cir. 2017) (describing as "substantial" evidence that included the defendant's own confessions, testimony from third parties about his actions, and forensic evidence); see also Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001) ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt."). "Given the strength of the evidence against [Petitioner]," and the questionable strength of the evidence he

believed his trial counsel should have, but failed, to present, "any potential ineffectiveness did not rise to prejudicial error under the deferential standard of review under AEDPA." See Hamilton, 707 F. App'x at 16. Thus, even if Petitioner had raised this claim in his Petition, this is not one of "the exceedingly rare and exceptional case[s] where the state court's decision involved an 'unreasonable application' of Strickland." Rivas v. Fischer, 780 F.3d 529, 550 (2d Cir. 2015).

   2. *Failure to Raise the Prosecution's Alleged Brady Violations at the*
      *Suppression Hearing*

The Court briefly addresses the second basis asserted in Petitioner's Objections for trial counsel's ineffectiveness. Petitioner argues that trial counsel was ineffective "for failing to raise investigator Dufour's constitutional violations during [the] suppression hearing." Objs. at 3. While a bit vague, the Court construes this claim to assert that the prosecution committed a Brady violation by failing to timely disclose Dufour's notes about T.L. to the defense, and that trial counsel was ineffective for failing to cross-examine Dufour about this at the suppression hearing regarding Petitioner's confession. See Objs. at 2.[14] Even assuming this claim is fully exhausted, it fails on the merits, because Petitioner cannot satisfy Strickland's performance prong. The suppression hearing took place on May 2, 2008, T. at 21, and Dufour's notes reflect that she did not interview T.L. until July 18, 2018, S.R. at 228. Trial counsel cannot be faulted for failing to raise the prosecution's alleged failure to disclose evidence when such evidence did not yet exist. Hence, Petitioner has failed to establish that trial counsel was ineffective for failing to raise the prosecution's purported Brady violations at the suppression hearing.

---

[14]   The Objections do not appear to assert an independent Brady claim. See Objs. In any event, even if the Petition or Objections had raised such a claim, it would likely be procedurally barred, as Petitioner failed to argue before the Appellate Division that the prosecution violated Brady. See S.R. at 341–41.

### C.  Due Process Violations

Petitioner asserts that Judge Dancks "prejudice[d] the petitioner when [she] failed to consider his due process claims." Objs. at 3. Petitioner continues by explaining that he himself "did not perfect" his various appeals, but instead they were handled "by assigned counsel." Id. Therefore, according to Petitioner, he personally did not default any claims, so the Court should consider his claims on their merits. Id. The Court construes this portion of the Objections to argue that Judge Dancks was wrong to find Petitioner's due process claims unexhausted and, thus, procedurally barred. In light of Petitioner's pro se status, and on the basis of this objection, the Court reviews de novo Petitioner's due process claims.

Petitioner asserts that he "was denied his due process rights to a fair trial" in three ways: (1) "[t]he introduction of photographs of Petitioner's erect penis . . . incited hostility and loathing and . . . serve[d] no purpose other than to prejudice [Petitioner];[15] (2) the Trial Court should have given limiting instructions to the jury regarding Dr. Hamill's expert testimony on the effects of CSAAS on sexually abused children; and (3) portions of the prosecutor's summation in which she referred to Dr. Hamill's testimony were improper and denied Petitioner a fair trial. Pet. at 8. Judge Dancks found that Petitioner had failed to exhaust all three of these claims. R. & R. at 17. A de novo review of the record indicates that Judge Dancks' exhaustion determination was incorrect, but that, in any event, Petitioner's first claim fails on the merits and his second and third claims are procedurally barred. The Court discusses Petitioner's claim regarding the introduction of the photos first, then turns to the claims regarding the limiting instructions and the prosecutor's summation.

---

[15]  Though the Petition refers to "photographs of Petitioner's erect penis," Pet. at 8, the record indicates that only one photo of Petitioner's erect penis was admitted in evidence. S.R. at 1188.

### 1. *Photos*

With regard to Petitioner's claim that his due process rights were violated by the introduction of a photograph of his erect penis, Respondent argued in front of Judge Dancks that Petitioner had not exhausted this claim because he failed to raise it on direct appeal to the Appellate Division. Opp'n at 31. According to Respondent, "[a]lthough petitioner argued on direct appeal that his trial attorney was ineffective for introducing the photographs, that argument was insufficient to exhaust the claim that the trial court violated petitioner's due process rights by admitting the photographs." Id. This argument is hard to square with "Point II" of Petitioner's brief to the Appellate Division, however, which is titled "Defense counsel was constitutionally ineffective for pointlessly introducing photographs of appellant's penis, which were bound to inflame the jury's passions against appellant; moreover, the error deprived appellant of his state and federal constitutional due process right to a fair trial." S.R. at 375; see also id. at 379 ("[R]eceipt of these prejudicial photos violated Appellant's state and federal constitutional due process right to a fair trial."). It appears to this Court that, at the very least, Petitioner fairly presented this due process claim to the Appellate Division. See S.R. at 375–87, 1188–92.

Further, Petitioner appears to have fully exhausted this claim by including it in his request for leave to appeal to the Court of Appeals. While Petitioner's initial "application . . . for an order granting . . . leave to appeal to the Court of Appeals," S.R at 1198–1209, only asserted an ineffective assistance of counsel claim in connection with the photographs, id. at 1203–07, his supplemental submission "ask[ed] that leave be granted on the basis of any and all other legal issues Appellant raised at the Appellate Division," id. at 1211. This statement was sufficient to put the Court of Appeals on notice that Petitioner sought review of all the claims he raised before the Appellate Division and, therefore, properly exhausted Petitioner's due process claim related to the admission of the photographs. See Harris v. Fischer, 438 F. App'x 11, 13 (2d Cir. 2011)

(explaining that "if a defendant's leave application 'clearly state[s] that he [is] pressing all of the claims raised in [an] attached [Appellate Division] brief," the Court of Appeals is considered to have been fairly apprised of all of those claims." (quoting <u>Jordan v. Lefevre</u>, 206 F.3d 196, 199 (2d Cir. 2000)); <u>Morgan v. Bennett</u>, 204 F.3d 360, 371 (2d Cir. 2000) ("Because counsel's . . . letter expressly sought review of 'all issues outlined in defendant-appellant's . . . brief' . . . we conclude that Morgan . . . satisfied the exhaustion requirement."); <u>See</u> <u>Galdamez v. Keane</u>, 394 F.3d 68, 76 (2d Cir. 2005) (holding that a petitioner's "total application" to the Court of Appeals must be considered).

Since Petitioner exhausted this claim in state court, the Court examines whether it is procedurally barred. Here, again, although the Appellate Division included no analysis of this due process claim in its opinion affirming Petitioner's conviction, it also made no indication that it rejected this claim on an independent and adequate state law ground. S.S.C.R. at 10–19. Therefore, as with Petitioner' ineffective assistance claim discussed above, the Appellate Division's decision constitutes adjudication on the merits and there is no procedural bar to habeas review of this claim. <u>See</u> <u>Eze</u>, 321 F.3d at 122; <u>Jimenez</u>, 458 F.3d at 145. Turning to the merits, because the Appellate Division did not analyze the claim, the Court "focus[es] [its] review on the state court's ultimate decision." <u>Id.</u>; <u>see also</u> <u>Harrington</u>, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). The Appellate Division's denial of Petitioner's due process claim related to the Trial Court's admission of photos of Petitioner's erect penis was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

"In general, federal courts are not to review the admissibility of evidence in state criminal proceedings to determine whether the court correctly applied state law." Stover v. Ercole, No. 08-CV-6737, 2011 WL 814710, at *7 (S.D.N.Y. Mar. 8, 2011) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). However, habeas relief is available "where [a] petitioner can show that the error . . . den[ied] the petitioner his or her due process rights under the Fourteenth Amendment." Stover, 2011 WL 814710, at *7 (internal quotation marks and emphasis omitted) (citing Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004); United States v. Agurs, 427 U.S. 97, 108 (1976)). "[T]he introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice." Vega v. Portuondo, 120 F. App'x 380, 382 (2d Cir. 2005). To meet this standard, "the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992), abrogated on other grounds by Perry v. New Hampshire, 565 U.S. 228 (2012); see also Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (explaining that the evidence must be "crucial, critical, highly significant") (internal quotation marks omitted).

Here, even assuming the Trial Court erroneously admitted the photo of Petitioner's erect penis under New York law, see Mannino v. Graham, No. 06-CV-6371, 2009 WL 2058791, at *4 (E.D.N.Y. July 15, 2009) (stating that a petitioner must also establish that the evidence at issue was "erroneously admitted under New York law"),[16] Petitioner has not established that its

---

[16]  It is doubtful the Trial Court committed error in admitting the photos. Under New York law, photos are "generally admissible when they tend to prove or disprove some material fact in issue, even if the photographs portray a gruesome spectacle." Benjamin v. Greiner, 296 F. Supp. 2d 321, 332 (E.D.N.Y. 2003) (citing People v. Pobliner, 32 N.Y.2d 356, 369–70 (1973)). Further, "[t]he fact that other evidence[,] [such as the photos of Petitioner's flaccid penis], may

admission violated fundamental conceptions of justice. For one, it was offered by Petitioner's

counsel, without objection by the prosecution. T. at 1149. To expect the Trial Court to bar

unobjected-to evidence offered by the defense because of how prejudicial that evidence was to

the defendant demands too much. Moreover, trial counsel had legitimate strategic reasons for

introducing the photos of Petitioner's penis, as he used them to impeach the testimony of the two

victim-witnesses, who were unable to describe certain distinct markings on Petitioner's penis. T.

at 676–79, 794. Petitioner argues that these photos inflamed the jury against him and precluded

him from receiving a fair trial. Pet. at 8. But, in light of all the evidence before the jury, including

the testimony of eight witnesses and Petitioner's own confession, the Court cannot say that any

one of these photos "provide[d] the basis for conviction," see Dunnigan, 137 F.3d at 125, or

"substantially and injuriously affected the jury's verdict," see Benjamin, 296 F. Supp. 2d at 332;

see also Mannino, 2009 WL 2058791, at *11 (admission at trial of four "gruesome photographs

of the charred and bound bodies of the two[] victims" did not warrant habeas relief); Guerrero v.

Payant, No. 08-CV-3062, 2010 WL 2545818, at *18 (E.D.N.Y. June 21, 2010) (state court's

allegedly prejudicial admission of a photograph of sexual-assault complainant, which served

probative purposes, was not contrary to, or an unreasonable application of, clearly established

federal law). Accordingly, the Appellate Division's rejection of this claim was not contrary to

nor an unreasonable application of federal law, and habeas relief on this basis is foreclosed.

## 2. *Limiting Instructions and Summation*

Respondent argued before Judge Dancks that these two claims were (1) unexhausted, and

(2) procedurally barred on adequate and independent state law grounds. Opp'n at 34–41. Judge

Dancks, in turn, found that the claims were unexhausted because Petitioner had not raised them

---

be available on the point is a factor but is not dispositive." Gonzales-Martinez v. Kirkpatrick,
No. 16-CV-5119, 2017 WL 3891649, at *8 (E.D.N.Y. Sept. 6, 2017) (citing cases).

when seeking leave to appeal to the Court of Appeals. R. & R. at 17. Upon review, the Court

cannot agree with Judge Dancks' conclusion as to exhaustion. As Respondent conceded,

Petitioner raised these claims in his direct appeal to the Appellate Division. Opp'n at 34

("[P]etitioner presented these claims in his brief to the Appellate Division"); see also S.R. at

375–87, 1188–92. And, for the reasons described above, Petitioner fairly presented all of the

claims he raised in the Appellate Division in his request for leave to appeal to the Court of

Appeals. See S.R. at 1211. Therefore, the Court finds that Petitioner has satisfied the exhaustion

requirement as to these claims.

However, Respondent's second argument—that these claims are procedurally barred

from habeas review by the independent and adequate state law grounds doctrine, Opp'n at 35–37

—has more merit. Specifically, Respondent asserts that Petitioner did not properly preserve the

instant claims for review by the Appellate Division, because Petitioner's trial counsel failed to

object to the prosecution's summation and failed to request a limiting instruction with regard to

Dr. Hamill's testimony. Id. Judge Dancks accepted this argument, R. & R. at 19 n.6, and, here,

the Court agrees.

The record indicates that Petitioner never asked the Trial Court for a limiting instruction

regarding Dr. Hamill's testimony and did not object to the jury instructions more generally. T. at

1197–99. Nor did Petitioner object to the allegedly problematic portions of Petitioner's

summation. T. at 1216–38. Petitioner acknowledged this in his brief to the Appellate Division,

stating that "counsel failed to preserve any legal issue as to lack of a limiting instruction or as to

the prosecutor's improper arguments." S.R. at 384. For these reasons, in its opinion resolving

Petitioner's direct appeal, the Appellate Division found that these issues were unpreserved and,

therefore, unreviewable. See S.S.C.R. at 16 ("[D]efense counsel did not request [a limiting]

instruction or object to the final charge as given [to the jury]; thus, this issue is not preserved. Similarly, defendant raised no objections to the prosecutor's summation remarks . . . and, as such, any issues related thereto are not preserved for our review."). This ruling constitutes an independent and adequate state law ground for denying Petitioner's claims.

Generally, "A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Merritt v. Chappius, No. 14-CV-1481, 2015 WL 5711961, at *14 (N.D.N.Y. Sept. 29, 2015) (Kahn, J.) (quoting Walker v. Martin, 562 U.S. 307, 315 (2011)) (alteration in original); see also Coleman, 501 U.S. at 729. "This rule applies whether the state law ground is substantive or procedural." Coleman, 501 U.S. at 729; see also Merritt, 2015 WL 5711961, at *14 ("The state law ground may be a dispositive substantive rule, or 'a procedural barrier to adjudication of the claim on the merits.'") (quoting Walker, 562 U.S. at 315). "A state law ground is adequate if it is 'firmly established and regularly followed.'" Merritt, 2015 WL 5711961, at *14 (quoting Walker, 562 U.S. at 316).

Though not stated explicitly in the opinion, the Appellate Division decision appears to rest on N.Y. Crim. Proc. Law § 470.05(2) as a basis for finding Petitioner's claims barred. See S.S.C.R. at 16 (citing, inter alia, People v. Wright, 5 A.D.3d 873, 876–77 (2004)). Wright, in turn, discusses § 470.05(2), 5 A.D.3d at 876–77, also known as New York's "contemporaneous objection rule," Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011), which requires that counsel object to an error "at a time and in a manner" that gives the trial judge an "opportunity to remedy the problem" in order to preserve that error for review by the Appellate Division, Downs v. Lape, 657 F.3d 97, 103 (2d Cir. 2011). Courts in this Circuit have consistently held that the contemporaneous objection rule is an adequate and independent state law basis for a state court's

28

decision. See Downs, 657 F.3d at 104 ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule . . . [and] constitutes an independent and adequate state law ground . . ."); Whitley, 642 F.3d at 292 (analyzing § 470.05(2) and finding it to be an adequate and independent state law ground). Consequently, the Appellate Division rejected these two due process claims based on adequate and independent state law grounds.

A claim rejected on an adequate and independent state law basis is procedurally defaulted and precluded from habeas review, unless "the petitioner can . . . demonstrate either 'cause' [for the default] and actual 'prejudice,' or that he is 'actually innocent.'" Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012). "[T]he cause requirement is met if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." Id. (citing McCleskey v. Zant, 499 U.S. 467, 493 (1991)).

Here, Petitioner has failed to establish cause for procedurally defaulting these claims. His Objections suggest that he relied on counsel to make the proper objections and that he should not, therefore, be personally penalized for counsel's failures. Objs. at 3. However, as Petitioner himself stated in his Traverse, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Traverse at 5 (citing Murray, 477 U.S. at 486–87). And even construing Petitioner's submissions to assert ineffective assistance of counsel as cause for the procedural default, see Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (describing how "counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court" can "constitute[] cause to excuse a procedural default"), the Court does not find cause to excuse the default.

"[T]o establish attorney dereliction as cause, . . . [P]etitioner must meet the standards for showing constitutionally ineffective assistance of counsel." See DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004); see also Murray, 477 U.S. at 487 ("At least with respect to defaults that occur at trial, . . . ignorant or inadvertent attorney error [does not establish] cause for any resulting procedural default . . . ."). Also, a petitioner must have fully exhausted the particular ineffective assistance claims in order for them to excuse a procedural default of other claims. Edwards, 529 U.S. at 451–52 ("[I]neffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim . . . [which must be] first raised in state court."); Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred."). Here, Petitioner exhausted in the state courts his claims that trial counsel was ineffective for failing to request a limiting instruction regarding Dr. Hamill's testimony and failing to object to the prosecutor's summation. See S.R. at 380–87 (raising them before the Appellate Division); id. at 1203–07 (raising them when seeking leave to appeal to the Court of Appeals). The Appellate Division rejected these claims on their merits. See S.S.C.R. at 16 ("[W]e find that [Petitioner] was not deprived of . . . the effective assistance of counsel owing to counsel's failure to request a limiting instruction or to object to the summation."). Accordingly, the Court applies the "doubly deferential" standard of review associated with examining "counsel's performance [under Strickland] through the deferential lens of § 2254(d)." Jackson v. Conway, 763 F.3d 115, 153 (2d Cir. 2014) (citing Pinholster, 563 U.S. at 189).

Under that standard of review, the court cannot say that the Appellate Division's rejection of these two ineffective assistance claims was an unreasonable application of Strickland. As to

trial counsel's failure to object to the prosecution's summation, "decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable [through an ineffective assistance claim] absent exceptional grounds for doing so." United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (internal citations and quotation marks omitted). Here, the record indicates that trial counsel chose to address the expert testimony in his own summation, T. at 1210, perhaps concluding such a strategy was preferable to objecting during the prosecution's summation and drawing attention to any potentially objectionable statements. See United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (noting that reasonably made strategic calls do not support ineffective assistance claim); United States v. Eisen, 974 F.2d 246, 265 (2d Cir.1992) ("[D]ecisions that fall squarely within the ambit of trial strategy, . . . if reasonably made, cannot support an ineffective assistance claim.").[17]

As for trial counsel's failure to seek a limiting instruction regarding Dr. Hamill's testimony, Petitioner "has not shown 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Rolling v. Fischer, 433 F. Supp. 2d 336, 349 (S.D.N.Y. 2006) (quoting Strickland, 466 U.S. at 694). The jury heard from the defense, T. at 1210, the prosecution, id. at 1228–29, and from the expert himself, T. at 839–40, 846, about the limitations of his testimony. An additional admonition from the Trial Court itself would not likely have altered the results of the trial, particularly in the face

---

[17]   Further, as the Appellate Division observed, "while isolated prosecutorial summation remarks, taken out of context may have. been unclear or even arguably improper," S.S.C.R. at 16–17 (excerpt from Appellate Division decision), the prosecutor was also careful to note in summation that Dr. Hamill "didn't talk to anybody in this case . . .  [h]e didn't know anything about this case[,]" T. at 1228–29. Thus, even if Petitioner established it was error for his counsel not to object during the prosecution's summation, this ineffective assistance claim fails on the prejudice prong because the jury heard multiple times that the doctor's testimony was just generalized information rather than evidence that K.T. and L.B. had been sexually abused.

of the inculpatory evidence presented by the prosecution. See Rolling, 433 F. Supp. 2d at 349

(rejecting ineffective assistance claim based on counsel's failure to request a limiting instruction

where "[t]here was ample evidence, including [the defendant's] own confession, regarding his

having committed the crimes charged").

Overall, as the Appellate Division noted, Petitioner "was . . . provided meaningful

representation by counsel, who made appropriate pretrial motions, effectively cross-examined

witnesses, and delivered cogent opening and closing remarks. . . . [Moreover,] Counsel also

obtained a reduction of some counts, dismissal of another count, and acquittal on five counts."

Based on its review of the record, the Court cannot say that this appraisal of trial counsel's

performance was unreasonable. See Harrington, 562 U.S. at 111 ("[I]t is difficult to establish

ineffective assistance when counsel's overall performance indicates active and capable

advocacy."). For these reasons, the Court finds that Petitioner cannot establish cause for

procedurally defaulting these two due process claims.[18]

Nor can Petitioner avoid the procedural bar through a showing of actual innocence. See

McQuiggin, 569 U.S. at 392. Petitioner has offered no evidence of actual innocence in his

Petition, Traverse, or Objections, therefore the procedural default cannot be excused on this basis

either. For this reason as well, habeas review of these claims is foreclosed.

### D.  Remainder of the Report-Recommendation

With regard to the remainder of the Report-Recommendation, Petitioner has filed no

objections. See Objs. The Court thus reviews these portions only for clear error and finds none.

---

[18]  Since Petitioner has failed to meet his burden on the cause prong, the Court need not
consider whether Petitioner can show prejudice. See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir.
1985).

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 21) is **ADOPTED in part** and **MODIFIED in part** as to the grounds for denying Petitioner's due process claims; and it is further

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED AND DISMISSED in its entirety**; and it is further

**ORDERED**, that the Court **DECLINES** to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. If Petitioner wishes to appeal this decision, he must seek a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22; and it is further

**ORDERED**, that the Clerk close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      May 18, 2020
            Albany, New York


Lawrence E. Kahn
Senior U.S. District Judge